## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: REFCO INC. SECURITIES LITIGATION | MDL-1902 (GEL) |

| | |
|---|---|
| MARC S. KIRSCHNER,<br>As Trustee of the Refco Litigation Trust,<br><br>       Plaintiff,<br><br>       v.<br><br>GRANT THORNTON LLP, MAYER BROWN, ROWE & MAW, LLP; ERNST & YOUNG U.S. LLP; PRICEWATERHOUSECOOPERS LLP; CREDIT SUISSE SECURITIES (USA) LLC (f/k/a CREDIT SUISSE FIRST BOSTON LLC); BANC OF AMERICA SECURITIES LLC; DEUTSCHE BANK SECURITIES INC.; PHILLIP R. BENNETT; SANTO C. MAGGIO; ROBERT C. TROSTEN; TONE N. GRANT; REFCO GROUP HOLDINGS, INC.; LIBERTY CORNER CAPITAL STRATEGIES, LLC; WILLIAM T. PIGOTT; EMF FINANCIAL PRODUCTS, LLC; EMF CORE FUND, LTD.; DELTA FLYER FUND, LLC; ERIC M. FLANAGAN; INGRAM MICRO, INC.; CIM VENTURES, INC.; BECKENHAM TRADING CO. INC.; ANDREW KRIEGER; COAST ASSET MANAGEMENT, LLC (f/k/a COAST ASSET MANAGEMENT LP); CS LAND MANAGEMENT, LLC; and CHRISTOPHER PETITT,<br><br>       Defendants. | Case No. 07 Civ. 11604 (GEL)<br><br>ECF Filed |

## REPLY OF DEFENDANT ERNST & YOUNG LLP ("EY") TO PLAINTIFF'S OPPOSITION TO MOTION TO STAY PROCEEDINGS AS TO EY PENDING MEDIATION AND, IF NECESSARY, ARBITRATION

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ............................................................................................... 2

      A.    There Are Binding Agreements To Arbitrate This Dispute................................. 2

            1.    Refco's Signature On The 2001 Engagement Letter Was
                  Not Necessary To Create A Binding Duty On Refco To
                  Arbitrate. ............................................................................................ 2

            2.    The Parties' Agreement To Arbitrate Is Not Affected By
                  Whether The Dispute Resolution Procedures Were
                  Attached To The Signed 2002 And 2003 Engagement
                  Letters. ............................................................................................... 4

      B.    RCM Is A "Subsidiary [Or] Affiliate" Explicitly Bound By The
            Arbitration Agreements Signed By Its Parent Corporation, RGL. ....................... 6

      C.    The Parties' 2002 And 2003 Agreements Cover All Plaintiff's
            Claims. ................................................................................................... 7

      D.    Even If Certain Claims (Or Portions Of Claims) Are Not
            Arbitrable, The Court Still Should Stay All Claims Pending The
            Arbitration.............................................................................................. 8

III.  CONCLUSION............................................................................................ 10

      APPENDIX OF UNPUBLISHED DECISIONS CITED ............................................. 11

# TABLE OF AUTHORITIES

**CASES**                                                                                         **PAGE**

*AT&T Techs., Inc. v. Commc'ns Workers of America,*
    475 U.S. 643 (1986)................................................................................8

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.,*
    974 F. Supp. 293 (S.D.N.Y. 1997) ................................................................2

*In re Boutique Industrial, Inc.,*
    455 N.Y.S.2d 796 (N.Y. App. Div. 1982) ........................................................3

*Camferdam v. Ernst & Young International, Inc.,*
    No. 02 Civ. 10100, 2004 WL. 307292 (S.D.N.Y. Feb. 13, 2004) ..................4, 6

*Carlisle v. Citimortgage, Inc.,*
    No. 4:06-CV-677, 2008 U.S. Dist. LEXIS 772 (E.D. Mo. Jan. 4, 2008) ............8

*ChampionsWorld, LLC v. U.S. Soccer Federation, Inc.,*
    487 F. Supp. 2d 980 (N.D. Ill. 2007)..............................................................9

*China Union Lines Ltd. v. America Marine Underwriters, Inc.,*
    458 F. Supp. 132 (S.D.N.Y. 1978) .................................................................9

*Collins & Aikman Products Co. v. Building System, Inc.,*
    58 F.3d 16 (2d Cir. 1995)................................................................................9

*DeGroff v. Mascotech Forming Techs.-Fort Wayne, Inc.,*
    179 F. Supp. 2d 896 (N.D. Ind. 2001) ..........................................................10

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985)........................................................................................9

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
    9 F.3d 1060 (2d Cir. 1993)..........................................................................3, 6

*In re Express Industrial & Terminal Corp. v. N.Y. State Department of Transport,*
    715 N.E.2d 1050 (N.Y. 1999).........................................................................5

*Fehribach v. Ernst & Young, LLP,*
    No. 02-CV-01270, 2003 WL. 1906136 (S.D. Ind. Jan. 6, 2003)......................7

*Genesco, Inc. v. T. Kakiuchi & Co.,*
    815 F.2d 840 (2d Cir. 1987)........................................................................2, 3

*Green Tree Finance Corp. v. Bazzle,*
    539 U.S. 444 (2003)........................................................................................4

*Hawaii Annuity Trust Fund v. Hills,*
    No. C-379-07 (N.J. Super. Ct. Ch. Div. Jan. 9, 2008) ...................................10

*HIM Portland, LLC v. DeVito Builders, Inc.,*
    317 F.3d 41, 44 (1st Cir. 2003)......................................................................10

*Home Life Insurance Co. v. Kaufman,*
   547 F. Supp. 833 (S.D.N.Y. 1982) ................................................................9

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) .......................................................................................4

*Inskeep v. Checkers, Simon & Rosner, LLP,*
   250 B.R. 667 (N.D. Ill. 2000) .....................................................................7

*John Hancock Life Ins. Co. v. Wilson*
   254 F.3d 48, 58 (2d Cir. 2001) ...................................................................2

*Kemiron Atlantic, Inc. v. Aguakem International, Inc.,*
   290 F.3d 1287 (11th Cir. 2002) .................................................................10

*Landmark Properties, Inc. v. Architects International-Chicago,*
   526 N.E.2d 603 (Ill. App. Ct. 1988) ..........................................................2

*MK W. St. Co. v. Meridien Hotels, Inc.,*
   584 N.Y.S.2d 310 (N.Y. App. Div. 1992) ..................................................6

*Milnes v. Salomon, Smith Barney, Inc.,*
   No. 99-0483, 2002 WL. 31940718 (N.Y. Sur. Oct. 11, 2002) ...............5, 8

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,*
   460 U.S. 1 (1983)..........................................................................................8

*Nardi v. Povich,*
   824 N.Y.S.2d 764 (N.Y. Sup. Ct. 2006) ..................................................5, 6

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
   102 F.3d 660 (2d Cir. 1996) ........................................................................6

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc.,*
   320 F.3d 362 (2d Cir. 2003)..........................................................................5

*PaineWebber Inc. v. Bybyk,*
   81 F.3d 1193 (2d Cir. 1996)..........................................................................7

*Provident Bank v. Kabas,*
   141 F. Supp. 2d 310 (E.D.N.Y. 2001) .........................................................9

*In re Quigley Co.,*
   361 B.R. 723 (S.D.N.Y. 2007) .....................................................................9

*Shaw Group Inc. v. Triplefine International Corp.,*
   322 F.3d 115 (2d Cir. 2003)..........................................................................7

*United Steelworkers of America v. Warrier & Gulf Navigation Co.,*
   363 U.S. 574 (1960) ......................................................................................8

*In re VeriSign, Inc., No. C 06-4165,*
   2007 U.S. Dist. LEXIS 72341 (N.D. Cal. Sept. 14, 2007) ..........................8

*Whisler v. H.J. Meyers & Co.,*
     948 F. Supp. 798 (N.D. Ill. 1996) ......................................................................8

## I.    **INTRODUCTION**

Despite Plaintiff's efforts to complicate the matter, this is a simple motion.

Plaintiff's Opposition to EY's Motion to Stay (hereafter "Opp.") does not dispute that:

(1) Plaintiff, as Litigation Trustee for the Refco estate, is bound by Refco's agreements;

(2) Refco executed valid engagement letters in 2002 and 2003;

(3) those engagement letters contain agreements that any "claim arising out of or relating to tax and tax related services now or hereafter provided" is subject to binding arbitration; and

(4) all of Plaintiff's claims partially involve (and thus "relat[e] to") tax services provided after the 2002 engagement letter.

Each of Plaintiff's claims thus must be arbitrated because each is a "claim . . . relating to tax and tax related services now or hereafter provided[.]" *See* Berkowitz Decl. Ex. 1 at E&Y-2006-00033, Ex. 2 at E&Y-2006-00016, Ex. 3 at E&Y-2006-00008-00009 (emphasis added). Even if each claim purportedly relates to prior services as well, each claim also involves allegations about, and therefore "relates" to, services provided after the arbitration agreements were entered.

Plaintiff tries to distract the Court from these facts by raising three unsupported arguments. First, Plaintiff argues that there was never a "meeting of the minds" because Refco did not sign one letter, and two others did not have the "Dispute Resolution Procedures" (the "DRPs") attached. But Refco indisputably accepted the benefits of the 2001 engagement letter and is therefore bound. Moreover, Refco indisputably signed the 2002 and 2003 engagement letters which reference the DRPs, indicating either that Refco had the DRPs, or that not having them was immaterial to Refco. Indeed, courts have repeatedly held that the lack of specific procedures does not defeat a binding agreement to arbitrate. Second, Plaintiff argues that Refco Capital Markets ("RCM") did not sign the agreements. But RCM was a subsidiary of RGL; the agreements explicitly covered "any parent, subsidiary, [or] affiliate" of RGL; and RCM accepted EY's services and is thus bound by the engagement letters. Third, Plaintiff makes the irrelevant

point that its claims (all of which cover conduct after the 2002 letter) also cover conduct from before 2002. But Plaintiff chose to draft broad claims that cover conduct through 2005 and thus on their face "relat[e] to" conduct after the 2002 letter and are therefore covered by the plain language of the arbitration agreements. And Plaintiff makes no attempt to explain how splitting any non-arbitrable claims would serve judicial economy given that they all involve the same facts and issues. Particularly given the strong federal policy that any ambiguities should be resolved in favor of arbitration, a stay is clearly appropriate.

## II.    ARGUMENT

### A.    There Are Binding Agreements To Arbitrate This Dispute.

Despite Plaintiff's arguments, the 2001, 2002, and 2003 letters (which contain essentially identical arbitration provisions) are all binding.

#### 1.    Refco's Signature On The 2001 Engagement Letter Was Not Necessary To Create A Binding Duty On Refco To Arbitrate.

Plaintiff argues that the "2001 engagement letter between E&Y and RGL produced from E&Y's files . . . was never executed by RGL." Opp. at 1. However, the lack of a signature on a contract with an arbitration agreement does not affect its validity, where as here the non-signing party accepted the benefits of the contract.[1] *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (parties in long-standing relationship were bound to arbitrate under provisions in unsigned contracts between them); *Landmark Props., Inc. v. Architects Int'l-Chicago*, 526 N.E.2d 603, 606 (Ill. App. Ct. 1988) (parties assented to contract by their conduct, even though the contract was unsigned, and therefore were bound to arbitration

---

[1] In cases under the FAA, "the issue of enforceability and validity of the arbitration clause is governed by federal law," although federal courts may look to state law for guidance in developing federal common law. *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 n.5 (S.D.N.Y. 1997). Indeed, Plaintiff's cited case *John Hancock Life Ins. Co. v. Wilson* is not inconsistent with this proposition. *See* Opp. at 7-8 (citing 254 F.3d 48, 58 (2d Cir. 2001) (holding whether party is bound by arbitration clause "is governed by federal law" although courts draw guidance from state law contract principles)).

clause). "[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties." *Genesco*, 815 F.2d at 846; *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (party that did not sign but received benefits under agreement cannot avoid arbitration); *In re Boutique Indus., Inc.*, 455 N.Y.S. 2d 796 (N.Y. App. Div. 1982) (unsigned arbitration clause valid where party accepted goods under contract and signed later arbitration agreement). Refco accepted EY's services under the 2001 engagement letter (the preparation of the 2000 tax returns). Given their ongoing relationship, the parties' agreement to arbitrate based on the 2001 engagement letter is thus valid despite the lack of one signature.

Furthermore, nothing supports Plaintiff's assertion that the 2001 engagement letter – which is on letterhead, signed by EY, and contains no draft designation – was a "draft." *See* Berkowitz Decl. Ex. 1. Indeed, the only support Plaintiff musters is a draft of the *next year's* engagement letter, which Plaintiff neglects to tell the Court. The July 17, 2002 cover letter attaches a draft engagement letter to prepare the *2001* tax returns. *See* Rand Decl.[2] Ex. A at REFCO-E-038755120. The parties took the May 2001 engagement letter covering the 2000 tax returns and updated it for the 2001 returns, including new deadlines for information (August 1, 2002) (*see id.* at REFCO-E-038755122), new fees and payment dates (*see id.* at REFCO-E-038755124), and additional representations and documentation (*see id.* at REFCO-E-038755123). The draft just failed to update the letter's date. A week later, the parties then signed the final version. A comparison of the July 17, 2002 draft and the July 25, 2002 letter makes clear that the former is a draft of the latter: The letters are essentially identical except that the dates are updated, the representations and documentation requested in the draft are removed, and instead the final version states that "[t]hese items were included in a separate letter which we discussed," *i.e.* the July 17, 2002 letter. *See* Berkowitz Decl. Ex. 2 at E&Y-2006-00015.

---

[2]    Citations to "Rand Decl." refer to the Declaration of Sascha N. Rand, dated January 11, 200[8], submitted with Plaintiff's Opposition.

Indeed, the fact that the parties used the May 2001 letter to draft the next year's letter is further evidence that the May 2001 letter was final. They carried over the terms from the May 2001 letter, including notably the ADR provision, because those were the final terms.

Plaintiff's suggestion that Refco did not receive the May 2001 letter lacks any support. First, the fact that Plaintiff's counsel did not locate the letter in Refco's files indicates nothing; indeed, Plaintiff's counsel apparently did not locate the 2002 and 2003 engagement letters, which Refco received and signed. Second, the 2002 letter that Refco signed confirms that Refco received the 2001 letter, as it references "the dispute resolution procedures we sent you previously." Only one letter covers the 2000 tax returns – the May 2001 letter; EY provided and Refco accepted services under it; and the parties must abide by its arbitration clause.

2.     **The Parties' Agreement To Arbitrate Is Not Affected By Whether The Dispute Resolution Procedures Were Attached To The Signed 2002 And 2003 Engagement Letters.**

Plaintiff's argument that the signed 2002 and 2003 agreements should be nullified if the DRPs referenced in those letters were not also attached is meritless. First, failing to attach the DRPs would not void the parties' agreement to arbitrate. Instead, as a matter of law, disagreements over arbitration procedures do not invalidate the agreements themselves. *See, e.g., Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002); *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02 Civ. 10100, 2004 WL 307292, at *3 (S.D.N.Y. Feb. 13, 2004) (on similar facts, holding that failure to attach the DRPs to engagement letters signed by plaintiffs did not alter "the clear intent of the parties to arbitrate claims"). Courts differentiate between disagreements about arbitration procedures versus disagreements about whether the parties agreed to arbitrate at all. Indeed, when the issue is "what *kind of arbitration proceeding* the parties agreed to," arbitrators make the decision. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Howsam,* 537 U.S. at 84-85. Here, as in *Camferdam*, there is no dispute

that RGL and EY agreed to arbitrate "[a]ny controversy or claim arising out of or relating to tax and tax related services" in the 2002 and 2003 letters. *See* Berkowitz Decl. Exs. 2-3.[3]

Second, Refco did have the DRPs – or decided that they were not material. The DRPs were attached to the 2001 agreement and referenced in each of the 2001, 2002, and 2003 agreements. The 2002 engagement letter refers to "the dispute resolution procedures we sent you previously." Berkowitz Decl. Ex. 2, at E&Y-2006-00016. Likewise, the 2003 engagement letter states that the DRPs are attached. Both letters then state that if "these arrangements are acceptable," Refco should sign the letter – which it did. Thus, either Refco had the DRPs for 2002 and 2003, or Refco considered having the DRPs immaterial.[4] Either way, a sophisticated party such as Refco cannot void its agreements by claiming that it did not obtain information it deemed important before executing the agreement. *See Nardi v. Povich*, 824 N.Y.S.2d 764 (N.Y. Sup. Ct. 2006) (plaintiff bound by arbitration clause referenced in, but not attached to, an agreement because "it was her responsibility to [understand] the document that she signed").

Notably, Plaintiff makes no attempt to explain how the DRPs are so important as to void the agreements. Plaintiff's assertion that the agreements were "expressly subject to the parties reaching an agreement regarding arbitration procedures," *see* Opp. at 9, is false; the agreements contain no such language, nor does Plaintiff quote any. Indeed, if Plaintiff is correct that Refco signed the letters despite lacking the DRPs, they clearly were immaterial to Refco.

---

[3] The cases Plaintiff cites are unhelpful. For example, *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362, 372 (2d Cir. 2003), does not concern different versions of arbitration procedures, but rather materially different versions of the arbitration provision itself. Likewise, in *Milnes v. Salomon, Smith Barney, Inc.*, No. 99-0483, 2002 WL 31940718, at *4-6 (N.Y. Sur. Oct. 11, 2002), one party never received the arbitration agreement; moreover, the parties never entered into any binding contract, much less one with an arbitration provision. *In re Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999) was not even in the arbitration context.

[4] If there remained any ambiguity as to whether Refco received the DRPs, Refco indisputably received a similar version of those procedures on October 31, 2002. *See* Rand Decl. Ex. B. Plaintiff does not allege that the DRPs in its Exhibit B differ, much less materially, from the DRPs attached to the 2001 engagement letter.

**B.    RCM Is A "Subsidiary [Or] Affiliate" Explicitly Bound By The Arbitration Agreements Signed By Its Parent Corporation, RGL.**

Plaintiff also argues that RCM should not be bound because the arbitration agreement was signed by its parent, RGL. This distinction is irrelevant. First, the arbitration provisions cover "any such matter involving any parent, subsidiary, [or] affiliate" of RGL. Likewise, RGL defined "Company" in the engagement letters as including RGL and its affiliates. Plaintiff concedes that EY provided services to RGL and its subsidiaries (*see* Complaint ¶ 249) and that RCM is such a subsidiary (Opp. at 15). This is sufficient to bind the subsidiary. *See Nardi*, 824 N.Y.S.2d at 764 (parent's agreement to arbitrate all disputes with "any of their affiliated, subsidiary, or parent companies" compelled arbitration for the "affiliate"); *Camferdam*, 2004 WL 307292, at *5-6 (EY engagement letter signed by taxpayers bound entities that taxpayers owned and that implemented EY's tax advice). Plaintiff, in contrast, cites cases holding unremarkably that a *subsidiary* cannot bind its *parent,* the opposite of the situation here.

Second, RCM indisputably accepted EY's services covered by the letters.[5] Numerous courts have held, and Plaintiff concedes, that even a non-signatory to an agreement containing an arbitration provision must arbitrate if the party accepted benefits under the contract. *See* Opp. at 16; *Deloitte Noraudit*, 9 F.3d at 1064 (non-signatory who received benefits under an agreement cannot avoid agreement's arbitration provision); *see also Camferdam*, 2004 WL 307292, at *5-6. That is expressly the case here. As Plaintiff admits, RGL and its subsidiaries and affiliates accepted EY's tax services in 2001, 2002, and 2003. Specifically, EY prepared all of RCM's federal tax filings as part of EY's role in preparing consolidated tax returns for RGL and its affiliates. *See* Complaint ¶ 249 ("During this time period [2001-2002],

---

[5]    In addition, RCM is a third-party beneficiary under the letters. Under Second Circuit and New York law, a party need not be named in a contract to be a third-party beneficiary. *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996); *MK W. St. Co. v. Meridien Hotels, Inc.*, 584 N.Y.S.2d 310, 313 (N.Y. App. Div. 1992).

E&Y also prepared tax returns for RGL and its subsidiaries and affiliates[.]").[6]

### C.    The Parties' 2002 And 2003 Agreements Cover All Plaintiff's Claims.

Plaintiff does not dispute that its alleged claims relate to "tax and tax related services," but argues only that the claims involve, in part, tax work performed before July 2002.[7] Opp. at 10-14. This is irrelevant. As noted in EY's Opening Brief, Plaintiff's claims all involve tax-related work allegedly performed by EY through 2005, and therefore on their face "relat[e] to" services provided after the 2002 letter.[8] *See* Motion at 8; *see also* Complaint ¶ 249 ( "E&Y and its affiliates continued to provide advice and services to Refco through as late as 2005"), ¶ 251 , ¶¶ 258-259 ("E&Y knew and/or consciously avoided knowing that by September 2002 the Neiderhoffer Loss . . . was entirely uncollectible[.]"); Opp. at 3 (alleging it relied on EY's tax returns "[t]hroughout the time that E&Y provided services to Refco"). In fact, Plaintiff concedes this when it states that its claims are <u>mainly</u> ("in large part" or "the bulk") based on pre-July 2002 conduct. *See* Opp. at 11.[9] Having drafted its claims broadly to include services provided through 2005, Plaintiff cannot now mischaracterize them narrowly to avoid arbitration.

---

[6]    If there are any doubts, the Court must stay RCM's claims to enable an arbitrator to decide arbitrability, as the DRPs -- both those attached to the 2001 engagement letter and those Plaintiff admits Refco received in October 2002 -- state that "[a]ny issue concerning the extent to which any dispute is subject to arbitration . . . shall be . . . resolved by the arbitrators." *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1196-99 (2d Cir. 1996); *Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120-21 (2d Cir. 2003); *Inskeep v. Checkers, Simon & Rosner, LLP,* 250 B.R. 667, 674 (N.D. Ill. 2000).

[7]    EY does not concede that arbitration agreements began in July 2002. To the contrary, the 2001 engagement letter also is binding, but EY uses the July 2002 date to show that, even accepting Plaintiff's temporal limitation, *all* of Plaintiff's claims are still arbitrable.

[8]    Plaintiff's assertion that RCM's claims relied only on pre-July 2002 conduct, Opp. at 16, is false; the Complaint does not distinguish between factual allegations supporting RCM's claims and RGL's.

[9]    Moreover, even claims solely concerning 1997-2000 tax returns would "relat[e] to" services under the arbitration agreements because EY reviewed and revised its 1997-2000 tax work beginning September 2002 when the IRS audited the prior returns. *See* Complaint ¶ 249. *Fehribach v. Ernst & Young, LLP,* No. 02-CV-01270, 2003 WL 1906136, at *6 (S.D. Ind. Jan. 6, 2003) holds that an audit of one year's financial statements does not necessarily relate to the prior year's audit, unlike here where new work was done on the prior years' returns.

Indeed, the arbitration provisions do not speak narrowly or require that claims must arise *solely* from conduct after July 2002. Rather, they speak in broad terms, including the broad "relating to" language. And if there is any question, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).[10] Plaintiff's position is untenable given the wording of the arbitration clause and the strong federal policy favoring arbitration.[11]

Finally, the issue of whether the arbitration clauses also apply to claims involving in part pre-July 2002 conduct is reserved for the arbitrators. This result is mandated by well-settled case law, *see Moses H. Cone*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"), and by the clear and unmistakable language in the DRPs, as discussed above. *See supra* note 6.

### D.   Even If Certain Claims (Or Portions Of Claims) Are Not Arbitrable, The Court Still Should Stay All Claims Pending The Arbitration.

Further, even if certain claims are not arbitrable, the Court should nonetheless

---

[10]   When an agreement has an arbitration clause, "there is a presumption of arbitrability[;] . . . '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

[11]   Furthermore, because these broad arbitration agreements cover the relationship between the parties, i.e. "[a]ny controversy or claim arising out of or relating to <u>tax and tax related services</u>," without limiting it to services provided under specific letters, they apply retroactively to prior conduct. *See* Berkowitz Decl. Exs. 1-3 (emphasis added); *see also* Opening Brief, at 8-9; *Carlisle v. Citimortgage, Inc.*, No. 4:06-CV-677, 2008 U.S. Dist. LEXIS 772, at *9 (E.D. Mo. Jan. 4, 2008) (retroactively applying broad arbitration clause); *In re VeriSign, Inc.*, No. C 06-4165, 2007 U.S. Dist. LEXIS 72341, at *132-38 (N.D. Cal. Sept. 14, 2007) (where last audit engagement letter required arbitration of disputes "relating to . . . any other services provided by or on behalf of KPMG," and reserved questions of arbitrability for arbitrator, claim regarding pre-letter services was arbitrable); *Whisler v. H.J. Meyers & Co.*, 948 F. Supp. 798, 802 (N.D. Ill. 1996). *Fehribach* is thus inapposite because that narrower arbitration clause was limited to "the services <u>covered by this letter</u>." 2003 WL 1906136, at *1 (emphasis added). Indeed, *Fehribach* noted that the letter <u>would</u> be retroactive if instead it covered the business relationship. *See id.* at *4 n.6. In addition, the *Fehribach* plaintiff only asserted claims that predated the parties' agreement; here, Plaintiff has alleged claims concerning conduct that involves both pre- and post-2002 time periods.

stay all claims against EY because the arbitrable and non-arbitrable claims involve overlapping issues, some of which the arbitration will determine. *See In re Quigley Co.*, 361 B.R. 723, 742 (S.D.N.Y. 2007) (discretionary stay pending arbitration is appropriate where arbitration may determine common issues); *accord Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318 (E.D.N.Y. 2001). Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit or if the stay will promote judicial economy and will not cause plaintiff undue hardship. *Quigley*, 361 B.R. at 742-43; *see also Home Life Ins. Co. v. Kaufman*, 547 F. Supp. 833, 834-35 (S.D.N.Y. 1982). Even claims against non-signatories should be stayed if "obviously intertwined" with those against signatories. *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 991-92 (N.D. Ill. 2007); *Quigley*, 361 B.R. at 742; *Provident Bank*, 141 F. Supp. 2d at 318-19. "Thus so long as (1) there is an agreement to arbitrate and (2) at least one of the issues involved in the suit is within the scope of the arbitration agreement, a stay is to be granted as a matter of course, except in rare cases." *China Union Lines Ltd. v. Am. Marine Underwriters, Inc.*, 458 F. Supp. 132, 135 (S.D.N.Y. 1978).

First, it is clear – and notably Plaintiff makes no attempt to deny – that any non-arbitrable clams would involve nearly identical facts and issues. Second, Plaintiff makes no attempt to explain why severing claims would serve judicial economy; Plaintiff's intended result is apparently two fora examining the same facts to determine the same issues, possibly with different results. Third, allowing a court proceeding to determine whether EY's tax services were accurate would void the benefit of EY's and RGL's bargained-for agreement to have an arbitrator determine this issue. Fourth, Plaintiff does not – and cannot – propose any way to divide its claims so as to avoid these many problems, nor does Plaintiff assert any undue hardship from a stay.[12] Thus, even if the Court were to determine that claims by RCM against

---

[12] Plaintiff also misconstrues the cases it cites. For example, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221-22 (1985), does not hold that courts should stay only claims covered

EY, or claims by RGL against EY that predate July 2002, are not arbitrable, it still should stay those claims pending arbitration on the arbitrable issues.[13]

## III.    CONCLUSION

EY respectfully requests that this Court stay these proceedings as to EY in favor of mediation and, if necessary, arbitration.

LATHAM & WATKINS LLP

By _____
Miles N. Ruthberg
Christopher Harris
885 Third Avenue, Suite 1000
New York, New York 10022-4834
(212) 906-1200 (telephone)
(212) 751-4864 (facsimile)

---

by the arbitration agreement, *see* Opp. at 17, but rather that the presence of non-arbitrable claims does not allow courts to deny arbitration of arbitrable claims. Similarly, *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995), did not reject EY's argument that factually-related, non-arbitrable claims should be *stayed*, but rather rejected the argument that that all factually-related claims must be *arbitrated*.

[13] The fact that the letters provide for "voluntary mediation, and if mediation is not successful, then [] binding arbitration" does not impact the need for a stay. Refco sued EY in court in direct contravention of the parties' agreements; therefore, EY's motion to stay that lawsuit to permit mediation or arbitration to occur is not "premature." Accordingly, the "prerequisite of mediation does not stop the Court from staying this proceeding." *Hawaii Annuity Trust Fund v. Hills*, No. C-379-07, slip op. at 6 (N.J. Super. Ct. Ch. Div. Jan. 9, 2008) (interpreting EY's arbitration agreement and staying proceedings notwithstanding lack of mediation); *DeGroff v. Mascotech Forming Techs.-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 912-13 (N.D. Ind. 2001) (interpreting similar arbitration agreement and granting motion to compel arbitration notwithstanding lack of mediation request). Plaintiff's cited cases are irrelevant. *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002), involved a motion to stay in favor of arbitration, whereas here EY seeks to stay in favor of mediation and, if necessary, arbitration, and thus does not seek to bypass the mediation process. *HIM Portland, LLC v. DeVito Builders, Inc.* addressed a motion to compel arbitration -- not merely to stay litigation. 317 F.3d 41, 44 (1st Cir. 2003). Most obviously, because Plaintiff commenced this dispute, it is Plaintiff's obligation, not EY's, to initiate the mediation process. If Plaintiff does not want this dispute resolved it need not initiate mediation; but it cannot resolve it in court.

# APPENDIX OF UNPUBLISHED DECISIONS CITED

JAN.09.2008 04:29 12017524364                                    #3286 P.001



## HON. ROBERT P. CONTILLO, J.S.C.
### SUPERIOR COURT OF NEW JERSEY

BERGEN COUNTY JUSTICE CENTER
10 MAIN STREET, HACKENSACK, NJ 07601
PHONE -- (201) 527-2615 FAX   (201) 371-1117

### FACSIMILE TRANSMITTAL SHEET

| TO | FROM: |
|---|---|
| Andrew Berry – 973-624 7070 | Hon. Robert P. Contillo, J.S.C. |
| | DATE: |
| | 1/9/2008 |
| | TOTAL NO. OF PAGES INCLUDING COVER:    8 |

RE: Hawaii v. Hills
Docket No. C-379-07

JAN.09.2008 04:29 12017524364                                    #3286 P.002

# FILED

JAN - 9 2008

**Robert P. Contillo, J.S.C.**

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: BERGEN COUNTY

| | |
|---|---|
| HAWAII ANNUITY TRUST FUND | Docket No. C-379-07 |
| *Plaintiff(s),* | |
| vs. | **CIVIL ACTION** |
| HILLS et al. | *ORDER* |
| *Defendant(s).* | |

It having been brought to the Court's attention that its prior issued decision on the above-captioned matter contained a discrete clerical error, and it appearing to the Court that the correction will not affect the substance of its decision,

**IT IS** on this 9th day of January, 2008,

**ORDERED,** that the letter decision accompanying this Order shall hereby replace the Court's letter decision of January 7, 2008.

**ORDERED,** that a copy of this Order and annexed rider shall be served upon all parties within 7 days of receipt.

Hon. Robert P. Contillo, J.S.C.

JAN.09.2008 04:29 12017524364

#3286 P.003

**FILED**

# SUPERIOR COURT OF NEW JERSEY

JAN - 9 2008



ROBERT P. CONTILLO
JUDGE, GENERAL EQUITY

**Robert P. Contillo, J.S.C.**
BERGEN COUNTY JUSTICE CENTER
HACKENSACK, NJ 07601
201-527-2615

January 9, 2008

**VIA FACSIMILE**

Andrew Berry, Esq.
McCarter & English LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

      Re:    Hawaii Annuity Trust Fund, et als. v. Roderick M. Hills, et als.
            Docket No. C-379-07

          : Decision

Counsel:

### Statement of the Case

      The issue before the Court is whether to grant a stay of a shareholder derivative suit, based on either the principle of comity or the presence of an alternative dispute resolution agreement. The Court entertained oral argument on December 21, 2007. For the reasons set forth below, the Court hereby dismisses without prejudice the claims asserted against all defendants save Ernst & Young, LLP ("E & Y") and stays, pending alternative dispute proceedings, the action on the claims against E & Y.

      Between 2001 and 2004, Chiquita Brands International ("Chiquita") illegally paid a Columbian terrorist organization, the Autodefensas Unidas de Colombia ("AUC"), for "security." (Betz Cert. Ex. A.) Chiquita pled guilty to one count of engaging in transactions with a Specially Designated Global Terrorist and paid a twenty-five million dollar fine. During this time, E & Y provided financial audit services to Chiquita, pursuant to contracts requiring mediation and arbitration of their disputes. On October 12, 2007, "City of Philadelphia Public Employees Retirement System," a large shareholder of Chiquita Brands International ("Chiquita"), filed a derivative complaint on

1

behalf of Chiquita, in a district court of Ohio, against officers and directors of Chiquita, alleging breaches of fiduciary duty.

On October 30, 2007, "Hawaii Annuity Trust Fund for Operating Engineers," another shareholder, filed a complaint in this Court against a greater number officers and directors (including every named defendant from the Ohio action) and also against E & Y. (Betz Cert. Ex. B.) This complaint additionally alleged breaches of fiduciary duty and corporate waste against the director officer defendants. Against E & Y the plaintiff alleged "aiding and abetting" liability and also professional negligence.

One day later, another plaintiff, "Sheet Metal Workers Local #218(S) Pension Fund," filed an action in a district court in Washington D.C., again, against many of the same defendants and on behalf of Chiquita, alleging breaches of fiduciary duty, corporate waste, and the "aiding and abetting" liability of certain officers and directors. (Betz Cert. Ex. C.) As the attorneys for Chiquita demonstrated to the Court, there are substantial and extensive substantive and stylistic similarities between the pleadings in each case. (Betz. Cert. Ex. D.)

On November 26, 2007, attorneys for Chiquita filed a motion before the Judicial Panel on Multidistrict Litigation, to transfer these actions before one judge, for consolidated pretrial proceedings. Chiquita moved before this Court to stay its proceedings pending the outcome of the Ohio action. E & Y moved to stay this proceeding to allow the parties to mediate and possibly arbitrate. The director and officer defendants joined in Chiquita's motion. Chiquita and E & Y each joined in the other's motion.

The defendants advance two main arguments for granting a stay of these proceedings. First they argue that the Court should stay this action under the principle of comity articulated in American Home Products Corp. v. Adriatic Insurance Co., 286 N.J. Super. 24 (App. Div. 1995). Second, they argue that the Court should stay the action pursuant to the Federal Arbitration Act's stay provisions.

2

<u>**DECISION**</u>

1) **Chiquita's Motion to Stay Action in Favor of a Pending Federal Action in Ohio**

"The fact that an action pending in another state involves the same parties and the same or substantially similar claims does not bar prosecution of a subsequent action here in New Jersey. However, the New Jersey action may, as a matter of sound discretion, be stayed by our courts until the prior action has been adjudicated." <u>Am. Home Products Corp. v. Adriatic Ins. Co.</u>, 286 <u>N.J. Super.</u> 24, 33 (App. Div. 1995). The Court applies the following analysis to determine whether principles of comity mandate a stay (or a dismissal):

> [T]he defendant should be required to establish (1) that there is a first-filed action in another state, (2) that both cases involve substantially the same parties, the same claims, and the same legal issues, and (3) that plaintiff will have the opportunity for adequate relief in the prior jurisdiction. When a defendant establishes these requisites, it has shown a clear entitlement to comity-stay relief and the judge should grant the stay unless plaintiff demonstrates "special equities."

<u>Ibid.</u>

Here, there is in another state a first-filed action that involves substantially the same parties, claims and legal issues. The Ohio action encompasses claims against officers and directors for breach of fiduciary duty, as does this action; the addition of a claim for corporate waste does little to distinguish the two. Likewise, the parties are substantially the same: All of the defendants from the Ohio action are named in this action, and the plaintiff is an identically situated institutional shareholder of Chiquita. The most serious difference is the addition of E & Y as a defendant, which, as I will discuss below, will not affect the Court's comity analysis.

The plaintiff, by joining in the Ohio action, will have a fair opportunity to present its claims against the directors and officers. Even though the plaintiff cannot name E & Y in federal court (because of the requirement of absolute diversity), this Court is persuaded that there will be no prejudice to the plaintiff's rights. No party at oral argument was concerned that the directors and officers might attempt to defend against

3

the claims by citing the advice of E & Y. But even if they do, there is no reason why the district court cannot adjudicate the issue, even though the result will not bind E & Y.

Therefore, it is the plaintiff's burden to show that some special equity requires the Court to allow the action to proceed. Factors that the Court may consider when assessing special equities are: 1) whether granting the stay would thwart the public policy of New Jersey; 2) how well-advanced toward trial the action is, as compared to the first-filed action; 3) how convenient and fair the forum is to the parties that will be involved in the litigation; and 4) what relative connections the dispute has to the forum. Id. at 38-39.

In American Home Products, the lower court found special equities where insurance companies were challenging their obligation to pay for the cleanup of waste sites in New Jersey and 1) the covered company headquarters were in Madison, New Jersey; 2) ten out of thirty-seven waste sites were in New Jersey, while only one was in the first-filed forum; 3) six defendant insurers were headquartered in New Jersey; 4) the remediation costs were ten times higher in New Jersey than in the first-filed jurisdiction; 5) New Jersey law was likely to be applied to the controversy; 6) and the case was two years into discovery. Id. at 39-40. The only similarity the current case has with American Home Products is that New Jersey law will likely be applied. As is clear from the record, every other factor militates against allowing the action to proceed in this forum.

Chiquita's headquarters are in Cincinnati, Ohio, Chiquita owns no property in New Jersey, and only 5 out of 25,000 Chiquita employees work in New Jersey. (Howland Cert. ¶¶ 3-5.) There are no allegations that witnesses or litigants will have an easier time litigating in New Jersey than in a federal forum. Neither action is far along in the discovery process. And there is no public policy of New Jersey that will be thwarted if the Court declines to adjudicate the dispute at this time.

New Jersey's interest in discouraging corporate fiduciaries from breaching their duties to each other and New Jersey's interest in interpreting its own law (Chiquita being a New Jersey corporation) will be adequately protected in the federal forum. The Appellate Division has said the following:

> We do not distrust the proceedings of the courts of our sister states as we once did. It has become necessary and commonplace in a national economy for courts to interpret and enforce the laws of other

4

> jurisdictions. **In these circumstances, there is ordinarily no reason to entertain subsequent local litigation paralleling an already instituted action in another state.** And this is so whether the later New Jersey action is brought by plaintiff or defendant in the earlier case . . . .

*Cogen Techs. v. Boyce Eng'g*, 241 N.J. Super. 268, 272-73 (App. Div. 1990), cert. denied, 122 N.J. 358 (1990) (emphasis added).

And there is no reason that has been brought to the Court's attention why this analysis should be any different in the state-versus-federal context.

Finally, while the parties have petitioned the Court for a stay of the proceedings, their own legal authority and general principles of judicial economy support a dismissal without prejudice under these facts. "The general rule favors stays or **dismissals** in comity-stay situations, in the absence of special equities." Am. Home Prods., *supra*, 286 N.J. Super. at 36 (emphasis added). A comity dismissal, since it does not adjudicate the merits, should be without prejudice. *Exxon Research v. Industrial Risk*, 341 N.J. Super. 489, 518-20 (App. Div. 2001). In this case, in the federal forum, the parties will likely receive a full adjudication of the merits of all claims against the directors and officers. There is therefore no reason for this Court to continue to administer the case as to these parties. In the unlikely event that the parties are not able to receive a full adjudication in the federal case, there will be no prejudice to their re-filing at a later date.

### 2) Ernst & Young's Motion to Stay Pending Mediation/Arbitration

The claims against E & Y cannot proceed in the federal forum, because the lack of diversity will defeat the court's subject matter jurisdiction. Nevertheless, this Court has the authority, and must exercise the authority, to stay the claims against Ernst & Young, until the parties engage the alternative dispute proceedings that they contracted for.

The Federal Arbitration Act, 9 U.S.C. § 3, mandates a stay of proceedings where the court finds an issue is referable to arbitration. A dispute is referable to arbitration if the parties have a valid agreement to arbitrate, as interpreted under general principles of state contract law. *Circuit City Stores v. Najd*, 294 F.3d 1104 (9th Cir. 2002). Under both federal and state statutory law, a stay, and not a dismissal, is the appropriate judicial response where the Court finds a dispute referable to arbitration. *Wein v. Morris*, 388 N.J. Super. 640, 653-54 (App. Div. 2006), cert. granted, 190 N.J. 254 (2007); *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2003).

5

Here, the dispute is referable to arbitration. E & Y has provided the Court with alternative dispute agreements spanning the time in question, and each provides for mediation and arbitration. There is no evidence, nor are there allegations, that the signatories to the contract acted improperly under state law when they contracted for mediation and arbitration. All allegations of wrongdoing go toward alleged breaches of fiduciary duty—not the engaging of E. & Y to provide audit services. Without such particularized facts specific to the arbitration clause, the Court need not go further in its analysis. Cf. Suntera Corp. v. Ernst & Young, LLP, 2003 WL 23497720, *7 (Md. Cir. Ct. Jan 30, 2004).

Furthermore, the prerequisite of mediation does not stop the Court from staying this proceeding. Courts have stayed or dismissed proceedings with near identical arbitration provisions containing mediation prerequisites. E.g. Degroff v. Mascotech Forming Techs., 179 F. Supp.2d 896, 913 (N.D. Ind. 2001). Here, plaintiff has moved in a timely manner to compel the agreed upon arbitration procedure, which includes mediation. A stay is the appropriate judicial response.

Two Orders accompany this decision.


ROBERT P. CONTILLO, J.S.C.

6