UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                      :

In re REFCO, INC. SECURITIES LITIGATION     :       07 MDL No. 1902 (GEL)

                                        :

-------------------------------------------------------------x
-------------------------------------------------------------x
                                      :

MARC S. KIRSCHNER, As Trustee of the Refco   :
Litigation Trust,                            :

                                      :

               Plaintiff,              :

                                      :       07 Civ. 11604 (GEL)

        -v-                      :

                                      :     **OPINION AND ORDER**

GRANT THORNTON LLP, MAYER BROWN,     :
ROWE & MAW, LLP, et al., ERNST & YOUNG   :
U.S. LLP, PRICEWATERHOUSECOOPERS     :
LLP, CREDIT SUISSE SECURITIES (USA) LLC   :
(f/k/a CREDIT SUISSE FIRST BOSTON LLC),   :
BANC OF AMERICA SECURITIES LLC,       :
DEUTSCHE BANK SECURITIES INC., PHILIP  :
R. BENNETT, SANTO C. MAGGIO, ROBERT   :
C. TROSTEN, TONE N. GRANT, REFCO     :
GROUP HOLDINGS, INC., LIBERTY CORNER  :
CAPITAL STRATEGIES, LLC, WILLIAM T.    :
PIGOTT, EMF FINANCIAL PRODUCTS, LLC,   :
EMF CORE FUND, LTD., DELTA FLYER     :
FUND, LLC, ERIC M. FLANAGAN, INGRAM   :
MICRO, INC., CIM VENTURES, INC.,       :
BECKENHAM TRADING CO., INC., ANDREW  :
KRIEGER, COAST ASSET MANAGEMENT,    :
LLC (f/k/a COAST ASSET MANAGEMENT LP), :
CS LAND MANAGEMENT, LLC, and        :
CHRISTOPHER PETITT,             :

                                      :

                    Defendants.        :

                                      :

-------------------------------------------------------------x

Richard I. Werder, Jr., Michael B. Carlinsky,
Susheel Kirpalani, Sascha N. Rand, Quinn Emanuel
Urquhart Oliver & Hedges LLP, New York, NY,
for Plaintiff.

Philip D. Anker, Robert B. McCaw, Lori A. Martin,
John V.H. Pierce, Dawn M. Wilson, Michael L.
Feinberg, Ross E. Firsenbaum, Wilmer Cutler
Pickering Hale and Dorr LLP, New York, NY
<u>for Defendants Credit Suisse Securities (USA) LLC
(formerly Credit Suisse First Boston LLC), Banc of
America Securities LLC, and Deutsche Bank
Securities Inc.</u>

David E. Mollón, Bradley E. Lerman, Catherine W.
Joyce, Linda T. Coberly, Winston & Strawn LLP,
New York, NY, and Chicago, IL, <u>for Defendant
Grant Thornton LLP</u>.

James J. Capra, Jr., Orrick Herrington & Sutcliffe
LLP, New York, NY, <u>for Defendant
PricewaterhouseCoopers LLP</u>.

Craig D. Singer, John K. Villa, Michael S.
Sundermeyer, Thomas G. Ward, Williams &
Connolly LLP, Washington, DC, <u>for Defendant
Mayer Brown LLP</u>.

Anthony M. Candido, Joel M. Cohen, Clifford
Chance U.S. LLP, New York, NY, <u>for Defendant
UK Limited Liability Partnership Mayer Brown
International LLP</u>.

GERARD E. LYNCH, <u>District Judge</u>:

Plaintiff Marc S. Kirschner, in his capacity as Trustee of the Refco Litigation Trust,

originally filed this action in the Circuit Court of Cook County, Illinois, asserting claims under

Illinois state law against certain Refco insiders, professionals, and advisors for, *inter alia*, fraud,

breach of fiduciary duty, and malpractice. Certain defendants (the "Removing Defendants"[1])

---

[1] The Removing Defendants are Credit Suisse Securities (USA) LLC, Bank of America
Securities LLC, Deutsche Bank Securities, Inc., Grant Thornton LLP, Mayer Brown LLP, Mayer
Brown International LLP, and PricewaterhouseCoopers LLP.

removed the action to the United States District Court for the Northern District of Illinois on the ground that the case is "related to" Refco's Chapter 11 bankruptcy, 28 U.S.C. 1334(b); see id. § 1452(a),[2] and concurrently petitioned the Panel on Multidistrict Litigation ("MDL Panel") to transfer the case to the United States District Court for the Southern District of New York, where the Refco bankruptcy is pending, see In re Refco, Inc., No. 05-60006 (RDD) (Bankr. S.D.N.Y.). The Trustee opposed the transfer petition and moved the Northern District of Illinois to remand the action to Illinois state court, or in the alternative, to abstain. Upon application by the Removing Defendants, the Northern District of Illinois stayed proceedings pending the MDL Panel's decision. The MDL Panel subsequently transferred the action to this Court for coordinated pretrial proceedings with the multitude of other Refco-related actions already pending on the Court's docket.

The MDL Panel's transfer of this action to this Court effectively lifts the stay imposed by the Northern District of Illinois. This Opinion addresses the Trustee's pending motion to remand for lack of subject matter jurisdiction, or in the alternative, to abstain under 28 U.S.C. §§ 1334(c)(1) and (c)(2). For the reasons stated below, the Trustee's motion will be denied.

## BACKGROUND

### I.    Events Leading to Refco's Bankruptcy

Prior to its collapse in the fall of 2005, Refco was among the world's largest providers of brokerage and clearing services in the international derivatives, currency, and futures markets.

---

[2] See California Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 103 (2d Cir. 2004) (noting that "removal under [§ 1452(a)], unlike removal under Section 1441(a), does not require the unanimous consent of the defendants").

(Compl. ¶ 56.[3])  Beginning in the late 1990s, members of Refco's senior management, with the aid of certain of Refco's professionals and financial advisors (collectively, the "defendants"), allegedly orchestrated a fraudulent scheme to artificially boost Refco's performance and conceal Refco's true financial condition so that these senior executives, through the company's August 2004 leveraged-buy-out and August 2005 initial public offering ("IPO"), could cash out their interests in Refco on lucrative terms.  (Id. ¶¶ 4-7, 32, 59-149.)  Defendants allegedly carried out this scheme by "concealing substantial Refco trading losses and operating expenses, recording hundreds of millions in fictitious Refco income, and funding Refco's operating expenses and acquisitions with misappropriated customer assets."  (P. Mem. 2-3, citing Compl. ¶¶ 59-149.)

On October 10, 2005, just two months after its IPO, Refco announced that it had discovered an undisclosed $430 million receivable due from an entity controlled by Refco's CEO, Philip R. Bennett.  (Comp. ¶¶ 147-48.)  As a result, the company announced that its financial statements for the preceding four years could no longer be relied upon.  (Id. ¶ 148.)  Following these disclosures, Refco's stock plummeted and was de-listed by the New York Stock Exchange, leading to over $1 billion in lost market capitalization.  (Id. ¶¶ 148-49.)  On October 17, 2005, Refco Inc. and over twenty of its subsidiaries filed for protection under Chapter 11 of Title 11 of the United States Code.  (See id. ¶¶ 32, 34.)

---

[3] All references to the complaint in this opinion are to the complaint originally filed in the Circuit Court of Cook County, Illinois.  (Kirschner Decl. Ex. A.)  All factual allegations in the complaint are assumed to be true for purposes of this motion.  See Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).

II.    **The Refco Litigation Trust**

On December 15, 2006, approximately fourteen months after Refco filed for bankruptcy, the United States Bankruptcy Court for the Southern District of New York confirmed the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the "Plan"). (See Kirschner Decl. Exs. B, C.)  The Plan provided for the establishment of a Litigation Trust and the appointment of a Litigation Trustee to pursue such "claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that any [Refco] Debtor or RCM [(Refco Capital Markets Ltd.)] may hold against any Person." (Id. Ex. B § 1.112; see id. § 5.7(a)).

Pursuant to the Plan, all "Contributed Claims," defined as "any and all Litigation Claims of the Debtors, RCM or their estates," would be irrevocably transferred to the Litigation Trust on the effective date of the Plan. (Id. Ex. B §§ 1.48, 5.7(b).)  In exchange, "the Litigation Trust Beneficiaries," who are the holders of allowed general unsecured claims against the Refco Debtors, would receive "Litigation Trust Interests," which would be allocated on the basis of the beneficiaries' allowed claims under the confirmed Plan.[4] (Id. Ex. B § 5.7(b); see id. ¶¶ 10-11, 13, 15.)  The Plan expressly provided that "[u]pon transfer of the Contributed Claims to the

---

[4] Although the estate of RCM was originally listed as a Litigation Trust Beneficiary, the RCM plan administrator "irrevocably instructed the Litigation Trustee to distribute beneficial interests in the Litigation Trust directly to creditors of RCM," and thus no recoveries on the claims asserted by the Trustee in this case will be distributed to RCM creditors through the RCM estate. (Kirschner Decl. ¶ 13 n.2.)

Litigation Trust, the Debtors, RCM, and the Plan Administrator shall have no interest in or with respect to the Contributed Claims or the Litigation Trust."[5]  (Id. Ex. B § 5.7(b).)

The establishment of the Litigation Trust, plaintiff Marc S. Kirschner's appointment as Trustee of the Litigation Trust, the transfer of Contributed Claims to the Litigation Trust, and the allocation of Litigation Trust Interests to the Litigation Trust Beneficiaries, became effective on December 26, 2006.  (Id. ¶¶ 2, 9, 10.)

## III.    Procedural History

On August 21, 2007, nine months after the Plan was confirmed, the Trustee filed this action in the Circuit Court of Cook County, Illinois, asserting state-law claims against defendants for breach of fiduciary duty, fraud, aiding and abetting breach of fiduciary duty and fraud, malpractice, and negligent misrepresentation.  As noted above, certain defendants removed the case to the federal district court in the Northern District of Illinois and simultaneously petitioned the MDL Panel to transfer the case to this Court.  The Trustee opposed the transfer petition and moved to remand the case on the ground that the federal court lacked subject matter jurisdiction over its purely state law claims.  See 28 U.S.C. § 1447(c).  The Trustee also asserted that even if the court had subject matter jurisdiction, abstention was both mandatory and warranted in the exercise of discretion under 28 U.S.C. § 1334(c).  Upon the Removing Defendants' motion, the Northern District of Illinois stayed the action pending the decision of the MDL panel.  On December 28, 2007, the MDL Panel transferred the action to

---

[5] Similarly, § 1.2(a) of the Litigation Trust Agreement provides that, as of the effective date of the Plan, RCM and the Refco Debtors "hereby transfer, assign, and deliver to the Litigation Trustee, without recourse, all of their respective rights, title, and interest in and to the Contributed Claims free and clear of any and all liens."  (Kirschner Decl. Ex. D § 1.2(a).)

this Court pursuant to 28 U.S.C. § 1407, thus effectively lifting the stay imposed by the Northern District of Illinois and bringing the Trustee's motion to remand and/or abstain, to this Court's consideration.[6]

## DISCUSSION

The Trustee contends that (1) the Court lacks subject matter jurisdiction because the claims asserted in this case are not "related to" the Refco bankruptcy within the meaning of 28 U.S.C. § 1334(b); and (2) even if jurisdiction exists, abstention is both mandatory and warranted in the exercise of discretion pursuant to 28 U.S.C. § 1334(c). These arguments will be addressed in turn.

**I.      Subject Matter Jurisdiction**

    A.      <u>Removal and Jurisdiction in Bankruptcy Cases</u>

The party seeking removal of an action from state to federal court bears the burden of proving federal jurisdiction. <u>See</u> <u>In re WorldCom, Inc. Secs. Litig.</u>, 293 B.R. 308, 316 (S.D.N.Y. 2003), citing <u>Linardos v. Fortuna</u>, 157 F.3d 945, 947 (2d Cir. 1998). With regard to bankruptcy-related claims, 28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); <u>see</u> <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124, 131-32 (1995) (Ginsburg, J., concurring) (finding that § 1452 was "meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases").

---

    [6] In conjunction with the pending motion, the parties have submitted both the briefing materials originally filed in the Northern District of Illinois and supplemental briefs addressing the applicable legal standards in light of the MDL Panel's transfer of the action to this Court.

The propriety of removal under § 1452(a) is predicated on the scope of federal jurisdiction under 28 U.S.C. § 1334, which provides, in relevant part:

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under title 11, or arising in or related to cases under title 11.*

28 U.S.C. § 1334(b) (emphasis added). None of the parties contends that this action is a proceeding "arising under" Title 11 or "arising in" a Title 11 case. Thus, the crux of the jurisdictional dispute is whether the Trustee's claims, which arise solely under Illinois state law, are sufficiently "related to" the Refco bankruptcy to establish federal jurisdiction.

### 1.    Applicable Legal Standard

As a threshold matter, the parties disagree as to whether the Second or Seventh Circuit's standard for "related to" jurisdiction governs this case. The Second Circuit applies the expansive test for "related to" jurisdiction articulated by the Third Circuit in In re Pacor, Inc., 743 F.2d 984 (3d Cir. 1984), which has been adopted by the vast majority of other circuits, see In re WorldCom, 293 B.R. at 317 (noting that "[t]he dominant standard for 'related to' jurisdiction is that set forth by the Third Circuit in In re Pacor"); Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995) (collecting cases). Under Pacor:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

8

In re Pacor, Inc., 743 F.2d at 994 (citations omitted); see In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992).  The Seventh Circuit, in contrast, has explicitly rejected the "sweeping" Pacor test and established a more restrictive standard in which federal jurisdiction exists only where a dispute "affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors."  In re FedPak Sys., Inc., 80 F.3d 207, 213-14 (7th Cir. 1996) (alteration in original) (internal quotation marks omitted).

The Trustee contends that the Court should apply "Seventh Circuit law" in this case because "[u]pon remand of this action to the Northern District of Illinois for trial, that court (or the Seventh Circuit in the context of any appeal) will have to reevaluate whether there is federal jurisdiction over the action under the Seventh Circuit's narrower 'related to' standard."  (P. Supp. Mem. 2, 4.)  According to the Trustee, even if this Court were to find subject matter jurisdiction under "Second Circuit law," "when this action is returned to the Northern District of Illinois for trial it will still be subject to remand to Illinois state court," and "[f]orcing the parties to conduct federal pretrial discovery without first determining that there is federal subject matter jurisdiction to try the action would be grossly inefficient and would substantially prejudice the parties."  (Id. at 2, 4.)  To support this contention, the Trustee cites the different evidentiary rules for fact depositions in federal court and Illinois state court and argues that "much of the federal discovery may be rendered inadmissible at trial in Illinois state court" should the case ultimately be remanded by the Northern District of Illinois.  (Id. at 4 & n.4)  Such an outcome, according to the Trustee, would undermine the MDL transfer statute's goal of promoting the "just and efficient conduct" of the transferred case.  28 U.S.C. § 1407(a).

9

Preliminarily, the issue of whether to apply Second or Seventh Circuit "law," as the Trustee frames it, is not a proper "choice of law" question. Although it is meaningful to ask whether New York or Illinois state law governs a case — because New York and Illinois are distinct sovereignties, each with power to regulate transactions within the scope of its legislative jurisdiction as it sees fit — there is no such thing as "Second Circuit law" or "Seventh Circuit law" in this sense, as intermediate federal courts of appeals have no such sovereignty. As the Second Circuit has put it, "[f]ederal courts comprise a *single* system applying a *single* body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91 (2d Cir. 2007) (emphasis added), quoting Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) ("Although federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed to be *unitary*." (emphasis added)). References to "the law of this Circuit," while common and appropriate, are essentially figures of speech, reflecting the fact that federal courts are part of a hierarchy of precedential authority, in which lower courts are bound by the precedents of the appellate courts to which they are subject. While these precedents may vary, due to human frailty and the occasional difficulty of interpreting the applicable laws, every federal court in the land is obliged to apply this "unitary" federal law, interpreted as best that court can in light of the precedents that bind it. Menowitz, 991 F.2d at 40.

Moreover, "[t]his obligation does not change in the context of transferred cases." Desiano, 467 F.3d at 91. The Second Circuit has specifically instructed that although district judges should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can," a "transferee federal court" has an independent

obligation to "apply its [own] interpretations of federal law, not the constructions of federal law of the transferor circuit." Id., quoting Menowitz, 991 F.2d at 40. Indeed, if "a federal court simply accepts the interpretation of another circuit without [independently] addressing the merits, it is not doing its job." Id. (alteration in original), quoting Menowitz, 991 F.2d at 40.

There may be questions on which prudence dictates reference to the decisions of other circuits. Where, for example, as in cases transferred under the MDL process, a case will be returned to the transferor court for trial, see Lexecon v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 40 (1998), it may make sense for the transferee court to consult the "law" of another circuit to anticipate how the trial will be conducted, and to make rulings that will facilitate such a trial.[7] But this principle can have little application to a matter as fundamental as subject matter jurisdiction. A federal court is obligated to assure itself of its own jurisdiction, *sua sponte* if necessary, and in doing so it must apply the law as it understands it, and as it is bound by precedent. The converse of the present situation illustrates the point: if the circuit with authority over the transferor court took a broad view of a jurisdictional statute, it would be extraordinary if a transferee court should accept jurisdiction of a case, where its own considered view, after according respectful attention to the non-binding prior decision of an out-of-circuit court, was that it lacked subject matter jurisdiction, simply because some other court erroneously

---

[7] The Trustee cites In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, a case from this district which distinguished between pretrial and trial issues and held that "in the context of class certification and other issues inherently enmeshed with the trial," "the law of the transferor circuit controls." 241 F.R.D. 435, 441 (S.D.N.Y. 2007), cited at P. Supp. Mem. 4. Even assuming *arguendo* that this distinction between pretrial and trial issues is correct, however, the MTBE court itself recognized that "pretrial issues such as whether the court has *subject matter* . . . jurisdiction over the action" are governed by "the law of the *transferee* circuit." Id. at 439 (emphasis added).

believed that jurisdiction was present.  The same would be all the more true if the circuit court

by whose precedents the transferee court was bound had authoritatively held that jurisdiction

was lacking under the circumstances.  In this case, it is the transferor circuit that takes the

narrower view of the jurisdictional question, but the need for this Court to undertake its own

inquiry of subject matter jurisdiction is no less necessary.

The Trustee argues that this Court must defer to the Seventh Circuit's views because,

when the case is returned to the Northern District of Illinois for trial, that court will, in turn, be

required to revisit the jurisdictional question, and it may then find itself obliged to remand the

case in light of Seventh Circuit precedent.  But it would be no more appropriate for this Court to

decline to exercise jurisdiction that it believes Congress has given it, and that has been properly

invoked by a litigant, because the Seventh Circuit has held to the contrary, than it would be for

this Court to find no jurisdiction out of anticipation that the particular district judge to whom the

case was assigned for trial might disagree with its ruling on a matter of first impression.

To do so, in fact, would be imprudent as well as conceptually inappropriate.  The

Trustee's claim that applying the Second Circuit's jurisdictional standard would be "grossly

inefficient" (P. Supp. Mem. 4) rests on the inherently dubious business of forecasting the future

course of litigation.  And indeed, the Trustee's prediction in this case is especially dubious.  Its

concerns are based fundamentally on the expectation that the case will be returned to the Seventh

Circuit for trial.  In the real world of litigation, upwards of 95% of civil cases *never* reach trial,

but are settled without a trial or otherwise resolved by the parties or the court.  See Stephen C.

Yeazell, The Misunderstood Consequences of Modern Civil Process, 1994 Wis. L. Rev. 631, 633

(observing that in 1990, "only 4.3% of the filed civil cases resulted in trials"); Marc Galanter,

The Hundred-Year Decline of Trials and the Thirty Years War, 57 Stan. L. Rev. 1255, 1259

(2005) (noting that in 2003, "only 1.7% of civil terminations occurred during or after trial").

And any experienced litigator knows that complex civil litigation of this particular sort even

more rarely requires trial.  It is a virtual certainty not only that these matters will, at some point,

settle, but that they will necessarily settle by virtue of some comprehensive resolution of all of

the claims pending against defendants in this matter, the vast majority of which are pending

before this Court.  Moreover, if the cases do proceed to trial someday, there is hardly a guarantee

that current Seventh Circuit precedent will provide the rule of decision by which the transferor

court will assess its jurisdiction at the trial stage.  The circuit conflict may by then be resolved by

the Supreme Court; the Seventh Circuit may, by *en banc* decision, bring its view into line with

that of the other circuits, or, by future panel decisions, refine its rule in a manner more favorable

to the position of the defendants here; facts may emerge that warrant a change of venue for trial;

or other litigation contingencies presently unforeseeable may in some other way alter the case.

All this Court can do is to decide the issue presently before it on the strength of the arguments

that appear most persuasive to it, based on the binding precedents that must shape its judgment.[8]

---

[8] Moreover, the Trustee's allegedly practical concern about what would happen if the
Northern District of Illinois did decide to remand the case for trial is singularly unpersuasive.
The Trustee argues that the parties should not be compelled to conduct discovery under federal
rules if the case will be tried under state rules of procedure.  It is hardly rare for parties to
conduct discovery in one proceeding that will eventually be used in a trial in another matter in a
different jurisdiction.  The bulk of discovery is conducted for purposes of information-gathering
that will not be affected by the venue or rules governing a subsequent trial.  To the extent that
depositions are expected to be used at trial in lieu of live testimony, it is easy enough for the
depositions to be conducted in the manner necessary to meet the most conservative of potential
trial rules.  Indeed, in its supplemental brief, the Trustee admits as much by acknowledging that
if this action were remanded, "the Trustee still has every intention of coordinating discovery
with the Refco-related actions pending in this Court, but would do so under the supervision of,
and pursuant to procedures approved by, the Illinois state trial court in which the action would be

Accordingly, notwithstanding the Trustee's contention that "Seventh Circuit law" governs this case, this Court will undertake its own independent analysis of subject matter jurisdiction, informed by the precedents of the Second Circuit, to determine whether the Trustee's claims are sufficiently "related to" the Refco bankruptcy to establish federal jurisdiction.

        2.     <u>"Related to" Jurisdiction</u>

The Removing Defendants contend that "related to" jurisdiction exists in this case because: (1) the Trustee is the "representative" of the Refco Debtors' bankruptcy estates, on whose "behalf" he acts, and thus the resolution of this action, which seeks to recover more than $2 billion to distribute to the Refco Debtors' creditors, "will, most assuredly, affect those estates"; (2) defendant Grant Thornton LLP has filed a proof of claim in the Refco bankruptcy for unpaid fees, contribution, and indemnification, and "the outcome of this action will directly impact how much Grant Thornton and the other defendants will receive from the estates"; and (3) several of the defendants, who are former Refco executives, are seeking access to the Refco Debtors' directors and officers' liability insurance policies, which are treated in the Plan as property of the bankruptcy estates, to pay their defense costs.  (D. Mem. 2, 9-12.)  The Trustee asserts that none of these grounds provides a basis for federal jurisdiction.

As described above, the general test for "related to" jurisdiction under § 1334(b) examines whether the outcome of an action "might have *any conceivable effect* on the bankrupt estate."  <u>In re Cuyahoga</u>, 980 F.2d at 114 (emphasis added) (internal quotation marks omitted);

_____

pending and tried."  (P. Supp. 4 n.4.)  If the Trustee can conduct effective discovery even after a remand to state court, there is no reason he cannot do so now.

see In re Pacor, 743 F.2d at 994.  Although the reach of the Pacor test is broad, it is not

"limitless," Celotex, 514 U.S. at 308, and some courts have held that federal jurisdiction "shrinks

once bankruptcy plan confirmation has occurred," Guccione v. Bell, No. 06 Civ. 492, 2006 WL

2032641, at *4 (S.D.N.Y. July 20, 2006); see In re General Media, Inc., 335 B.R. 66, 73

(S.D.N.Y. 2005).  The rationale for diminished federal jurisdiction post-confirmation rests on the

notion that a reorganized debtor is "emancipated" by confirmation and that "just like any other

corporation[,] it must protect its interests in the way provided by the applicable non-bankruptcy

law, without any special swaddling."  In re Boston Reg'l Med. Ctr., Inc., 410 F.3d 100, 106 (1st

Cir. 2005) (internal quotation marks omitted); see In re General Media, 335 B.R. at 73 ("'Since

the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and

to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly

as possible all leading strings which may limit and hamper its activities and throw doubt upon its

responsibility,'" quoting North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.,

143 F.2d 938, 940 (2d Cir. 1944)).

> Given the broad sweep of the Pacor test, courts have observed that
>
>> applying the general [Pacor] rule without qualification after the
>> confirmation of a reorganization plan easily could result in the
>> bankruptcy court retaining jurisdiction of all cases affecting the
>> reorganized debtor for many years thereafter.  This prospect not
>> only would work an unwarranted expansion of federal court
>> jurisdiction but also would unfairly advantage reorganized debtors
>> by allowing such firms to funnel virtually all litigation affecting
>> them into a single federal forum.

In re Boston Reg'l Med. Ctr., 410 F.3d at 106.  Accordingly, numerous courts both in this and

other circuits have held that "the scope of bankruptcy court jurisdiction diminishes with plan

confirmation."  In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004); accord In re Pegasus

15

Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005); Guccione, 2006 WL 2032641, at *4; In re General Media, 335 B.R. at 73.

The First Circuit, however, has distinguished between reorganization plans and liquidation plans, holding that in the latter scenario,

> when a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a *liquidating* plan of reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation.

In re Boston Reg'l Med. Ctr., 410 F.3d at 107 (emphasis added).  In a liquidation plan, "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend."  Id. at 106.  Accordingly, the First Circuit has reasoned that "there is much less reason to depart from the general [Pacor] rule for related to jurisdiction" when the plan at issue is a liquidating plan because "the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors" does not exist.  Id.

This case, which involves a liquidation plan, well illustrates the force of the First Circuit's distinction.  The plaintiff here is not a reorganized corporation that has put its debts behind it, but a Trustee whose function is virtually indistinguishable from that of the bankruptcy estate itself: to gather the assets of a defunct debtor for distribution to its creditors.  See Kirschner Decl. Ex. B § 5.7(b) (providing that "the Litigation Trustee shall be a representative of the Estates . . . with respect to the Contributed Claims"); id. Ex. C ¶ 23 (specifying that the Contributed Claims "shall be deemed asserted on behalf of each applicable Estate holding such claim immediately prior to contribution," and that the Litigation Trustee "shall be deemed the successor-in-interest to each of the Contributing Debtors").  To permit this litigation to escape

16

the usual test of federal jurisdiction would further none of the purposes underlying a more restrictive jurisdictional test in post-confirmation cases.  Rather, it would permit creditors, through the vehicle of a post-confirmation litigation trust, to pursue potential assets in fragmented litigation, undermining the goal of unified administration of bankruptcy cases.

Several courts in this circuit have cited the First Circuit's approach approvingly, see, e.g., In re Cross Media Mktg. Corp., 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007); In re Agway, Inc., Adv. Pro. No. 04-80269, slip op. at 7-8 (Bankr. N.D.N.Y. Mar. 6, 2006); In re General Media, 335 B.R. at 73 n.7, but the Second Circuit has not yet addressed the issue squarely.  Although the First Circuit's reasoning is persuasive, it is unnecessary for the resolution of this case to adopt its distinction between reorganization and liquidation plans because, even if federal jurisdiction is diminished post-confirmation, the Trustee's claims here are nevertheless still sufficiently "related to" the Refco bankruptcy to support jurisdiction.

According to the line of decisions holding that federal jurisdiction shrinks post-confirmation,

> a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements.  First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute.

In re Kassover, 336 B.R. 74, 79 (S.D.N.Y. 2006); see Guccione, 2006 WL 2032641, at *4; In re General Media, 335 B.R. at 73; see also In re Resorts, 372 F.3d at 168-69.  In this case, both requirements for post-confirmation jurisdiction are satisfied.  With regard to the "retention of jurisdiction" requirement, it is undisputed that the Plan expressly preserves jurisdiction over any "causes of action by or on behalf of . . . the Litigation Trustee."  (Kirschner Decl. Ex. B

17

§ 11.1(k)).  This action, moreover, clearly shares a "close nexus" to the Refco bankruptcy as the claims asserted in this case do not "belong[] to the litigation trust personally," In re Premium Escrow Servs., Inc., 342 B.R. 390, 399 (Bankr. D. Colo. 2006), but rather, are precisely those causes of action that were transferred by the Refco Debtors to the Litigation Trust pursuant to the Plan and the Litigation Trust Agreement.  Accordingly, the "implementation" and "execution" of the confirmed Plan are directly at issue as the very claims being prosecuted by the Trustee "arise under the Plan."  In re General Media, 335 B.R. at 73, 75; see In re Agway, slip op. at 9 (finding "sufficient nexus" for "related to" jurisdiction where, inter alia, "the Liquidating Trust was given the power to prosecute the action under the terms of the Debtor's Plan").  Any funds recovered by the Trustee in this case will be distributed to Refco's general unsecured creditors, thus further evidencing the "close nexus" between the Trustee's claims and the bankruptcy proceeding.  See In re Railworks Corp., 325 B.R. 709, 723 (Bankr. D. Md. 2005) (finding that "the implementation of the payment of unsecured creditors through claims prosecuted by the Litigation Trustee is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear"); see also In re Tyson, No. 03-41900, 2007 WL 2379624, at *3 (Bankr. S.D.N.Y. Aug. 17, 2007); In re Boston Reg'l Med. Ctr., 410 F.3d at 107; In re AstroPower Liquidating Trust, 335 B.R. 309, 325 (Bankr. Del. 2005).

The Trustee nevertheless contends that "related to" jurisdiction does not exist because, upon confirmation of the Plan, the Refco Debtors irrevocably assigned all of their causes of action to the Litigation Trust.  As a result, any recovery of funds will be distributed directly to the Litigation Trust Beneficiaries, not to the Refco Debtors, and thus adjudication of the claims cannot affect the Refco Debtors' estates.  The Trustee's arguments, however, are premised on the

Seventh Circuit's narrower standard for "related to" jurisdiction, which, as explained above, does not control here.[9]  In contrast to the Seventh Circuit's approach, which considers only whether a dispute "affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors," In re FedPak Sys., 80 F.3d at 213-14 (alteration in original) (internal quotation marks omitted), the applicable test in this case is significantly broader, examining whether the action has "a close nexus to the bankruptcy plan or proceeding," In re Kassover, 336 B.R. at 79; see Celotex, 514 U.S. at 308 (observing that "related to" jurisdiction encompasses "more than simple proceedings involving the property of the debtor or the estate").

Even accepting as true the Trustee's contention that no property of the Refco Debtors' estates will be affected by this action, that fact alone is not dispositive of the jurisdictional inquiry.  As described above, the Trustee's claims in this case are precisely those that were transferred to it by the Refco Debtors pursuant to the Plan and the Litigation Trust Agreement. The Trustee's claims thus "arise under the Plan," and prosecution of this action directly implicates the "implementation" and "execution" of the "confirmed plan [and] incorporated litigation trust agreement."  In re General Media, 335 B.R. at 73, 75 (internal quotation marks omitted).  Under the governing legal standard, these facts are sufficient to establish the "close nexus" required for post-confirmation jurisdiction.

---

[9] The Trustee's citation to two decisions by the bankruptcy court for the Northern District of Illinois, see In re Commercial Loan Corp., 363 B.R. 559 (Bankr. N.D. Ill. 2007); In re Federalpha Steel LLC, 341 B.R. 872 (Bankr. N.D. Ill. 2006), are thus inapposite because both decisions applied the Seventh Circuit's narrower standard for "related to" jurisdiction.

The Court's exercise of jurisdiction in this case, moreover, is entirely consistent with Congress's intent in enacting § 1344(b) "to grant *comprehensive* jurisdiction to the bankruptcy courts so that they might deal *efficiently and expeditiously with all matters* connected with the bankruptcy estate." Celotex, 514 U.S. at 308 (emphasis added) (internal quotation marks omitted); see In re Boston Reg'l Med. Ctr., 410 F.3d at 105 ("Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the *entire universe of matters* connected with bankruptcy estates." (emphasis added)). The efficiency gains that result from asserting jurisdiction in this case are particularly striking in light of the multitude of other Refco-related actions currently pending before this Court, many of which involve many of the same parties and arise out of the same set of facts as those described in the Trustee's complaint.

In addition, as a practical matter, adopting the Trustee's position would effectively extinguish federal jurisdiction in all cases where a litigation trustee prosecutes claims specifically assigned to it by a confirmed bankruptcy plan. See In re LGI, Inc., 322 B.R. 95, 104 (Bankr. D.N.J. 2005) (noting that "[d]efendants' overstated position would recharacterize the nature of a post-confirmation trust litigation so that every post-confirmation trust case would fail the 'close nexus' test by virtue of having an identity separate from the debtor's estate"). The legitimate function of a litigation trust is not to serve as a vehicle for escaping federal jurisdiction, but rather, to "allow a Chapter 11 debtor to focus preconfirmation on the more pressing needs of its reorganization or liquidation while deferring issues regarding . . . causes of action . . . until after confirmation of its plan." Andrew M. Thau et al., Postconfirmation Liquidation Vehicles (Including Liquidating Trusts and Postconfirmation Estates): An Overview,

16 J. Bankr. L. & Prac. 201, 204 (April 2007); see id. at 205 (noting that post-confirmation

liquidation vehicles such as litigation trusts "serve to enable confirmation notwithstanding that

certain matters remain[] unsettled," including "the litigation of claims and/or the recovery . . . of

all of the debtor's . . . causes of action"); In re Resorts, 372 F.3d at 169 (observing that the

"Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed

from bankruptcy court oversight without waiting for the resolution of the litigation claims").  It

is not at all surprising, then, that courts in both this and other circuits have recognized, contrary

to the Trustee's position, that "[l]itigation trusts, which serve a valid purpose in the bankruptcy

process, may continue long after a reorganization plan has been confirmed and the debtor has

emerged from bankruptcy[,] [a]nd yet bankruptcy jurisdiction may still obtain if there is

sufficient connection to the bankruptcy." In re Resorts, 372 F.3d at 164; accord In re

AstroPower Liquidating Trust 335 B.R. at 325; In re Railworks Corp., 325 B.R. at 723; Rahl v.

Bande, 316 B.R. 127, 134 (S.D.N.Y. 2004).

In sum, even assuming *arguendo* that federal jurisdiction diminishes post-confirmation,

the existence of a "close nexus" between the Trustee's claims and the Refco bankruptcy, coupled

with the Plan's express retention of jurisdiction over those claims, suffices to establish "related

to" jurisdiction in this case.[10]  Accordingly, the Trustee's motion to remand on the ground of lack

of subject matter jurisdiction must be denied.

---

[10] Accordingly, the Court need not address the Removing Defendants' alternative
arguments for jurisdiction.

II.    **Abstention**

    A.    Mandatory Abstention

    The Trustee asserts that even if subject matter jurisdiction exists, abstention is required

by 28 U.S.C. § 1334(c)(2).  Section 1334(c)(2) provides, in relevant part:

> [u]pon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court *shall abstain* from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).  A party seeking mandatory abstention under

§ 1334(c)(2) thus must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a
> state law claim; (3) the action is "related to" but not "arising in" a
> bankruptcy case or "arising under" the Bankruptcy Code; (4)
> Section 1334 provides the sole basis for federal jurisdiction; (5) an
> action is commenced in state court; [and] (6) that action can be
> "timely adjudicated" in state court.

In re Worldcom, 293 B.R. at 331.  "A party is not entitled to mandatory abstention if it fails to

prove any one of the statutory requirements."  Id.; see Mt. McKinley Ins. Co. v. Corning Inc.,

399 F.3d 436, 446-47 (2d Cir. 2005) (holding that mandatory abstention can be applied in a case

that has already been removed from state court).

    In this case, mandatory abstention is not warranted because, as the Removing Defendants

correctly contend, the Trustee has not met its burden of proving that its claims can be

"timely adjudicated" in Illinois state court.  28 U.S.C. § 1334(c)(2).  The Trustee relies on the

declaration of a former judge of the Cook County Circuit Court, who states that it is his

"impression that cases assigned to the commercial calendar are, by and large, handled efficiently and expeditiously." (Schiller Decl. ¶ 9.) The Trustee also presents statistics showing that in recent years, the average time to trial in Cook County has dropped significantly and cites a case from this district which purportedly found that the average "time from filing to date of trial in the Cook County courts was only longer than the comparable period in the Northern District of Illinois by a matter of months." (P. Reply Mem. 13, quoting Bondi v. Grant Thornton Int'l, 322 B.R. 44, 50 (S.D.N.Y. 2005)).

As the Bondi court itself recognized, however, "[t]hese statistics . . . do not tell the whole story." 322 B.R. at 50. Whatever might be true in the general run of cases filed in Illinois state court, this action is clearly distinguishable, constituting "but one piece of a much larger, extremely complex litigation puzzle." Id. As this Court has explained:

> [Section] 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court.

In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003); see Bondi, 322 B.R. at 50; In re WorldCom, 293 B.R. at 331. Indeed, far from promoting "timely adjudicat[ion]" of the Trustee's claims, to remand this action to the Illinois state court "would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court." In re Global Crossing, 311 B.R. at 349 (alteration in original). For these reasons, mandatory abstention pursuant to § 1334(c)(2) is clearly unwarranted.

23

B.     Discretionary Abstention

Neither is discretionary abstention appropriate.  Section 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11."  28 U.S.C. § 1334(c)(1).  Federal courts, however, must be "sparing" in their exercise of discretionary abstention, Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007), because they possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); see id. at 813 (observing that federal courts may abstain only for a few "extraordinary and narrow exception[s]").  Relevant considerations in determining whether to abstain pursuant to § 1334(c)(1) include "comity and federalism, judicial economy, and efficiency."  In re Worldcom, 293 B.R. at 332.

In this case, "there is little basis to invoke comity to the state courts, and every reason to invoke . . . federal jurisdiction."  Winstar, 2007 WL 4323003, at *5.  Although the Trustee's claims are based entirely on Illinois state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would "warrant abstention based on comity concerns."  In re Worldcom, 293 B.R. at 332; see Rahl, 316 B.R. at 135.  As the case was promptly removed, moreover, Illinois state courts have invested little or no time in the case.  See Winstar, 2007 WL 4323003, at *5.  This action also shares a close relationship with the Refco bankruptcy proceeding as the claims being prosecuted by the Trustee are the very causes of action that were assigned to it by the Refco Debtors

pursuant to the confirmed Plan. See supra at 17-21. Finally, as Judge Cote astutely observed in

a substantially similar case:

> it is beyond cavil that judicial economy and efficiency are best
> served by exercising the jurisdiction that so clearly exists. The
> MDL panel has consolidated scores of cases before this Court to
> promote the expeditious and efficient resolution of the claims
> arising from the collapse of WorldCom. The litigation is
> proceeding apace. Motions to remand . . . and to dismiss have
> been fully briefed, and . . . important discovery issues addressed.
> With the consolidation of the litigation in one court, the motion
> practice and discovery process can be managed to protect the
> rights of all parties and to preserve, to the extent possible, the
> maximum amount of assets for recovery by plaintiffs with
> meritorious claims.

In re Worldcom, 293 B.R. at 333. Given the "scores" of other Refco-related actions consolidated

by the MDL Panel and currently pending before this Court, the Trustee has advanced no

persuasive reason why a different outcome should result here. Id. Accordingly, the Trustee's

request for discretionary abstention under § 1334(c)(1) must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand, or in the alternative, to abstain, is

denied.

SO ORDERED.

Dated: New York, New York
        April 21, 2008

_____
GERARD E. LYNCH
United States District Judge

25