UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re REFCO, INC. SECURITIES LITIGATION    :      07 MDL No. 1902 (GEL)

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARC S. KIRSCHNER, AS TRUSTEE OF    :
THE REFCO LITIGATION TRUST,        :

           :

        Plaintiff,        :

           :

       - against -      :

           :

GRANT THORNTON LLP, MAYER BROWN,  :
ROWE & MAW, LLP, ERNST & YOUNG U.S.  :
LLP, PRICEWATERHOUSECOOPERS LLP,  :      07 Civ. 11604 (GEL)
CREDIT SUISSE SECURITIES (USA) LLC  :
(F/K/A CREDIT SUISSE FIRST BOSTON  :    **DECLARATION IN SUPPORT OF**
LLC), BANC OF AMERICA SECURITIES  :    **MOTION TO DISMISS COUNT**
LLC, DEUTSCHE BANK SECURITIES INC.,  :    **THIRTY-SEVEN OF THE**
PHILIP R. BENNETT, SANTO C. MAGGIO,  :    **COMPLAINT AS AGAINST**
ROBERT C. TROSTEN, TONE N. GRANT,  :    **INGRAM MICRO INC. AND**
REFCO GROUP HOLDINGS, INC., LIBERTY :    **CIM VENTURES INC.**
CORNER CAPITAL STRATEGIES, LLC,  :
WILLIAM T. PIGOTT, EMF FINANCIAL  :
PRODUCTS, LLC, EMF CORE FUND, LTD.,  :
DELTA FLYER FUND, LLC, ERIC M.  :    <u>ELECTRONICALLY FILED</u>
FLANAGAN, INGRAM MICRO, INC., CIM  :
VENTURES, INC., BECKENHAM TRADING  :
CO., INC., ANDREW KRIEGER, COAST  :
ASSET MANAGEMENT, LLC (F/K/A COAST :
ASSET MANAGEMENT LP), CS LAND    :
MANAGEMENT, LLC, AND CHRISTOPHER  :
PETITT,           :

           :

        Defendants.     :

           :

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       I, ROBERT F. WISE, JR., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746,

as follows:

       1.       I am an attorney admitted to practice before this Court and am a member of Davis

Polk & Wardwell, counsel for defendants Ingram Micro Inc. and CIM Ventures Inc. in this action.  I respectfully submit this declaration in support of the Motion to Dismiss Count Thirty-Seven of the Complaint As Against Ingram Micro Inc. and CIM Ventures Inc., pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The purpose of this Declaration is to place before the Court documents in support of the defendants' motion.

2.    Attached as Exhibit A hereto is a true copy of pages 31-35 of the Final Report of the Examiner, dated July 11, 2007 (the "Examiner's Report"), which was filed by the duly-appointed examiner in the bankruptcy cases of Refco Inc.

3.    Attached as Exhibit B hereto is a true copy of Appendix D-2 of the Examiner's Report.

Dated: New York, New York
       May 21, 2008

s/Robert F. Wise, Jr.
_____
Robert F. Wise, Jr. (RW-1508)

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>REFCO INC., *et al.*,<br><br>Debtors. | §   Chapter 11<br>§<br>§   Case No. 05-60006 (RDD)<br>§<br>§   Jointly Administered<br>§ |

# **Final Report of Examiner**

<table>
<tr>
<td>

JOSHUA R. HOCHBERG (JRH 9440)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006-1108
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

*Court Appointed Examiner*

</td>
<td>

CHARLES E. CAMPBELL (CEC 6100)
ROBERT A. BARTLETT (RAB 0550)
MCKENNA LONG & ALDRIDGE LLP
Suite 5300, 303 Peachtree Street, NE
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

*Counsel to the Examiner*

</td>
</tr>
</table>

- RCM Note:  promissory note made by the RTL Participant payable to RCM in the same amount reflected in the RCM Loan;

- RGHI Loan:  short term loan from the RTL Participant to RGHI;

- RGHI Note:  promissory note made by RGHI payable to the RTL Participant in the same amount reflected in the RGHI Loan;

- Guaranty:  guaranty from RGL guaranteeing RGHI's repayment of the RGHI Loan; and

- Indemnity:  indemnity from RGL indemnifying the RTL Participant from any claims arising from either the RCM or RGHI Loans.

The RTL Participants were all entities who had preexisting business relationships with Refco.  For many of them, Refco served as their prime broker.  Although many of them held various investment accounts at RCM, they generally opted to run the RTL transactions through small accounts at RCM that did not contain any investor or customer money, and in many cases, the accounts appear to have been opened solely for the purpose of doing RTLs.

Different Refco individuals — Nick Mascio ("Mascio"), Peter McCarthy ("McCarthy"), and David Weaver ("Weaver") — approached different RTL Participants to engage in the transactions, although it appears that Santo Maggio ("Maggio") of Refco oversaw most of these transactions.

The loans from each RTL Participant to RGHI were always signed by Bennett.  The RGL guaranty and indemnity were also signed by Bennett in all instances except one.  The loan from RCM to each RTL Participant was signed in one instance by Bennett, in several instances by Weaver, and in the remaining instances by Maggio.

The RTL Participants all denied having any knowledge that the transactions were used to manipulate Refco's balance sheets; but, as explained below, some did suspect that the transactions were being used for "balance sheet clean-up" or "to dress up Refco's balance sheet." Most of the RTL Participants indicated that the main reason they agreed to participate in the

RTLs was because they felt that the structure of the transaction effectively eliminated any risk that they would not be repaid the amounts they loaned to RGHI and therefore, the transaction was simply a "risk free" way to make a relatively small profit.

The RTL Participants said that they did not know who first designed the RTL transactions.  As discussed in more detail below, some of the early RTL Participants did request the addition of certain provisions to the RTL documentation — provisions mainly designed to eliminate any risk that they would not be repaid on their loan to RGHI and therefore be left without the funds to repay their loan to RCM.  In later years, however, there was little negotiation and few changes made to the standard RTL transaction documents.  All of the Round Trip Loan Participants stated that they did not know whether there were other Round Trip Loan Participants or who they were.

Set forth below is a chart outlining each of the Refco RTL transactions from February 2000 to September 2005, the identity of the RTL Participant, and the dates and amount of the transaction.  As the chart illustrates, in the early years, Refco engaged in RTLs with multiple parties for each year-end reporting period.  Starting in 2003, however, Refco engaged in RTLs only with Liberty Corner Capital Strategies, and started doing the transactions multiple times per year.

## ROUND TRIP LOAN TRANSACTIONS

| Start Date | End Date | RTL Participant | Amount |
|---|---|---|---|
| 02/25/2000 | 03/09/2000 | CIM Ventures, Inc. | $150,000,000 |
| 02/25/2000 | 03/03/2000 | EMF Core Fund, Ltd. | $50,000,000 |
| 02/25/2000 | 03/03/2000 | CS Land Management, LLC | $110,000,000 |
| **TOTAL 2000** | | | **$310,000,000** |
| 02/23/2001 | 03/06/2001 | CIM Ventures, Inc. | $250,000,000 |
| 02/26/2001 | 03/02/2001 | Delta Flyer Fund, LLC | $200,000,000 |
| **TOTAL 2001** | | | **$450,000,000** |
| 02/25/2002 | 03/04/2002 | Liberty Corner Capital Strategies, LLC | $325,000,000 |
| 02/25/2002 | 03/04/2002 | Delta Flyer Fund, LLC | $175,000,000 |
| 02/25/2002 | 03/04/2002 | Beckenham Trading Company, Inc. | $125,000,000 |
| **TOTAL 2002** | | | **$625,000,000** |
| 02/21/2003 | 03/04/2003 | Liberty Corner Capital Strategies, LLC | $500,000,000 |

-32-

| Start Date | End Date | RTL Participant | Amount |
|---|---|---|---|
| 02/21/2003 | 03/04/2003 | Delta Flyer Fund, LLC | $150,000,000 |
| **TOTAL 2003** | | | **$650,000,000** |
| 02/20/2004 | 03/04/2004 | Liberty Corner Capital Strategies, LLC | $720,000,000 |
| 05/27/2004 | 06/07/2004 | Liberty Corner Capital Strategies, LLC | $700,000,000 |
| 08/25/2004 | 09/07/2004 | Liberty Corner Capital Strategies, LLC | $485,000,000 |
| 11/26/2004 | 12/03/2004 | Liberty Corner Capital Strategies, LLC | $545,000,000 |
| 12/30/2004 | 1/05/2005 | Liberty Corner Capital Strategies, LLC | $550,000,000 |
| **TOTAL 2004** | | | **$3,000,000,000** |
| 02/23/2005 | 03/08/2005 | Liberty Corner Capital Strategies, LLC | $345,000,000 |
| 05/25/2005 | 06/06/2005 | Liberty Corner Capital Strategies, LLC | $450,000,000 |
| 08/26/2005 | 09/06/2005 | Liberty Corner Capital Strategies, LLC | $420,000,000 |
| **TOTAL 2005** | | | **$1,215,000,000** |

## 5.  The Individual Round Trip Loan Participants

### a.  CIM Ventures

CIM Ventures, Inc. ("CIM Ventures") is a subsidiary of Ingram Micro, Inc. ("Ingram Micro"), a worldwide distributor of information technology products based in Santa Ana, California.  CIM Ventures engaged in RTLs in February 2000 and February 2001 for $150,000,000 and $250,000,000 respectively.  CIM Ventures made a total net profit of $19,583.33 on the two RTLs.

The Examiner's counsel conducted voluntary interviews of two Ingram Micro employees who were involved in the RTLs with Refco — James Ricketts, Ingram Micro's corporate treasurer ("Ricketts"), and Thomas Madden, Ingram Micro's former CFO ("Madden").  In addition, Ingram Micro's outside counsel and general counsel made a presentation to the Examiner's counsel and the Creditors Committee's counsel in a meeting in December 2006 regarding the results of their own investigation into the RTLs engaged in by CIM Ventures.

The CIM Ventures RTL transactions were conducted through an account at RCM held by CIM Ventures created in late 1999 to provide short-term financing to Ingram Micro's overseas subsidiaries.  Prior to engaging in the RTLs, CIM Ventures had entered into a deal for Refco to provide such financing that closed in mid-December 1999, in which Refco was represented by

Joseph Collins ("Collins") and Robert Monk ("Monk") of Mayer Brown. The primary Refco contacts in that transaction were Maggio and Weaver, and Ricketts was the primary CIM Ventures contact.

Ricketts stated that the topic of doing a RTL first arose on February 1, 2000, when Weaver contacted him to broach the subject. Ricketts' contemporaneous handwritten notes from his conversation with Weaver show that they discussed a "back-to-back loan arrangement," with one loan at LIBOR with RCM, a second loan at LIBOR plus 15 basis points with "Refco Holdings," and the term of the loan going from February 25 to March 9.[21] Ricketts' notes also indicate that the contemplated documentation for the RTL transaction were "notes," an "indemnification letter," and "a right of offset letter."

On February 4, 2000, a few days after the initial call between Ricketts and Weaver, Monk sent Ricketts drafts of a loan agreement between RCM and CIM Ventures, a loan agreement between CIM Ventures and RGHI, and an indemnity letter from RGHI.[22] The loan amount was $150,000,000. It appears that at this stage, the RTL transaction documents did not contain the guaranty and the indemnity was from RGHI, not RGL.

After receiving the initial drafts from Mayer Brown, Ricketts had a number of questions and changes he wanted made in the RTL transaction documents. First, Ricketts wanted provisions added to the loan agreements in which RCM and RGHI would represent that they were and would remain in compliance with any applicable anti-money laundering regulations

---

[21] IM-SEC 008435; *see also* IM-SEC 007448.

[22] IM-SEC 007529-64.

during the term of the loans.[23]  Ricketts also raised some questions about the relationship

between RGHI and RGL.  On February 8, 2000, Weaver sent Ricketts an e-mail in which he

explained that "[RGHI] is outside the org chart and represents [t]he shareholders of RGL.

[RGHI] is an affiliate of RGL.  Both companies have the same shareholders."[24]  It also appears

that at some point Ricketts asked Mayer Brown to add the guaranty to the RTL transaction

documents.

Monk incorporated Ricketts' proposed changes into the transaction documents and sent a

revised draft to Ricketts for review on February 11, 2000.[25]  This revised set of documents

included: (1) a guaranty by RGL; (2) the indemnity now made by RGL instead of RGHI;

(3) anti-money laundering language added to both loan agreements; and (4) additional changes to

the language of the indemnity letter that was proposed by Ricketts and others at Ingram Micro.[26]

The February 11, 2000 drafts forwarded by Monk did not differ in substance from the

final RTL documents that were ultimately executed by the parties as of February 25, 2000.[27]  The

Examiner's review of the documents produced by all of the subsequent RTL Participants

indicates that subsequent RTLs (whether with CIM Ventures or other RTL Participants) basically

used the same template that was agreed to by CIM Ventures and Refco in February 2000.

---

[23] IM-SEC 007566-68.  Ricketts stated that he wanted this language included in the agreements because Ingram Micro conducted significant business in Caribbean and Latin American countries, many of which have strict anti-money laundering regulations.

[24] IM-SEC 007565.

[25] IM-SEC 007581-619.

[26] *Compare* IM-SEC 007616-17 *with* IM-SEC 007563-64.

[27] IM-SEC 007326-65, at App. D-2; MB02325109.

# Exhibit B

**APPENDIX D**

**SELECTED DOCUMENTS REFERRED TO IN THE REPORT**

| TAB | DOCUMENT NUMBER | DESCRIPTION |
|-----|-----------------|-------------|
| D-1. | none | FTI Consulting Schedule 3 |
| D-2. | IM-SEC 007326-65 | March 9, 2000, Letter from Monk to Ricketts, together with CIM Ventures Round Trip Loan documents (excerpt) |
| D-3. | IM-SEC 001409 | E-mail from Ricketts to Weaver and Maggio, dated January 30, 2002 |
| D-4. | GT SEC 0130512-29 | New Client Evaluation Form submitted by Ramler to GT for Refco engagement |
| D-5. | GT SEC 0004084-88 | April 11, 2005, Memorandum to file from Ramler concerning fraud assessment of Refco audit |
| D-6. | AAREF 00015841-43; AAREF 00004997-99; AAREF 00005556-57; AAREF 00010201-02; AAREF 00012494; GT SEC 0031852 | Annual schedules of Loans Receivable from Unconsolidated Affiliates for years 1998-2003 |
| D-7. | AAREF 00011967 | May 10, 1999, Memo from Ramler re Receivables from Affiliates |
| D-8. | AAREF 00003029-34 | AA audit sign-off meeting memorandum concerning paydown of receivables from affiliates |
| D-9. | AAREF 00000569-76 | April 7, 1999, Confirmation Request Letter from RCM to RGHI with February 1999 RGHI Account Statement |
| D-10. | none | Assignment Agreement, dated October 28, 1997, between Refco, Inc. and Wells Limited as to Niederhoffer accounts, signed by Bennett on behalf of Wells |

# MAYER, BROWN & PLATT

MAR 1 0 2000

190 SOUTH LA SALLE STREET

CHICAGO, ILLINOIS 60603-3441

ROBERT A. MONK
DIRECT DIAL (312) 701-8918
DIRECT FAX (312) 706-8207
rmonk@mayerbrown.com

MAIN TELEPHONE
312-782-0600
MAIN FAX
312-701-7711

March 9, 2000

James F. Ricketts
Ingram Micro Inc.
1600 E. St. Andrew Place
P.O. Box 25125
Santa Ana, CA 92799-5125

Re: Loan Transactions

Dear Mr. Ricketts:

At the request of David Weaver, of Refco Securities, LLC, I am enclosing for your files executed originals of the following documents:

1.  Loan Agreement between Refco Capital Markets, Ltd. as lender and CIM Ventures Inc. as Borrower

2.  Loan Agreement between CIM Ventures Inc. as lender and Refco Group Holdings, Inc. as borrower

3.  Indemnification letter from Refco Group Holdings, Inc.

4.  Guarantee of Refco Group Ltd., LLC

In addition, I enclose the original promissory note of CIM Ventures Inc. to Refco Capital Markets, Ltd., endorsed as paid in full.

Yours very truly,

Robert A. Monk

cc:  David Weaver (w/o encl)
     Joseph Collins (w/o encl)

12673281 I 30900 1529C 99599904

CHICAGO  BERLIN  CHARLOTTE  COLOGNE  HOUSTON  LONDON  LOS ANGELES  NEW YORK  WASHINGTON
INDEPENDENT MEXICO CITY CORRESPONDENT   JAUREGUI, NAVARRETE, NADER Y ROJAS
INDEPENDENT PARIS CORRESPONDENT.   LAMBERT & LEE

CONFIDENTIAL
IM-SEC 007327

# NOTE

### Dated February 25, 2000

FOR VALUE RECEIVED, the undersigned, CIM VENTURES INC., a Cayman Islands company (the "Borrower"), promises to pay to the order of REFCO CAPITAL MARKETS, LTD., a Bermuda company ("RCM"), on March 9, 2000 the Loan Amount (as such term is defined in the Loan Agreement referred to below).

The Borrower further promises to pay to the order of RCM interest at the rate per annum and on the date specified in Section 3 of the Loan Agreement.  Interest after maturity shall be payable on demand.

Payments of both principal and interest are to be made in lawful money of the United States of America in same day or immediately available funds to the account of RCM in New York, New York designated by RCM pursuant to the Loan Agreement.

This Note is the Note referred to in, evidences indebtedness incurred under, and is subject to the terms and provisions of, that certain Loan Agreement dated as of February 25, 2000 (together with all amendments and other modifications, if any, from time to time thereafter made thereto, the "Loan Agreement") between RCM and the Borrower, to which reference is made for a statement of the terms and conditions on which the Borrower is required to make prepayments and repayments of the Loan Amount and on which the Loan Amount may be declared to be immediately due and payable.

This Note is not endorsable and is assignable only in accordance with the governing terms of the Loan Agreement.

All parties hereto, whether as maker, endorsers, or otherwise, severally waive presentment for payment, demand, protest and notice of dishonor.

**THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAW PRINCIPLES THEREOF.**

```
Paid in full
March 9, 2000

Refco Capital Markets, Ltd.


By: _____
        Robert A. Monk
        Its authorized agent
```

```
CIM VENTURES INC.


By: _____
Name: JAMES F. Ricketts
Title: TREASURER
```

12665675.1 21500 1505C 99599904

CONFIDENTIAL
IM-SEC 007326

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement") is made as of February 25, 2000

BETWEEN:

(1)  **Refco Capital Markets, Ltd.,** a company organized under the laws of Bermuda ("RCM"); and

(2)  **CIM Ventures Inc.,** a company limited by shares organized under the laws of the Cayman Islands ("CIM" or the "Borrower").

IT IS AGREED as follows:

1.  **Definitions**

1.1  "**Business Day**" means, unless otherwise specified, a day on which banks are open for business in New York and on which dealings in U.S. dollars may be carried on in the London Interbank market (but shall not include a Saturday or Sunday).

"**Default Rate**" means a rate per annum equal to the Prime Rate in effect from time to time plus 1% per annum.

"**Drawdown Date**" means February 25, 2000, subject to early termination pursuant to Section 10 below.

"**Event of Default**" means any of the events mentioned in Section 10 below or any event or circumstance which, with the giving of any notice, and/or lapse of any period of time and/or the making of any determination could reasonably become one of the events mentioned in that Section.

"**Facility Amount**" means US$150,000,000.

"**Interest Amount**" means the amount of interest accrued and unpaid on the Loan pursuant to Section 3 of this Agreement.

"**Interest Period**" means the period from and including February 25, 2000 to but excluding March 9, 2000.

"**LIBOR**" means the rate for deposits in U.S. dollars, for a period of one month, which appears on Reuters Page RTRTSY1 as of 11:00 a.m., London time, on the date that is two Business Days preceding the first day of the Interest Period, or if such rate is unavailable

12661369.6 21500 1509C 94125994



CONFIDENTIAL
IM-SEC 007328

IN WITNESS WHEREOF, this Agreement has been executed on behalf of the parties hereto the day and year first above written.

REFCO CAPITAL MARKETS, LTD.

By:_____

Name:    Phillip R. Bennett
Title:    President and Chief Executive Officer


CIM VENTURES INC.


By:_____
Name:
Title:

12661369.6 21500 1509C 94125994                          -15-

CONFIDENTIAL
IM-SEC 007342

IN WITNESS WHEREOF, this Agreement has been executed on behalf of the parties hereto the day and year first above written.

REFCO CAPITAL MARKETS, LTD.

By:_____
Name:
Title:

CIM VENTURES INC.

By:_____
Name: JAMES F. Ricketts
Title: Treasurer

CONFIDENTIAL
IM-SEC 007343

# LOAN AGREEMENT

THIS LOAN AGREEMENT (the "Agreement") is made as of February 25, 2000

BETWEEN:

(1)      **CIM Ventures Inc.,** a company limited by shares organized under the laws of the Cayman Islands ("CIM"), and

(2)      **Refco Group Holdings, Inc.,** a Delaware corporation (the "Borrower").

IT IS AGREED as follows:

1.      **Definitions**

1.1      **"Business Day"** means, unless otherwise specified, a day on which banks are open for business in New York and on which dealings in U.S. dollars may be carried on in the London Interbank market (but shall not include a Saturday or Sunday).

     **"Default Rate"** means a rate per annum equal to the Prime Rate in effect from time to time plus 1% per annum.

     **"Drawdown Date"** means February 25, 2000, subject to early termination pursuant to Section 10 below.

     **"Event of Default"** means any of the events mentioned in Section 10 below or any event or circumstance which, with the giving of any notice, and/or lapse of any period of time and/or the making of any determination could reasonably become one of the events mentioned in that Section.

     **"Facility Amount"** means US$150,000,000.

     **"Interest Amount"** means the amount of interest accrued and unpaid on the Loan pursuant to Section 3 of this Agreement.

     **"Interest Period"** means the period from and including February 25, 2000 to but excluding March 9, 2000.

     **"LIBOR"** means the rate for deposits in U.S. dollars, for a period of one month, which appears on Reuters Page RTRTSY1 as of 11:00 a.m., London time, on the date that is two Business Days preceding the first day of the Interest Period, or if such rate is unavailable at such time on such date, (ii) USD-LIBOR-LIBO, as defined in the 1991 ISDA

12664681.3 21500 1453C 99599904

CONFIDENTIAL
IM-SEC 007345

IN WITNESS WHEREOF, this Agreement has been executed on behalf of the parties hereto the day and year first above written.

REFCO GROUP HOLDINGS, INC.

By: _____

Name:    Phillip R. Bennett
Title:    President and Chief Executive Officer


CIM VENTURES INC.


By: _____
Name:
Title:

12664681.3 21500 1512C 99599904                                   15

CONFIDENTIAL
IM-SEC 007359

IN WITNESS WHEREOF, this Agreement has been executed on behalf of the parties hereto the day and year first above written.

REFCO GROUP HOLDINGS, INC.

By:_____
Name:
Title:


CIM VENTURES INC.

By:_____
Name: James F. Ricketts
Title: Treasurer

12664681.3 21500 L512C 99599904                    15

CONFIDENTIAL
IM-SEC 007360

# REFCO GROUP LTD., LLC

February 25, 2000

CIM Ventures Inc.
PwC Corporate Services (Cayman) Limited
P.O. Box 219
First Home Tower
British-American Centre
George Town, Grand Cayman
Cayman Islands, BWI

Ladies and Gentlemen:

For value received, REFCO GROUP LTD., LLC (the "Guarantor") hereby unconditionally and absolutely guarantees to CIM Ventures Inc. ("CIM") the prompt and complete payment and performance when due, whether by acceleration or otherwise, of all obligations and liabilities (the "Obligations") of Refco Group Holdings, Inc. (the "Company") to CIM to pay under the Loan Agreement dated as of February 25, 2000 between CIM and the Company (the "Loan Agreement") and the related note dated February 25, 2000 made by the Company to CIM (the "Note"), including without limitation the obligation to pay the principal amount thereof and accrued interest thereon at maturity. This Guaranty is one of payment and not of collection.

The Guarantor hereby waives notice of acceptance of this Guaranty and notice of any Obligation to which it may apply, and waives presentment, demand for payment, protest, notice of dishonor or non-payment of any such Obligation, suit or the taking of other action by CIM against the Company, and any other notice to the Company, the Guarantor or others.

CIM may at any time and from time to time without notice to or consent of the Guarantor and without impairing or releasing the obligations of the Guarantor hereunder: (1) make any changes in the terms of any Obligation (including any waiver or release thereof) of the Company to CIM, (2) take or fail to take any action of any kind in respect of any security for any Obligation or liability of the Company to CIM, (3) exercise or refrain from exercising any rights against the Company or others, or (4) compromise or subordinate any Obligation of the Company to CIM, including any security therefor. Any and all other surety defenses are hereby waived by the Guarantor. Furthermore, the obligations of the Guarantor shall not be released or impaired by (a) any change in the corporate existence, structure or ownership of the Company or any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Company or its assets or any resulting release or discharge of any Obligation of the Company or (b) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Company or any other person, whether in connection with the Loan Agreement and the Note or any unrelated transaction. The Obligations of the Guarantor shall include any amount payable by the Company to CIM, including interest thereon, after an insolvency, bankruptcy, reorganization or other similar proceeding in respect of the Company, whether allowed or allowable as a claim in any such bankruptcy proceeding.

12663801.1 02/15/00 3:28 PM 99599904

CONFIDENTIAL
IM-SEC 007362

In the event that any Obligations are paid, the liability of the Guarantor shall continue and remain in full force and effect or be reinstated, as the case may be, in the event that all or part of such payments is recovered from CIM as a preference or fraudulent conveyance under the Federal Bankruptcy Code, or any other applicable law. If payment of the Obligations under the Loan Agreement and the Note are stayed upon the insolvency, bankruptcy or reorganization of the Company, all such amounts shall nonetheless be payable by the Guarantor hereunder forthwith on demand by CIM.

The Guarantor shall have no right of subrogation with respect to any payments made by the Guarantor under this Guaranty until all Obligations of the Company to CIM are paid in full.

The liability of the Guarantor under this Guaranty shall be unconditional and irrevocable (except as explicitly set forth herein) irrespective of any law, regulation or order of any jurisdiction affecting any term of any Obligation or CIM's rights with respect thereto, including any invalidity or unenforceability of this Guaranty, the Loan Agreement or the Note.

If any lawsuit is commenced which arises out of, or which relates to this Guaranty, the prevailing party shall be entitled to recover from each other party such sums as the court may adjudge to be reasonable attorneys' fees and expenses (including allocated costs for services of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by laws.

THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE COURTS IN THE CITY, STATE AND COUNTY OF NEW YORK. EACH OF THE GUARANTOR AND CIM HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE COURTS IN THE CITY, STATE AND COUNTY OF NEW YORK FOR THE PURPOSE OF ANY SUCH LITIGATION AS SET FORTH ABOVE. EACH OF THE GUARANTOR AND CIM HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN THE CITY, STATE AND COUNTY OF NEW YORK.

Very truly yours,

REFCO GROUP LTD., LLC

By _____
Name:  Phillip R. Bennett
Title:   President and Chief Executive Officer

4814326

CONFIDENTIAL
IM-SEC 007363

February 25, 2000

CIM Ventures Inc.
c/o PwC Corporate Services (Cayman) Limited
P.O. Box 219
First Home Tower
British-American Centre
George Town, Grand Cayman
Cayman Islands, BWI

Gentlemen:

We refer to the loan of $150,000,000 made by Refco Capital Markets, Ltd. to CIM Ventures Inc. on February 25, 2000 pursuant to a Loan Agreement dated that date, and the loan of $150,000,000 made by CIM Ventures Inc. to Refco Group Holdings, Inc. on February 25, 2000 pursuant to another Loan Agreement dated that date (the "Loans").

Refco Group Ltd., LLC (the "Indemnitor") will defend, indemnify and hold harmless CIM Ventures Inc. and its affiliates, officers, directors, employees and agents, and their successors and assigns (collectively, the "Indemnitees") from and against any claim, suit, demand, loss, damages, expense (provided that indemnification for attorney's fees shall be limited to the reasonable attorney's fees of one attorney or law firm representing the Indemnitees) or liability (collectively, "Loss") imposed upon or suffered by the Indemnitees as a result of any claim of a third party arising out of or based on the Loans (a "Claim"), provided that no Indemnitee shall be indemnified for any Claim to the extent that the Claim arises out of or is based on the willful misconduct or gross negligence of such Indemnitee.

The indemnification of any Indemnitee pursuant to the foregoing paragraph is subject to the conditions that the Indemnitee (i) promptly notify the Indemnitor of any Claim of which it has knowledge and which has caused, or reasonably might cause, a Loss to the Indemnitee; provided that failure to provide such notice shall not relieve Indemnitor of its obligations hereunder, except to the extent such failure shall have materially and adversely affected Indemnitor; (ii) tender to the Indemnitor full authority to defend or settle the Claim, provided that a settlement shall not require an admission by an Indemnitee and any remedy will be limited to the payment of money, which will be fully covered by the Indemnitor, and (iii) cooperate with the Indemnitor, at the Indemnitor's expense, in its efforts to defend or settle such Claim.

12662151.4 02/24/00 4:49 PM

CONFIDENTIAL
IM-SEC 007364

The Indemnitor acknowledges that the Indemnitees have not provided any tax or investment advice to the Indemnitor or any of its affiliates, and are not responsible for the actions or omissions of the Indemnitor or any of its affiliates, with respect to the Loans. Neither the Indemnitor nor any of its affiliates will attempt to hold the Indemnitees, or any of them, liable for actions of the Indemnitor and its affiliates.

Yours very truly,

REFCO GROUP LTD., LLC

By: _____
Phillip R. Bennett
President and Chief Executive Officer

12662151.4 02/15/00 3:26 PM

CONFIDENTIAL
IM-SEC 007365