UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

In re REFCO, INC. SECURITIES LITIGATION :     07 MDL No. 1902 (GEL)
                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

MARC S. KIRSCHNER,
as Trustee of the Refco Litigation Trust,    :     07 Civ. 11604 (GEL)
                                 :

                   Plaintiff,    :     **NOTICE OF JOINT MOTION OF**
                                 :     **DEFENDANTS LIBERTY CORNER**
             v.              :     **CAPITAL STRATEGIES, LLC AND**
                                 :     **WILLIAM T. PIGOTT TO DISMISS**

GRANT THORNTON LLP, et al.,        :     **THE COMPLAINT WITH**
                                 :     **PREJUDICE**
                   Defendants.    :
                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       PLEASE TAKE NOTICE that, upon the Declaration of Kevin H. Marino and the exhibits annexed thereto and the accompanying Memorandum of Law, defendants Liberty Corner Capital Strategies, LLC and William T. Pigott (collectively, the " Liberty Corner Defendants") will move before the Honorable Gerard E. Lynch, United States District Judge, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York at such date and time to be determined by the Court for entry of an Order dismissing the Complaint with prejudice as to the Liberty Corner Defendants for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b).

MARINO TORTORELLA PC

Dated: Chatham, New Jersey
       May 21, 2008

By: /s/ Kevin H. Marino
      Kevin H. Marino (KM 4941)
      437 Southern Boulevard
      Chatham, New Jersey  07928-1488
      Tel.: (973) 824-9300
      Fax: (973) 824-8425

      *Attorneys for Defendants William T.*
      *Pigott and Liberty Corner Capital*
      *Strategies LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re REFCO, INC. SECURITIES LITIGATION :        07 MDL No. 1902 (GEL)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
MARC S. KIRSCHNER,                                      :
as Trustee of the Refco Litigation Trust,               :        07 Civ. 11604 (GEL)
                                                        :
                                    Plaintiff,          :
                                                        :
                    v.                                  :
                                                        :
GRANT THORNTON LLP, et al.,                             :
                                                        :
                                    Defendants.         :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY DEFENDANTS LIBERTY CORNER CAPITAL STRATEGIES, LLC AND WILLIAM T. PIGOTT TO DISMISS THE COMPLAINT**

---

**MARINO TORTORELLA PC**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**(973) 824-9300**
**Attorneys for Defendants**
**Liberty Corner Capital Strategies, LLC and**
**William T. Pigott**

On the Brief:

    Kevin H. Marino
    John D. Tortorella
    Roseann Bassler Dal Pra

**TABLE OF AUTHORITIES**

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT....................................................................................... 1

PROCEDURAL HISTORY.............................................................................................. 2

STATEMENT OF FACTS .............................................................................................. 3

    A.   The Alleged Fraudulent Scheme Perpetrated By The Refco Insiders. ................................. 4

    B.   The Fraud Claim Against The Officer Defendants And The Aiding- And-Abetting-A-Fraud Claim Against The Liberty Corner Defendants. .................................... 6

    C.   The Bankruptcy Investigation And The Final Report of Examiner................................... 7

LEGAL ARGUMENT ..................................................................................................... 8

I.       PLEADING STANDARDS............................................................................................. 8

    A.   To Survive A Rule 12(b)(6) Dismissal, Plaintiff's Complaint Must Provide Factual Allegations Sufficient To Raise A Right To Relief Beyond The Speculative Level And May Not Be Based On Bald Assertions Or Legal Conclusions............................................................................................................ 8

    B.   The Plaintiff Must Meet The Heightened Pleading Requirements Of Rule 9(b) On His Claim For Aiding And Abetting A Fraud. ................................. 10

II.     NEW YORK SUBSTANTIVE LAW GOVERNS THE CLAIM FOR AIDING AND ABETTING A FRAUD UNDER CONFLICTS-OF-LAW PRINCIPLES............. 11

III.    THE CLAIM FOR AIDING AND ABETTING A FRAUD MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FAILS TO PLEAD FRAUD WITH PARTICULARITY. ..................................................................................................... 14

    A.   Plaintiffs Have Not Alleged That The Liberty Corner Defendants Had Actual Knowledge Of Any Misconduct In Connection With The Loan Transactions. ................ 14

    B.   The Liberty Corner Defendants Did Not Substantially Assist The Alleged Refco Fraud. .............................................................................................................. 21

IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO THE LIBERTY CORNER DEFENDANTS BECAUSE REPLEADING WOULD BE FUTILE............................................................................................................... 24

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

Page

**Cases**

Atsi Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007)............................................................................3, 9, 10

Barbara Sales, Inc. v. Intel Corp.,
   857 N.E.2d 717 (Ill. App. Ct. 2006) .............................................................12

Bell Atlantic Corp. v. Twombly,
   127 S. Ct. 1955 (2007)..............................................................................8, 9

Billard v. Rockwell Int'l Corp.,
   683 F.2d 51 (2d Cir. 1982)...........................................................................10

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
   369 F.3d 212 (2d Cir. 2004).........................................................................4

Chi v. Age Group, Ltd.,
   No. 94 Civ. 5253, 1999 U.S. Dist. LEXIS 16075 (S.D.N.Y. Oct. 19, 1996)...........10

Conley v. Gibson,
   355 U.S. 41 (1957)...................................................................................8

Cromer Fin. Ltd. v. Berger,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)...............................................12, 14, 21, 23

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
   375 F.3d 168 (2d Cir. 2004).........................................................................15

Filler v. Hanvit Bank,
   339 F. Supp. 2d 553 (S.D.N.Y. 2004)........................................................14, 16

Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.,
   414 F.3d 325 (2d Cir. 2005).........................................................................11

Fraternity Fund, Ltd. v. Beacon Hill Asset Management, LLC,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007)..............................................15, 17, 19, 23

Greenberg v. Bear, Stearns & Co.,
   220 F.3d 22 (2d Cir. 2000)...........................................................................22

Hunt v. Enzo Biochem, Inc.,
   530 F. Supp. 2d 580 (S.D.N.Y. 2008)........................................................10, 18

In re Flag Telecom Holdings, Ltd. Secs. Litig.,
   308 F. Supp. 2d 249 (S.D.N.Y. 2004)............................................................17

In re NYSE Specialists Sec. Litig.,
   503 F.3d 89 (2d Cir. 2007)...........................................................................9

In re Parmalat Sec. Litig.,
   479 F. Supp. 2d 332 (S.D.N.Y. 2007)............................................................11

In re Tower Auto Sec. Litigation,
   483 F. Supp.2d 327 (S.D.N.Y. 2007)..............................................................4

In re WorldCom, Inc. Secs. Litig.,
   382 F. Supp.2d 549 (S.D.N.Y. 2005).......................................................14, 16, 20

## TABLE OF AUTHORITIES

Page

Ingersoll v. Klein,
    262 N.E.2d 593 (Ill. 1970) ............................................................................................ 12

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007) ........................................................................................... 9

Kolbeck v. LIT Am., Inc.,
    939 F. Supp. 240 (S.D.N.Y. 1996) .............................................................................. 14

Lerner v. Fleet Bank, N.A.,
    459 F.3d 273 (2d Cir. 2006) ................................................................... 10, 14, 15, 20

Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Secs. Corp.,
    No. 99 Civ. 1944, 2000 U.S. Dist. LEXIS 7444 (S.D.N.Y. June 1, 2000) .............. 25

Matusovsky v. Merrill Lynch,
    186 F. Supp.2d 397 (S.D.N.Y. 2002) .............................................................. 3, 4, 20

Mazzaro v. Bank of Am. Corp.,
    525 F. Supp. 2d 381 (S.D.N.Y. 2007) ................................................................ 17, 22

Morin v. Trupin,
    711 F. Supp. 97 (S.D.N.Y. 1989) .............................................................................. 10

Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Secs., LLC,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ................................................................ 15, 23

Rapoport v. Asia Elecs. Holding Co., Inc.,
    88 F. Supp.2d 179 (S.D.N.Y. 2000) ................................................................... 4, 20

Reddington v. Staten Island Univ. Hosp.,
    511 F.3d 126 (2d Cir. 2007) ........................................................................................ 9

Rehl v. Romec,
    No. 05-3516, 2007 U.S. Dist. LEXIS 30879 (E.D.N.Y. Apr. 26, 2007) ................. 12

Rosner v. Bank of China,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) .............................................................. passim

Ruotolo v. City of N.Y.,
    514 F.3d 184 (2d Cir. 2008) ........................................................................................ 9

S.S. Silberblatt, Inc. v. East Harlem Pilot Block,
    608 F.2d 28 (2d Cir. 1979) ........................................................................................ 24

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F.2d 114 (2d Cir. 1991) ........................................................................................ 1

Shields v. CityTrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ...................................................................................... 10

Sierra Rutile Ltd. v. Katz,
    No. 90 Civ. 4913, 1996 U.S. Dist. LEXIS 14366 (S.D.N.Y. Sept. 30, 1996) ......... 25

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ........................................................................................ 9

Suzik v. Sea-Land Corp.,
    89 F.3d 345 (7th Cir. 1996) ....................................................................................... 12

**TABLE OF AUTHORITIES**

Page

Terrydale Liquidating Trust v. Barness,
  611 F. Supp. 1006 (S.D.N.Y. 1984) ....................................................................... 15

Thornwood, Inc. v. Jenner & Block,
  799 N.E. 2d 756 (Ill. App. Ct. 2003), app. denied, 807 N.E.2d 982 (Ill. 2004) ...................... 11

United States v. Smith,
  No. 06 Civ. 4056, 2007 U.S. Dist. LEXIS 53826 (S.D.N.Y. July 24, 2007) .......................... 24

Van Dusen v. Barrack,
  376 U.S. 612, 638-39 (1964) ................................................................................. 11

Wight v. BankAmerica Corp.,
  219 F.3d 79 (2d Cir. 2000) .................................................................................... 15

Williams v. Bank Leumi Trust Co. of N.Y.,
  No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538 (S.D.N.Y. May 30, 1997) ........... 16, 17, 18, 21

**Statutes**

28 U.S.C. § 1452 ........................................................................................................ 2

**Sentencing Guidelines**

Restatement (Second) of Conflict of Laws § 145 ..................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ passim

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 8

Fed. R. Civ. P. 9(b) ............................................................................................... passim

Defendants Liberty Corner Capital Strategies, LLC ("LCCS") and William T. Pigott ("Pigott") (collectively, the "Liberty Corner Defendants") respectfully submit this Memorandum of Law in support of their joint motion to dismiss with prejudice the Thirty-Seventh Claim for Relief pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

On this motion, the Liberty Corner Defendants seek dismissal with prejudice of the sole claim asserted against them in the Complaint — aiding and abetting a fraud. Despite having the benefit of more than 1.6 million pages of documents produced by the Liberty Corner Defendants in the Bankruptcy Proceedings as well as the Final Report of the Court-appointed Examiner, which discussed in great detail the Liberty Corner Defendants' involvement in the transactions in question, the Plaintiff was unable to properly plead a claim against the Liberty Corner Defendants that meets the plausibility standard of Rule 12(b)(6), let alone the particularity standard of Rule 9(b).

The 158-page Complaint details a three-part scheme at Refco by which certain insiders allegedly (i) created the illusion of solid financial health, (ii) maintained that illusion and then, (iii) cashed-out the interests of the insiders through a leveraged buyout transaction and subsequent initial public offering. But the Complaint is devoid of any allegation that states or gives rise to a strong inference that the Liberty Corner Defendants had actual knowledge of the fraudulent scheme or that they provided substantial assistance to the scheme. These deficiencies are incurable and fatal. As a matter of law, the Liberty Corner Defendants' participation in the

---

[1]    The Liberty Corner Defendants also join in, and incorporate by reference, the arguments of their co-defendants pursuant to the <u>Wagoner</u> rule that the Litigation Trustee lacks standing to make the allegations in the Complaint. <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118 (2d Cir. 1991) ("[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.")

transactions in question, without more, does not give rise to a strong inference either of actual knowledge or substantial assistance. Given that Plaintiff has already had access to the equivalent of full discovery from the Liberty Corner Defendants and was still unable to properly plead the elements of aiding and abetting a fraud, any amendment to the claim would be futile. Accordingly, the Liberty Corner Defendants respectfully submit that dismissal of the Thirty-Seventh Claim for Relief with prejudice is appropriate.

## PROCEDURAL HISTORY

On or about August 21, 2007, Plaintiff, as Trustee of the Refco Litigation Trust, appointed pursuant to the Chapter 11 bankruptcy plan for Refco, Inc. and its affiliates, filed a Complaint against the Liberty Corner Defendants, among numerous other individuals and entities, in the Circuit Court of Cook County, Illinois, County Department, Law Division ("Illinois State Court"). On or about September 19, 2007, certain defendants (the "Removing Defendants") removed the action to the United States District Court for the Northern District of Illinois ("Illinois Federal Court") pursuant to 28 U.S.C. § 1452. Plaintiff filed a motion to remand the action to Illinois State Court. The Removing Defendants opposed the remand motion and filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer the action to the United States District Court for the Southern District of New York. The Removing Defendants also filed with the Illinois Federal Court a motion to stay its consideration of the remand motion pending a determination by the MDL Panel on the transfer motion. By Order entered on November 16, 2007, the Illinois Federal Court granted the stay motion. The MDL Panel granted the transfer motion by Order entered on December 28, 2007. In an Opinion and Order dated April 21, 2008, this Court denied Plaintiff's motion to remand. This Motion to Dismiss follows.

2

**STATEMENT OF FACTS**

LCCS is a company organized and existing under the laws of Delaware with its principal

place of business in Summit, New Jersey, that previously provided advisory services to certain

hedge funds. (Compl., ¶ 50.) Pigott is the principal and sole shareholder of LCCS. (Id.)

Plaintiff is the court-approved Trustee of the Refco Litigation Trust, which was

established in connection with the Modified Joint Chapter 11 Plan of Refco, Inc. and Certain of

its Direct and Indirect Subsidiaries confirmed on December 15, 2006 by the United States

Bankruptcy Court for the Southern District of New York in the matter captioned In re Refco Inc.,

et al., Case No. 05-60006 (RDD) (the "Bankruptcy Proceedings"). (Compl., at 1, 2, ¶ a, and ¶

31.)

Plaintiff asserts his aiding-and-abetting-a-fraud claim on behalf of Refco Group Ltd.,

LLC ("RGL"), (Compl., at 146, ¶¶ 585-89), a Delaware limited liability company (Compl., ¶

32(a)), with its principal place of business and its executive offices at One World Financial

Center, 200 Liberty Street, New York, New York. (Declaration of Kevin H. Marino ("Marino

Decl."), Ex. 1, RGL's Voluntary Petition filed with the United States Bankruptcy Court of the

Southern District of New York on October 17, 2005; Marino Decl., Ex. 2, Form 8-K filed with

the Securities and Exchange Commission ("SEC") by RGL, Refco, Inc. and Refco Finance, Inc.

on December 20, 2006.)[2] The financial statements of various Refco companies were prepared on

a consolidated basis under RGL. (Marino Decl., Ex. 4 at 3.)

---

[2] On a Rule 12(b)(6) motion the Court "may consider any written instrument attached to
the complaint, statements or documents incorporated into the complaint by reference,
legally required public disclosure documents filed with the SEC, and documents
possessed by or known to the plaintiff and upon which it relied in bringing the suit." Atsi
Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, the
Court may consider "documents that are integral to, or explicitly referenced in, the
pleading." Matusovsky v. Merrill Lynch, 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002). The
court may also "look to public records, including complaints . . . in deciding a motion to

Refco Group Holdings, Inc. ("RGHI") is a Delaware subchapter S corporation with its principal place of business also located in New York, New York. (Marino Decl., Ex. 3, SEC Form 3 dated August 11, 2005, at 2.)  Although RGHI's name suggests that it was a Refco affiliate, it was in fact owned by William R. Bennett ("Bennett"), the highest ranking corporate officer of various Refco entities. (Compl. ¶ 36, Marino Decl., Ex. 4 at 3.)  RGHI's financial information was not public, nor was it reported on a consolidated basis with Refco's financial information. (Marino Decl., Ex. 4 at 3.)

### A.    The Alleged Fraudulent Scheme Perpetrated By The Refco Insiders.

Plaintiff alleges that defendants Bennett, Santo C. Maggio, Robert C. Trosten and Tone N. Grant, all former high-ranking Refco officers who are defined collectively in the Complaint as the "Refco Insiders," engineered a complex three-part scheme for the purpose of cashing out their interests in the Refco entities at inflated values in connection with a leveraged buyout ("LBO") and initial public offering ("IPO") (Compl., ¶ 59).  In the first part of the scheme, which Plaintiff refers to as "Cleaning Up Refco's Financial Statements" (Compl., at 19), Plaintiff alleges that "[t]he Refco Insiders avoided writing off hundreds of millions of dollars in trading losses, misallocated operating expenses and inflated Refco's revenue with phantom interest income by booking these amounts as receivables owed by RGHI (a related-party company owned and controlled by Bennett and, prior to the LBO, by Bennett and Grant) resulting in a massive related-party receivable owed to various Refco entities." (Compl., ¶ 60.)  Plaintiff does

---

dismiss." Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). Factual allegations contradicted by documents properly considered on a motion to dismiss need not be accepted, In re Tower Auto Sec. Litigation, 483 F. Supp.2d 327, 334 (S.D.N.Y. 2007), and "those allegations are insufficient to defeat a motion to dismiss." Matusovsky, 186 F. Supp. 2d at 400. Indeed, if the document contradicts the allegations in the complaint, the document controls. Rapoport v. Asia Elecs. Holding Co., Inc., 88 F. Supp.2d 179, 184 (S.D.N.Y. 2000)

not allege that the Liberty Corner Defendants had any involvement in, or actual knowledge of, the first part of the alleged scheme.

The second part of the alleged scheme, which Plaintiff refers to as "Keeping the Illusion Going Long Enough to Cash-Out," involved what Plaintiff refers to as "round trip loans" or RTLs (hereinafter the "Loan Transactions"). (Compl., at 23.) Plaintiff asserts that the purpose of the Loan Transactions was to conceal the related-party receivable owed to Refco by RGHI. (Compl., ¶¶ 75, 76.) According to Plaintiff, a Refco entity would extend a loan to a third party with no relation to Refco, Bennett or RGHI at the end of every relevant reporting and audit period and that third party would then loan the same amount to RGHI. RGHI would then use the loan from the third party, defined in the Complaint as a "Round Trip Loan Participant," to pay down the debt it owed to Refco. On Refco's financial statements, the RGHI receivable was transformed into a payable on a loan owed to Refco from an unrelated third-party. (Compl., ¶ 78.) Plaintiff does not and could not allege that the Liberty Corner Defendants knew that RGHI was not a Refco entity, that RGHI owed money to Refco, or that RGHI was using the loan from Liberty Corner and similarly situated parties to pay off that debt.

After the start of each new reporting or audit period, the loan was "unwound" by reversing the process. (Compl., ¶ 79.) In exchange for participating in the Loan Transactions, the Round Trip Loan Participants received payment of the "spread" between the interest rates of the two loans. (Compl., ¶ 80.) Many of the Loan Transactions, including those in which the Liberty Corner Defendants were involved, were guaranteed by RGL. (Compl., ¶¶ 80, 84.) Plaintiff does not allege that the Liberty Corner Defendants had actual knowledge of the Refco Insiders' reasons for wanting to engage in the Loan Transactions.

5

The third part of the alleged scheme, which Plaintiff calls the "Cash-Out," allowed the Refco Insiders to sell their interests in Refco at fraudulently inflated values. This was the alleged purpose of the entire scheme. (Compl., ¶ 106.) Plaintiff claims that RGL was induced to enter into the LBO based on an inaccurate understanding of its financial condition, causing it to incur $1.4 billion of bank and bond debt to fund the LBO that enriched the Refco Insiders at the expense of Refco and its creditors. (Compl., ¶ 9.) A year later, the LBO was followed up with an initial public offering ("IPO") that allegedly further impaired Refco's assets, but benefitted the Refco Insiders. (Compl., ¶ 10.) Ultimately, RGL filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on October 17, 2005. (Compl., ¶ 32(a).) Plaintiff does not allege facts showing that the Liberty Corner Defendants were involved in, or had any actual knowledge of, the third part of the alleged scheme or that they were aware of, let alone benefited from, the LBO or IPO.

**B.    The Fraud Claim Against The Officer Defendants And The Aiding-And-Abetting-A-Fraud Claim Against The Liberty Corner Defendants.**

In the Eighteenth Claim for Relief, Plaintiff asserts a fraud claim on behalf of RGL against the Officer Defendants (defendant Phillip R. Bennett ("Bennett"), Santo C. Maggio ("Maggio"), and Robert C. Trosten ("Trosten")). Plaintiff alleges that the Officer Defendants made affirmative misrepresentations and omissions concerning Refco's financial condition to RGL directors, officers and agents. (Compl., ¶¶ 464-465.) Plaintiff further alleges that the Officer Defendants made these misrepresentations and omissions with "the intent to deceive RGL, the innocent RGL directors, officers and agents, including inside counsel and others, so as to induce RGL to enter into an imprudent LBO which would solely benefit the Refco Insiders at RGL's expense." (Compl., ¶ 467.)

6

The Thirty-Seventh Claim for Relief asserts a claim for aiding and abetting a fraud against the Liberty Corner Defendants and certain co-defendants who participated in similar Loan Transactions. Plaintiff appears to rely on the fraud claim against the Officer Defendants in the Eighteenth Claim for Relief as the primary fraud. Specifically, Plaintiff alleges as follows:

> 586. Each of the RTL Defendants knew and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things, the RGLs were concealing a related-party receivable at the end of each relevant reporting and audit period.

> 587. The RTL Defendants were aware of their own roles in Bennett, Maggio, and Trosten's scheme to conceal the RGHI Receivable.

> 588. Notwithstanding this knowledge, the RTL Defendants knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things, knowingly entering into and facilitating the fraudulent RGL transactions, without which Bennett, Maggio, and Trosten could not have fraudulently concealed Refco's true financial conditions.

> 589. As a proximate result of the RTL Defendants' knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

(Compl., ¶¶ 586-589.)

## C.    The Bankruptcy Investigation And The Final Report of Examiner.

Prior to the filing of the Complaint, as part of the Bankruptcy Proceedings, the Bankruptcy Court appointed an examiner (the "Examiner") to investigate the circumstances surrounding Refco's demise. (Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007.) In the course of his investigation, the Examiner "conducted targeted searches of the approximately 1.6 million pages of documents LCCS produced to governmental agencies and the Creditors Committee." (*Id.*, Ex. 4 at 52.) The documents produced by LCCS to the Creditors

Committee were also reviewed by Plaintiff prior to filing the Complaint. (Compl. at 2(b).) The Examiner also interviewed Pigott and two other LCCS employees. (Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007, at 52 and Ex. 3.)

Although the Examiner did not purport to reach any conclusions with respect to the liability of the Round Trip Loan Participants, including the Liberty Corner Defendants (Marino Decl., Ex. 4 at 7 n.3), the Examiner made certain findings as to the Liberty Corner Defendants. Plaintiff relied on the Final Report of Examiner in preparing the Complaint. (Compl., at 2, ¶ c; Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007.)

As explained below, the conclusory allegations in the Complaint are wholly inadequate to support a claim for aiding and abetting a fraud.

## **LEGAL ARGUMENT**

I.     **PLEADING STANDARDS**

    A.     **To Survive A Rule 12(b)(6) Dismissal, Plaintiff's Complaint Must Provide Factual Allegations Sufficient To Raise A Right To Relief Beyond The Speculative Level And May Not Be Based On Bald Assertions Or Legal Conclusions.**

In a recent decision, <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the United States Supreme Court announced a new "plausibility" standard for Rule 12(b)(6) dismissal. The Supreme Court recognized that although Rule 8(a)(2) obliges a plaintiff to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," this obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65. The Court "explicitly disavowed the oft-quoted statement in <u>Conley [v. Gibson</u>, 355 U.S. 41, 45-46 (1957)] of 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007).

For a plaintiff to survive a Rule 12(b)(6) motion, the Supreme Court stated: "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 127 S. Ct. at 1965; see also Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008); Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 132 (2d Cir. 2007); Atsi Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In other words, a plaintiff must "amplify a claim with some factual allegations . . . to render the claim plausible." Iqbal, 490 F.3d at 157-58. As discussed below, Plaintiff's allegations against the Liberty Corner Defendants do not pass Twombly's plausibility test.

Moreover, although the Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences therefrom in plaintiff's favor, the Court "need not accord legal conclusions, deductions or opinions couched as factual allegations a presumption of truthfulness." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks, brackets, and ellipsis omitted). To defeat a motion to dismiss, "bald assertions and conclusions of law will not suffice." Reddington, 511 F.3d at 132 (quotation marks omitted); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (quotation marks omitted omitted).

**B.**    **The Plaintiff Must Meet The Heightened Pleading Requirements Of Rule 9(b) On His Claim For Aiding And Abetting A Fraud.**

Rule 9(b) requires that in alleging fraud, a party must state with particularity the circumstances constituting the fraud.    Fed. R. Civ. P. 9(b);[3] Atsi, 493 F.3d at 99.    "Thus, conclusory allegations of fraud may be dismissed under Rule 9(b)."    Rosner v. Bank of China, 528 F. Supp. 2d 419, 425 (S.D.N.Y. 2007).    The heightened pleading requirements of Rule 9(b) apply to claims of aiding and abetting a fraud.    Id. at 425; Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006); Morin v. Trupin, 711 F. Supp. 97, 112 (S.D.N.Y. 1989).

Although Rule 9(b) permits knowledge to be "averred generally," this relaxation of the specificity requirement for knowledge "'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'"    See Rosner, 528 F. Supp.2d at 425 (quoting Shields v. CityTrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).    The Second Circuit construes Rule 9(b) "'strictly'" so as "'to minimize strike suits, to protect defendants . . . from harm to their reputation from ungrounded actions, and to give defendants notice of the precise conduct in issue.'"    Id. (quoting Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982)).    This requirement takes on particular importance in multiple-defendant cases, where plaintiffs may be inclined to paint defendants broadly with the same brush.    Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 601 (S.D.N.Y. 2008) ("Where multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each of them.").    When there has been full discovery, the policies underlying Rule 9(b) require even "greater precision." Billard, 683 F.2d at 57.

---

[3]    Rule 9(b) applies to complaints removed from state court.    Chi v. Age Group, Ltd., No. 94 Civ. 5253, 1999 U.S. Dist. LEXIS 16075, at *25 & n.3 (S.D.N.Y. Oct. 19, 1996).

Plaintiff's aiding-and-abetting-a-fraud claim against the Liberty Corner Defendants, as explained below, fails to satisfy the heightened pleading requirements of Rule 9(b).

## II.    NEW YORK SUBSTANTIVE LAW GOVERNS THE CLAIM FOR AIDING AND ABETTING A FRAUD UNDER CONFLICTS-OF-LAW PRINCIPLES.

Defendants respectfully submit that a choice-of-law analysis is necessary with respect to the aiding-and-abetting-a-fraud claim because there is a conflict between the laws of Illinois and New York.  A court must perform such an analysis where there is an "actual conflict" between the law of two jurisdictions. Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 331 (2d Cir. 2005).  Such an actual conflict need not be outcome determinative.  Id. at 331.  Instead, an actual conflict exists where "the applicable law from each jurisdiction provides different substantive rules," the differences are "'relevant' to the issue at hand," and the differences "have a 'significant possible effect on the outcome of the trial.'"  Id. at 331.

In this case, the knowledge element of an aiding-and-abetting-a-fraud claim is different under New York and Illinois law.  Whereas actual knowledge is a requisite element of aiding and abetting a fraud under New York law, see Rosner, 528 F. Supp. 2d at 426, Illinois law requires that an aider and abetter be "regularly aware of his role as part of the overall or tortious activity." Thornwood, Inc. v. Jenner & Block, 799 N.E. 2d 756, 767 (Ill. App. Ct. 2003) (listing elements of aiding and abetting under Illinois law and not listing actual knowledge of the tortious activity as one of the requisite elements), app. denied, 807 N.E.2d 982 (Ill. 2004).

To the extent that an action involving issues of state law has been transferred to this Court by the Judicial Panel on Multidistrict Litigation, the Court applies the choice of law rules that would govern in the transferor forum.  In re Parmalat Sec. Litig., 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (citing Van Dusen v. Barrack, 376 U.S. 612 (1964)).  Because the initial forum

11

state in this case was Illinois, the Court should apply Illinois choice-of-law rules. <u>Id.</u>; <u>see also</u> <u>Rehl v. Romec</u>, No. 05-3516, 2007 U.S. Dist. LEXIS 30879, at *10 (E.D.N.Y. Apr. 26, 2007) (recognizing that "in a case which has been transferred by the MDL Panel from one federal court to another, the transferee court must apply the choice-of-law rule that would apply in the transferor court.").

Federal courts in Illinois sitting in diversity apply the choice of law rules set forth in the Restatement (Second) of Conflicts of Law, which Illinois has adopted. <u>Suzik v. Sea-Land Corp.</u>, 89 F.3d 345, 348 (7th Cir. 1996); <u>Ingersoll v. Klein</u>, 262 N.E.2d 593, 595 (Ill. 1970). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the tort at issue. (Second) of Conflict of Laws § 145 (1).[4] In applying this test, Illinois courts consider the following factors: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the parties' domiciles, nationality, place of incorporation and place of business; and (4) the place where the parties' relationship is centered. <u>Barbara Sales, Inc. v. Intel Corp.</u>, 857 N.E.2d 717, 722 (Ill. App. Ct. 2006); Rest. (Second) of Conflict of Laws § 145(2). Consideration of these factors demonstrates that New York has the most significant relationship to the aiding-and-abetting-a-fraud claim.

First, the place of injury, perhaps the most important factor, is New York — RGL's principal place of business. (Marino Decl., Ex. 1, RGL's Voluntary Petition.) Thus, this factor weighs heavily in favor of applying New York law. Second, the place where the conduct occurred is also New York. The alleged misrepresentations and omissions were made to RGL's

---

[4]    New York law would govern even if the Court were to apply New York conflicts-of-law rules for tort claims. In New York, as in Illinois, courts apply the law of the jurisdiction with "the greatest interest in the litigation." <u>Cromer Fin. Ltd. v. Berger</u>, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001). For the reasons discussed above, New York has the greatest interest with respect to the aiding-and-aiding-a-fraud claim.

directors, officers and agents, (Compl., ¶ 464), who would have been at RGL's executive offices in New York. (Marino Decl., Ex. 2, Form 8-K filed with SEC by RGL, Refco, Inc. and Refco Finance, Inc. on December 20, 2006.)   In addition, the Loan Transactions were initiated by Maggio and McCarthy, both officers of RSL, which had its principal place of business in New York. (Compl., ¶ 37; Marino Decl., Ex. 6, Agoglia Complaint, ¶¶ 22, 40; Marino Decl., Ex. 4, Final Report of Examiner dated July 20, 2007 at 54.)   Further, RGHI's principal place of business was also located in New York. (Marino Decl., Ex. 3, RGHI's SEC Form 3 dated August 11, 2005.) This factor therefore weighs in favor of applying New York law.   Third, RGL's principal place of business is in New York (Marino Decl., Ex. 1, RGL's Voluntary Petition) and, it's bankruptcy estate is being administered in the Bankruptcy Proceedings pending in New York. (Compl., ¶¶ 31, 32(a).) LCCS, a Delaware limited liability company, had its principal place of business in Summit, New Jersey. (Compl., ¶ 50.) On balance, this factor tips in favor of New York law.   Fourth, the Liberty Corner Defendants' relationship with Refco is centered in New York, where RGL, RGHI and RSL all have their principal places of business. (Marino Decl., Ex. 1, RGL's Voluntary Petition; Marino Decl., Ex. 3, RGHI's SEC Form 3 dated August 11, 2005; Marino Decl., Ex. 6, Agoglia Complaint, ¶ 22.) This factor also favors New York law.

As each of the relevant factors weighs in favor of determining that New York has the most significant relationship to the aiding-and-abetting-a-fraud claim, New York law should govern the Court's analysis.[5]

---

[5]    Even if Illinois law was applied, Plaintiff's claims would not state a claim because there is no showing that the Liberty Corner Defendants were aware of their role as part of a larger scheme or tortious activity.

III.  **THE CLAIM FOR AIDING AND ABETTING A FRAUD MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FAILS TO PLEAD FRAUD WITH PARTICULARITY.**

To establish liability for aiding and abetting a fraud under New York law, the plaintiff must plead and prove (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) defendant's substantial assistance to advance the fraud's commission. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006); Rosner, 528 F. Supp. 2d at 425. Actual, not constructive knowledge, is required to impose liability for aiding and abetting a fraud. See, e.g., Rosner, 528 F. Supp. 2d at 426; Lerner, 459 F.3d at 292; see also Cromer, 137 F. Supp. 2d at 494 ("To satisfy the knowledge requirement of [claims of aiding and abetting a fraud and breach of fiduciary duty], New York law requires that a defendant have 'actual knowledge' of the underlying fraud."); Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York courts and federal courts in this district have required actual knowledge for imposing aiding and abetting liability.").

As discussed below, Plaintiff fails to adequately plead actual knowledge and substantial assistance on the part of the Liberty Corner Defendants and therefore his aiding and abetting a fraud claim must be dismissed.

A.  **Plaintiffs Have Not Alleged That The Liberty Corner Defendants Had Actual Knowledge Of Any Misconduct In Connection With The Loan Transactions.**

To satisfy the knowledge requirement of an aiding-and-abetting-a-fraud claim, "the complaint must allege facts which show that the defendant had actual knowledge of the underlying fraud." Filler v. Hanvit Bank, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004). Although a defendant's actual knowledge of the fraud may be averred generally, In re WorldCom, Inc. Secs. Litig., 382 F. Supp.2d 549, 560 (S.D.N.Y. 2005) (citing Wight v. BankAmerica Corp., 219

14

F.3d 79, 91 (2d Cir. 2000) and Rule 9(b)), "this leeway is not a license to base claims of fraud on

speculation and conclusory allegations." Eternity Global Master Fund Ltd. v. Morgan Guar.

Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (quotation marks omitted). The plaintiff is

still required to provide a factual basis for an allegation that a defendant had actual knowledge of

the fraud. See Rosner, 528 F. Supp. 2d at 426 (dismissing aiding-and-abetting-a-fraud claim

pursuant to Rule 9(b) where plaintiff provided "no factual basis for the assertion that [Defendant]

had actual knowledge of the fraud"); Lerner, 459 F.3d at 292-93 (affirming dismissal of aiding-

and-abetting-fraud claim, finding that plaintiffs "failed to allege actual knowledge of fraud with

the particularity necessary to survive the heightened pleading requirements of Federal Rule of

Civil Procedure 9(b).")  To state a claim for aiding and abetting under New York law, "the

overwhelming weight of authority holds that actual knowledge is required, rather than a lower

standard such as recklessness or willful blindness." Pension Comm. of Univ. of Montreal

Pension Plan v. Bank of Am. Secs., LLC, 446 F. Supp. 2d 163, 202, n.279 (S.D.N.Y. 2006).

Although not insurmountable, the burden of demonstrating actual knowledge is a heavy

one. Fraternity Fund, Ltd. v. Beacon Hill Asset Management, LLC, 479 F. Supp. 2d 349, 367

(S.D.N.Y. 2007) (quoting Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006, 1027

(S.D.N.Y. 1984)). And where, as here, the alleged aider and abettor owes no fiduciary duty to

the allegedly injured party, the burden of demonstrating actual knowledge is "especially" high.

Terrydale, 611 F. Supp. at 1027.

The Complaint utterly fails to carry the burden to plead facts strongly supporting an

inference of knowledge on the part of the Liberty Corner Defendants. There are no express

allegations anywhere in Plaintiff's Complaint that the Liberty Corner Defendants had actual

knowledge of the three-part fraud in which other defendants were alleged to have engaged. Nor

15

are any facts pleaded to support the allegation that the Liberty Corner Defendants consciously avoided knowledge of the fraud — i.e., that they knew that the transactions between LCCS and Refco had a fraudulent purpose.  Furthermore, there are no factual allegations evidencing that the Liberty Corner Defendants were actually aware of any specific representations or omissions concerning Refco's financial condition made by the Officer Defendants to RGL directors, officers and agents.  Absent such allegations, Plaintiff's claim must fail.  See Fraternity Fund, 479 F. Supp. 2d at 369 (dismissing aiding and abetting claims against Prudential Securities because Plaintiff failed to allege facts strongly supporting an inference of knowledge); Filler, 339 F. Supp. 2d at 560 (recognizing, in dismissing an aiding-and-abetting-a-fraud claim, that plaintiffs did not allege that defendants were actually aware of the representations made to plaintiff).

   In ¶ 347(a) and ¶ 586 of the Complaint, Plaintiff alleges that "the RTL Defendants *knew and/or consciously avoided knowing*" that the Refco Insiders concealed from RGL's directors, officers and agents that the Loan Transactions were concealing a related-party receivable at the end of each relevant reporting and audit period.  (Compl., ¶ 586.) (emphasis supplied).  Pleading actual knowledge in the alternative with constructive knowledge, however, is insufficient to meet the actual knowledge standard.  See WorldCom, 382 F. Supp.2d at 560 ("Pleading knowledge in the alternative with an allegation of reckless disregard is insufficient to allege a claim"); Williams v. Bank Leumi Trust Co. of N.Y.,No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538, at **13-14 (S.D.N.Y. May 30, 1997) (stating that disjunctive phrases such as "knew, or recklessly disregarded," or "knew or should have known" are insufficient under the actual knowledge standard).

Even if the Complaint is read to plead conscious avoidance alone, which one court has read to satisfy the actual knowledge requirement, <u>Fraternity Fund</u>, 479 F. Supp. 2d at 368 (distinguishing between conscious avoidance and constructive knowledge and describing conscious avoidance as a type of actual knowledge), Plaintiff's allegations are far too conclusory to establish conscious avoidance on the part of the Liberty Corner Defendants.  There are no facts demonstrating that the Liberty Corner Defendants were aware of an RGHI receivable or that the Refco Insiders wanted to conceal that receivable.  The mere fact that the Loan Transactions occurred at the end of a reporting and audit period ((Compl., ¶ 347(a) and (b)) or were of a significant size (Compl. ¶ 347(c)) is insufficient to show culpable knowledge.  <u>In re Flag Telecom Holdings, Ltd. Secs. Litig.</u>, 308 F. Supp. 2d 249, 261 (S.D.N.Y. 2004) (statements by director that swap transactions were "end-of-the-quarter transactions" and occurred at a time when the company was struggling to meet earnings projections were "simply too vague" to establish that defendant knew that the swap transactions were sham transactions designed to artificially inflate revenues).  Moreover, even if such allegations sufficed to plead constructive knowledge, which they do not, constructive knowledge cannot support an aiding and abetting claim.  <u>See</u> <u>Mazzaro v. Bank of Am. Corp.</u>, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (finding that plaintiffs' allegations that the nature of the transfers out of account, which occurred within three days of receipt of funds by defendants, and the general amount of funds within the account, indicated at most constructive knowledge of a fraudulent scheme and were insufficient to support an allegation of actual knowledge); <u>Williams</u>, 1997 U.S. Dist. LEXIS 7538, at *14 (finding that sequence of account transfers and contention that defendant was informed that purpose of check was to purchase stock raised the issue of constructive knowledge of check-kiting scheme, which was insufficient to state a claim for aiding and abetting).

17

In similar conclusory fashion, Plaintiff alleges that "[t]he RTL Defendants were aware of their own roles" in the alleged fraudulent scheme. (Compl., ¶ 348, ¶ 587.) These "conclusory allegations that [Defendants] w[ere] aware of the scheme . . . also fail to satisfy plaintiff's burden to plead actual knowledge." Williams, 1997 U.S. Dist. LEXIS 7538, at *14.   The Litigation Trustee does not allege any communication by which Pigott, or anyone else at LCCS, learned that Refco was attempting to hide a receivable.  Nor does the Complaint allege that any grounds to believe that Pigott knew RGHI was not a Refco entity or that the loan transactions were guaranteed by the corporate subsidiary of an insolvent parent.

Because there are multiple RTL Defendants, it is especially important for Plaintiff to particularize the facts demonstrating actual knowledge on the part of Defendants.  See Hunt, 530 F. Supp. 2d 580 (S.D.N.Y. 2008).   The only allegations specific to the Liberty Corner Defendants are found in ¶¶ 85,  86 and 347 of the Complaint.  In ¶ 85, Plaintiff alleges:

> Demonstrating Pigott's awareness that the RTLs were improper,
> Pigott rejected using an active fund he managed that was engaged
> in treasury bill arbitrage as the RTL conduit, and instead
> substituted Liberty Corner because Liberty Corner was a personal
> management company that could be made to take any and all
> actions directed by Pigott.

(Compl., ¶ 85.)

In ¶ 86 of the Complaint, Plaintiff asserts: "Underscoring that Pigott understood that the sole purpose of the RTLs was to fraudulently 'dress up' Refco's financial statements, Pigott had RGL guarantee each of the Liberty Corner RTL Loans." (Compl., ¶ 86.)  In paragraph 347, of the Complaint, Plaintiff asserts that Liberty Corner was aware that the Loan Transactions were occurring with more frequency as Refco's LBO and IPO approached, that the amount of the transactions was increasing, and that Liberty Corner received lucrative interest payments.

18

In Fraternity Fund, Judge Kaplan dismissed aiding-and-abetting claims against Prudential Securities for failure to allege facts supporting an inference of knowledge under similar circumstances. In that case, the plaintiff alleged that Prudential aided and abetted a valuation fraud allegedly perpetrated by a hedge fund manager by corroborating securities values provided by the manager without conducting a proper investigation. Fraternity Fund, 479 F. Supp. 2d at 368-69. The complaint alleged conclusorily that Prudential knew that the manager was going to send those corroborated securities values to its auditors to support a year-end audit. Id. at 368. Judge Kaplan rejected the notion that the complaint adequately pleaded actual knowledge or conscious avoidance on the part of Prudential. He reasoned that while rubber-stamping securities values was consistent with collusion with the hedge fund manager, it was equally consistent with laziness. Critically, he noted that "even if one assumed that it reflected dishonesty, [the Complaint] would not sufficiently allege facts from which [the broker] could be said to have known or consciously disregarded [the hedge fund manager's] fraud, at least in the absence of allegations that Prudential . . . had any motive to assist." Id. at 369.

As in Fraternity Fund, the allegations in the Complaint do not strongly support an inference of knowledge or conscious avoidance on the part of the Liberty Corner Defendants. That Pigott did not conduct the Loan Transactions through a fund managed by LCCS is not fraudulent on its face and is far more consistent with the explanation reported by the Examiner, viz. — that (a) the Loan Transactions did not fit within the investment strategy of that particular fund; and (b) Pigott was concerned about putting the investors' funds at risk. (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007, at 54.) In either event, even accepting the Plaintiff's premise, the Complaint does not lead to the conclusion that the Liberty Corner Defendants could be said to have known or consciously disregarded that Refco was going to use

the transactions to falsify its accounting documents.  No facts pleaded by Plaintiff support that claim.  Likewise, the allegation that Pigott's insistence on a parent guaranty fairly gives rise to a strong inference of knowledge should be rejected out of hand.  This assertion is not only mere conjecture, but also is directly contradicted by the explanation contained in the Final Report of Examiner.  As the Final Examiner's Report stated:

> Most of the RTL Participants indicated that the main reason they agreed to participate in the RTLs was because they felt that the structure of the transaction effectively eliminated any risk that they would not be repaid the amounts they loaned to RGHI and therefore the transaction was simply a "risk free" way to make a relatively small profit.

(Id. at 31-32.)  There are no facts to suggest that Pigott was aware of Refco's LBO or IPO.

Accordingly, because Plaintiff provides only conclusory and speculative allegations and fails to expressly allege actual knowledge or provide any factual basis demonstrating actual knowledge of the underlying fraud on the part of the Liberty Corner Defendants as required by Rule 12(b)(6) and Rule 9(b), Plaintiff's aiding-and-abetting-a-fraud claim against the Liberty Corner Defendants must be dismissed.[6]  See Rosner, 528 F. Supp. 2d at 426 (dismissing aiding and abetting a fraud claim pursuant to Rule 9(b) where plaintiff provided "no factual basis for the assertion that [defendant] had actual knowledge of the fraud"); Lerner, 459 F.3d at 292-93 (affirming district court's dismissal of aiding-and-abetting-a-fraud claim pursuant to Rule 9(b) where plaintiffs conclusorily alleged actual knowledge but failed to plead facts with the requisite particularity); WorldCom, 382 F. Supp.2d at 560-61 (agreeing with defendants that plaintiff failed to plead actual knowledge, an essential element of the fraud, where plaintiff alleged that

---

[6]     In addition, because Plaintiff's allegations directly contradict the facts set forth in the Examiner's report, a document on which the Complaint was based, the report controls and Plaintiff's allegations cannot defeat this Motion. See In re Aegon, 2004 U.S. Dist. LEXIS 11446, at *14; Matusovsky, 186 F. Supp. 2d at 400; Rapoport, 88 F. Supp. 2d at 184.

defendants "knew or recklessly disregarded" the fraud); Williams, 1997 U.S. Dist. LEXIS 7538 at *14 (finding plaintiff failed to satisfy her pleading burden to establish aiding and abetting liability under Rule 12(b)(6) where, among other things, she alleged facts giving rise, at most, to a finding of constructive knowledge, which is insufficient).

B.    **The Liberty Corner Defendants Did Not Substantially Assist The Alleged Refco Fraud.**

In addition to actual knowledge, Plaintiff must show that the Defendants' acts substantially assisted the alleged fraud. The allegations in the Complaint fail to support this proposition. This Court has previously defined "substantial assistance" under New York law as follows:

> Generally, "substantial assistance" exists where (1) a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and (2) "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."

Rosner, 528 F. Supp. 2d at 426 (quoting Cromer, 137 F. Supp.2d at 470). "But-for" causation does not suffice to impose liability upon an alleged aider and abettor; rather, liability attaches only where the injury is "a direct or reasonably foreseeable result of the conduct." Cromer, 137 F. Supp. 2d at 470. "Financial transactions that are not considered 'atypical' or 'non-routine' do not constitute substantial assistance." Rosner, 528 F. Supp.2d at 427. Here, Plaintiff alleges, at most, that the Refco Insiders could not have perpetrated their alleged fraud without the Loan Transactions. This "but for" rationale does not satisfy the requirements for substantial assistance.

First, Plaintiff does not allege facts showing that the Loan Transactions themselves were "atypical" or "non-routine." Indeed, the Loan Transactions were memorialized in loan documents prepared by Refco's outside counsel, Mayer Brown, one of the nation's largest law

firms, and reviewed by LCCS's outside counsel.  (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007, at 54.)

Second, Plaintiffs plead no facts that would support an inference that the Liberty Corner Defendants had reason to believe that Refco wanted to engage in the transactions for anything other than legitimate business reasons.  (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007 at 55.)  Aiding and abetting liability cannot be imposed upon the Liberty Corner Defendants merely because, by engaging in legitimate transactions, they unknowingly participated in a fraudulent scheme.  Stated otherwise, Defendant's mere participation in the Loan Transactions, without more, does not amount to "substantial assistance" for pleading purposes.  Cf. Rosner, 528 F.Supp. 2d at 427 (finding that defendant's provision of usual banking services to a customer did not rise to the level of substantial assistance); Mazzaro, 525 F. Supp. 2d at 390 ("mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance") (quotation marks omitted); Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 29 (2d Cir. 2000) ("The simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker.") (quotation marks omitted).  Plaintiff's characterization of the Loan Transactions as "fraudulent" (Compl., ¶ 588) is conclusory and does not somehow transform them into transactions constituting substantial assistance.   See Mazzaro, 525 F. Supp.2d at 390 ("Plaintiffs' characterization of the transfers as 'improper' is conclusory.")

Moreover, the Loan Transactions in which the Liberty Corner Defendants participated were not the proximate cause of the harm allegedly sustained by RGL.  Plaintiff does not allege that RGL was somehow harmed by the Loan Transactions themselves.  Rather, Plaintiff alleges

that RGL was harmed by the alleged misrepresentations and omissions made by the Officer Defendants to RGL's directors, officers and agents concerning the company's financial condition. (Compl., Eighteenth Claim for Relief (Fraud Claim by RGL Against Bennett, Maggio, and Trosten.) Plaintiff essentially alleges that but for the Loan Transactions, "Bennett, Maggio, and Trosten could not have fraudulently concealed Refco's true financial condition." (Compl., ¶ 588.) As stated above, however, "but-for" causation is insufficient. Fraternity Fund, 479 F. Supp. 2d at 371 ("Plaintiffs must allege more than but-for causation. They must allege that their injury was 'a direct or reasonably foreseeable result of the conduct.'") (quoting Pension Comm., 446 F. Supp. 2d at 202); Cromer, 137 F. Supp. 2d at 470.

Beyond failing to allege that the Loan Transactions directly injured RGL, Plaintiff does not assert any facts demonstrating that the Refco Insiders' improper use of the Loan Transactions was a reasonably foreseeable result of the Liberty Corner Defendants participation in those transactions. Stated simply, the Liberty Corner Defendants could not have reasonably foreseen that the Refco Insiders would use the Loan Transactions (i) to affirmatively misrepresent and conceal the RGHI receivable at the end of each relevant reporting and audit period, (ii) for the purpose of inducing RGL to enter into an imprudent LBO whereby, (iii) RGL would incur $1.4 billion in new LBO debt, and (iv) distribute its assets to Refco insiders and other RGL equity holders. (Compl., Eighteenth Claim for Relief (Fraud Claim by RGL Against Bennett, Maggio, and Trosten.) See id.

In sum, although the Officer Defendants' alleged fraudulent scheme may have been made possible by the Loan Transactions, those transactions were not a proximate cause of the fraudulent scheme. The claim for aiding and abetting a fraud, therefore, must be dismissed. See Cromer, 137 F. Supp.2d at 472 ("While the Ponzi scheme may only have been possible because

of Bear Stearns' actions, or inaction, Bear Stearns' conduct was not a proximate cause of the Ponzi scheme.").

## IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO THE LIBERTY CORNER DEFENDANTS BECAUSE REPLEADING WOULD BE FUTILE.

The Liberty Corner Defendants respectfully submit that dismissal of the aiding and abetting a fraud claim as to them should be with prejudice.   A dismissal with prejudice is appropriate where granting leave to replead would be futile.   See S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42-43 (2d Cir. 1979); United States v. Smith, No. 06 Civ. 4056, 2007 U.S. Dist. LEXIS 53826 (S.D.N.Y. July 24, 2007) ("A with-prejudice dismissal is appropriate under Rule 9(b) where there is a 'good reason' to deny the plaintiff leave to amend, including where it appears that any amendment would be futile.").

Here, in preparing the Complaint, Plaintiff had the benefit of essentially full discovery from the Liberty Corner Defendants.   As explicitly stated in the Complaint, Plaintiff based his allegations on his and his counsel's investigation and review of, among other things, the filings, documents, and testimony produced in the Bankruptcy Proceedings, which necessarily include the interviews of Pigott and two LCCS employees as well as the 1.6 million pages of documents produced by LCCS (Marino Decl., Ex. 4 at 52 and Ex. 3 thereto; Compl., at 2(a).)   Plaintiff also relied on the Final Report of Examiner, (Compl., at 2(c)), wherein the Bankruptcy Examiner discusses in great detail the Liberty Corner Defendants' involvement in the Loan Transactions. Despite all this evidentiary material, Plaintiff was unable to plead the basic elements of an aiding-and-abetting-a-fraud claim as required by Rule 8(a)(2) or to plead them with the level of precision required by Rule 9(b).   See Billard, 683 F.2d at 57.

Under such circumstances, dismissal with prejudice is warranted on the grounds of futility. See Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1996 U.S. Dist. LEXIS 14366, at *18 (S.D.N.Y. Sept. 30, 1996); Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Secs. Corp., No. 99 Civ. 1944, 2000 U.S. Dist. LEXIS 7444, at *19 (S.D.N.Y. June 1, 2000).

## **CONCLUSION**

For the reasons set forth above, defendants Liberty Corner Capital Strategies, LLC and William T. Pigott respectfully request that the Court dismiss the Thirty-Seventh Claim for Relief as to them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead fraud with the requisite particularity pursuant to Federal Rule of Civil Procedure 9(b).

Respectfully submitted,

MARINO TORTORELLA PC

Dated: Chatham, New Jersey          BY: _____
      May 21, 2008                                    Kevin H. Marino
                                            John D. Tortorella
                                            Roseann Bassler Dal Pra
                                            437 Southern Boulevard
                                            Chatham, New Jersey 07928-1488
                                            (973) 824-9300

*Attorneys for Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott*

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
        :

In re REFCO, INC. SECURITIES LITIGATION :     07 MDL No. 1902 (GEL)
        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARC S. KIRSCHNER,        :
as Trustee of the Refco Litigation Trust,    :     07 Civ. 11604 (GEL)
        :

        Plaintiff,   :     **DECLARATION OF KEVIN H.**
      v.        :     **MARINO IN SUPPORT OF THE**
        :     **JOINT MOTION OF DEFENDANTS**
GRANT THORNTON LLP, et al.,    :     **LIBERTY CORNER CAPITAL**
        :     **STRATEGIES, LLC AND WILLIAM**
        Defendants.  :     **T. PIGOTT TO DISMISS THE**
        :     **COMPLAINT WITH PREJUDICE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KEVIN H. MARINO, hereby declares, pursuant to 28 U.S.C. § 1746(2), as follows:

1.     I am the principal of Marino Tortorella, PC, attorneys for defendants Liberty Corner Capital Strategies, LLC and William T. Pigott (collectively, the "Liberty Corner Defendants") in this matter. I respectfully submit this Declaration in support of the Liberty Corner Defendants' Joint Motion To Dismiss The Complaint With Prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b).

2.     Annexed hereto as Exhibit 1 is a true and correct copy of a Voluntary Petition for Chapter 11 bankruptcy protection filed by Refco Group Ltd., LLC with the

United States Bankruptcy Court of the Southern District of New York on October 17, 2005.

3.      Annexed hereto as Exhibit 2 is a true and correct copy of the Form 8-K (excluding exhibits) filed with the Securities and Exchange Commission ("SEC") by Refco, Inc.; Refco Group Ltd., LLC; and Refco Finance, Inc. on December 20, 2006.

4.      Annexed hereto as Exhibit 3 is a true and correct copy of the SEC Form 3 filed by Refco Group Holdings, Inc.; Phillip R. Bennett; and Phillip R. Bennett Three Year Annuity Trust filed with the SEC on August 11, 2005.

5.      Annexed hereto as Exhibit 4 are true and correct copies of excerpts of the Final Report of Examiner dated July 11, 2007 and Exhibit 3 thereto (excluding the remaining exhibits) prepared by the court-appointed bankruptcy examiner and his counsel in the bankruptcy proceeding encaptioned *In re Refco Inc., et al.*, United States Bankruptcy Court, Southern District of New York, Case No. 05-60006 (RDD).

6.      Annexed hereto as Exhibit 5 are true and correct copies of excerpts of the Adversary Complaint encaptioned *Marc S. Kirschner v. John D. Agoglia, et al.*, Case No. 05-60006, Adv. Pro. No. 07-03060 (RDD), which was filed in the Bankruptcy Proceeding on or about October 15, 2007.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct.

MARINO TORTORELLA PC

Dated: Chatham, New Jersey          By: _____
       May 21, 2008                     Kevin H. Marino (KM 4941)
                                        437 Southern Boulevard
                                        Chatham, New Jersey  07928-1488
                                        Tel.: (973) 824-9300
                                        Fax: (973) 824-8425

                                        *Attorneys for Defendants William T.
                                        Pigott and Liberty Corner Capital
                                        Strategies LLC*

# EXHIBIT 1

Rec. 105100

| United States Bankruptcy Court<br>Southern District of New York | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br><br>Refco Group Ltd., LLC | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br><br>52-2169014 | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>One World Financial Center<br>200 Liberty Street, Tower A<br>New York, New York 10281 | Street Address of Debtor (No. & Street, City, State & Zip Code):<br><br>05 - 60027 |
| County of Residence or of the<br>Principal Place of Business:<br><br>New York, New York | County of Residence or of the<br>Principal Place of Business:<br><br>BK JUDGE DRAIN |
| Mailing Address of Debtor<br>(if different from street address): | Mailing Address of Joint Debtor<br>(if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from addresses listed above) | |

## INFORMATION REGARDING DEBTOR (Check the Applicable Boxes)

Venue (Check any applicable box)
☐ Debtor has been domiciled or has had a residence, principal place of business or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | **Chapter or Section of Bankruptcy Code Under Which<br>the Petition Is Filed** (Check one box) |
|---|---|
| ☐ Individual     ☐ Railroad<br>☐ Corporation    ☐ Stockbroker<br>☐ Partnership    ☐ Commodity Broker<br>☒ Other  LLC | ☐ Chapter 7     ☒ Chapter 11     ☐ Chapter 13<br>☐ Chapter 9     ☐ Chapter 12<br>☐ Sec. 304-Case ancillary to foreign proceeding |
| **Nature of Debts** (Check one box)<br>☐ Consumer/Non-Business     ☒ Business | |
| | **Filing Fee** (Check one box)<br>☒ Full Filing Fee attached.<br>☐ Filing Fee to be paid in installments  (Applicable to individuals only) |
| **Chapter 11 Small Business** (Check all boxes that apply)<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101.<br>☐ Debtor is and elects to be considered a small business under<br>  11 U.S.C. § 1121(e).  (optional) | Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |

| Statistical/Administrative Information (Estimates only)<br>☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will<br>  be no funds available for distribution to unsecured creditors | THIS SPACE IS FOR COURT<br>USE ONLY |
|---|---|

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1,000-over | |
|---|---|---|---|---|---|---|---|
| (consolidated with affiliates) | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | |

| Estimated Assets (consolidated with affiliates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Estimated Debts (consolidated with affiliates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>Refco Group Ltd., LLC | Form B1, Page 2 |
|---|---|---|

**Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)**

| Location<br>Where Filed:  None | Case Number:<br>N/A | Date Filed:<br>N/A |
|---|---|---|

**Pending Bankruptcy Case Filed by Any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)**

| Name of Debtor:<br>See Annex A | Case Number:<br>As Assigned | Date Filed:<br>Same |
|---|---|---|
| District:<br>Southern District of New York | Relationship:<br>Affiliate | Judge:<br>As Assigned |

## SIGNATURES

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
  Signature of Debtor

X _____
  Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Exhibit A
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐  Exhibit A is attached and made a part of this petition.

### Exhibit B
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____
  Signature of Attorney for Debtor(s)          Date

### Exhibit C
Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.
☒  No

### Signature of Attorney

X  /s/ J. Gregory Milmoe
  Signature of Attorney for Debtor(s)

J. Gregory Milmoe
Printed Name of Attorney for Debtor(s)

Skadden, Arps, Slate, Meagher & Flom LLP
Firm Name

Four Times Square
New York, New York 10036
Address

(212) 735-3000
Telephone Number

October 17, 2005
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
  Signature of Authorized Individual

_____
Printed Name of Authorized Individual

*Authorized Signatory*
Title of Authorized Individual

October 17, 2005
Date

### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
  Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C.§ 156.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - -x
                                    :
          In re                     :      Chapter 11
                                    :
Refco Inc, et al.,                  :      Case No. 05-
                                    :
                    Debtors.        :      (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - -x

### CORPORATE OWNERSHIP STATEMENT

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure, the Debtors hereby states that the following corporations directly or indirectly own 10% or more of the equity interests of Refco Inc.:

- Refco Group Holdings, Inc.[1]
- Thomas H. Lee Equity Fund V, L.P.[2]
- Thomas H. Lee Parallel Fund V, L.P[3]

Refco Inc. owns all of the outstanding membership interests in New Refco Group Ltd., LLC.

New Refco Group, Ltd., LLC owns all of the outstanding membership interests in Refco Group Ltd., LLC.

---

[1]     Phillip Bennett directly and indirectly through each of Refco Group Holdings, Inc. and The Phillip R. Bennett Three Year Annuity Trust holds 43,052,000 shares (33.8%).

[2]     Thomas H. Lee is the Chairman and CEO of Thomas H. Lee Partners, L.P. David V. Harkins, Scott L. Jaeckel and Scott A. Schoen serve as Vice Chairman and Managing Director, Managing Director and Co-President, respectively, of Thomas H. Lee Partners, L.P. Each of Messrs. Lee, Harkins, Jaeckel and Schoen may be deemed to beneficially own the shares of common stock held of record by Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P.

[3]     Thomas H. Lee is the Chairman and CEO of Thomas H. Lee Partners, L.P. David V. Harkins, Scott L. Jaeckel and Scott A. Schoen serve as Vice Chairman and Managing Director, Managing Director and Co-President, respectively, of Thomas H. Lee Partners, L.P. Each of Messrs. Lee, Harkins, Jaeckel and Schoen may be deemed to beneficially own the shares of common stock held of record by Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P.

Refco Group Ltd., LLC owns all of the outstanding membership interests in Bersec International, LLC, Summit Management, LLC, Kroeck & Associates, LLC, Refco Global Capital Management, LLC, Marshall Metals, LLC, Refco Fixed Assets Management, LLC, Refco Mortgage Securities, LLC, Refco Regulated Companies, LLC, and Refco Capital Holdings LLC, and all of the outstanding capital stock of Refco Finance Inc.

Refco Regulated Companies, LLC owns all of the outstanding membership interests in Refco Global Futures, LLC.

Refco Global Futures, LLC owns all of the outstanding membership interests in Refco Global Holdings, LLC, and all of the capital stock in Refco Canada Finance Inc.

Refco Capital Holdings, LLC owns all of the outstanding membership interests in Refco Capital Management, LLC, Refco F/X Associates, LLC, Refco Administration, LLC, Refco Financial LLC, Refco Capital Trading, LLC and Refco Information Services, LLC and all of the outstanding shares in Refco Capital Markets, Ltd.

Refco Capital Management, LLC owns all of the outstanding membership interests in Refco Capital LLC and Refco Global Finance Ltd.

I, the undersigned officer of Refco Inc., one of the companies named as a debtor in the above-captioned cases, declare under penalty of perjury, that I have read the foregoing list and that it is true and correct as of the date referenced therein, to the best of my knowledge, information, and belief.

Dated: October 1̲7̲, 2005

Signature: _____

Name:    Dennis Klejna

Title:   Authorized Signatory

## LIST OF AFFILIATES

On the date hereof, each of the affiliated entities listed below (including the debtor in this Chapter 11 case) filed in this Court a petition for relief under Chapter 11 of title 11 of the United States Code. Contemporaneously with the filing of these petitions, these entities filed a motion requesting that the Court administratively consolidate for procedural purposes only and jointly administer their Chapter 11 cases.

1.   Refco Inc.
2.   Bersec International LLC
3.   Kroeck & Associates, LLC
4.   Marshall Metals LLC
5.   New Refco Group Ltd., LLC
6.   Refco Administration LLC
7.   Refco Capital LLC
8    Refco Capital Holdings LLC
9.   Refco Capital Management LLC
10.  Refco Capital Markets, LTD
11.  Refco Capital Trading LLC
12.  Refco Finance Inc.
13.  Refco Financial LLC
14.  Refco Fixed Assets Management LLC
15.  Refco F/X Associates LLC
16.  Refco Global Capital Management LLC
17.  Refco Global Finance Ltd.
18.  Refco Global Futures LLC
19.  Refco Global Holdings LLC
20.  Refco Group Ltd., LLC
21.  Refco Information Services LLC
22.  Refco Mortgage Securities, LLC
23.  Refco Regulated Companies LLC
24.  Summit Management LLC

# EXHIBIT 2

```
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>refco8kdec18.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, DC 20549

------------------

FORM 8-K

CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of Earliest Event Reported):
December 20, 2006 (December 15, 2006)

REFCO INC.
REFCO GROUP LTD., LLC
REFCO FINANCE INC.
-----------------------------------------------------------
(Exact Name of Registrant as Specified in Charter)

| Delaware | 001-32604 | 20-2537426 |
|---|---|---|
| Delaware | 333-119701 | 52-2169014 |
| Delaware | 333-119701-23 | 20-1400416 |

| ------------------------- | ------------------------- | ------------------- |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

One World Financial Center
200 Liberty Street, Tower A
New York, New York                                    10281
-----------------------------------------------------------
(Address of Principal Executive Offices) (Zip Code)

(Registrant's Telephone Number, Including Area Code) (212) 693-7000
                                                    ------------------

Not Applicable
-----------------------------------------------------------
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions:

[  ]  Written communications pursuant to Rule 425 under the Securities Act
      (17 CFR 230.425)

[  ]  Soliciting material pursuant to Rule 14a-12 under the Exchange Act
      (17 CFR 240.14a-12)

[  ]  Pre-commencement communications pursuant to Rule 14d-2(b) under the
      Exchange Act (17 CFR 240.14d-2(b))

[  ]  Pre-commencement communications pursuant to Rule 13e-4(c) under the
      Exchange Act (17 CFR 240.13e-4(c))


Item 1.03  Bankruptcy or Receivership
--------------------------------------

        On December 15, 2006, Refco Inc. (the "Company") issued a press release
announcing that the U.S. Bankruptcy Court for the Southern District of New York
(the "Bankruptcy Court") entered an order confirming the Modified Joint Chapter
11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the
"Modified Plan"). The press release is attached as Exhibit 99.1, the order
entered by the Bankruptcy Court, which confirms the Modified Plan, is attached
as Exhibit 99.2, and the Modified Plan is attached as Exhibit 99.3 and each is
incorporated by reference herein. Capitalized terms used but not otherwise
defined herein shall have the meanings given to such terms in the Modified Plan.

        The Modified Plan provides for the orderly wind-up of the Company's
businesses and is premised on a series of interdependent settlements and
compromises. Under the terms of the settlements which form the basis for the
Modified Plan, secured lenders who were owed $717.7 million were paid in full in
cash prior to confirmation of the Modified Plan; bondholders are expected to
receive 83.4 cents on the dollar for their claims; Refco Capital Markets, Ltd.'s
("RCM") securities customers are expected to receive approximately 85.6 cents on
the dollar for their claims, and general unsecured creditors are expected to
receive between 23 and 37.5 cents on the dollar for their claims. In addition,
as more fully described below, shareholders and creditors of the Company will
have the opportunity to participate in recoveries obtained by both the
Litigation Trust (as defined below) and Private Actions Trust (as defined below)
which will hold certain litigation claims.

        On the effective date of the Modified Plan, the currently outstanding
shares of the Company's common stock will be cancelled and the holders of common
stock of the Company outstanding immediately prior to the filing of the Chapter
11 Cases shall be given certain rights to participate in a trust established on
the effective date of the Modified Plan to hold certain litigation claims of the
Debtors and RCM (the "Litigation Trust") and a trust established on the
effective date of the Modified Plan to hold certain claims and causes of action
against third parties owned by holders of claims or interests against RCM or the
Debtors and which claims, even after contribution, are not assets of the estates
of the Debtors (the "Private Actions Trust"). Specifically, holders of common
stock of the Company that elect to assign and contribute their non-estate causes
of action to the Private Actions Trust will receive a percentage interest in the
recoveries obtained by both the Litigation Trust and the Private Action Trust
(the "Combined Recoveries") keyed to the net amount of such recoveries,
consisting of (i) 3% of the first $500 million of the Combined Recoveries; (ii)
7.5% of the Combined Recoveries greater than $500 million; and (iii) 15% of the
Combined Recoveries greater than $1 billion.

Item 9.01  Financial Statements and Exhibits.
------------------------------------------------

        (c) Exhibit.

Exhibit
Number                    Description
-------                   -----------

Exhibit 99.1              Press Release, dated December 15, 2006

Exhibit 99.2              Order confirming the Modified Joint Chapter 11 Plan of
                          Refco Inc. and Certain of its Direct and Indirect
                          Subsidiaries, entered December 15, 2006

Exhibit 99.3              Modified Joint Chapter 11 Plan of Refco Inc. and Certain
                          of its Direct and Indirect Subsidiaries, dated December
                          14, 2006

<PAGE>

                              SIGNATURES
                              ----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO INC.

Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                            ------------------------
                                            Jerry Lombardo
                                            Chief Financial Officer

<PAGE>

                              SIGNATURES
                              ----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO GROUP LTD., LLC

Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                            ------------------------
                                            Jerry Lombardo
                                            Authorized Person

<PAGE>

SIGNATURES
----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO FINANCE INC.

Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                        ------------------------
                                        Jerry Lombardo
                                        Vice President

<PAGE>

EXHIBIT INDEX
-------------

Exhibit
Number              Description
-------             -----------

Exhibit 99.1        Press Release, dated December 15, 2006

Exhibit 99.2        Order confirming the Modified Joint Chapter 11 Plan of
                    Refco Inc. and Certain of its Direct and Indirect
                    Subsidiaries, entered December 15, 2006

Exhibit 99.3        Modified Joint Chapter 11 Plan of Refco Inc. and Certain
                    of its Direct and Indirect Subsidiaries, dated December
                    14, 2006
</TEXT>
</DOCUMENT>

# EXHIBIT 3

SEC Form 3

# FORM 3

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0104 |
| Expires: | February 28, 2011 |
| Estimated average burden hours per response | 0.5 |

| 1. Name and Address of Reporting Person* | 2. Date of Event Requiring Statement (Month/Day/Year) 08/11/2005 | 3. Issuer Name and Ticker or Trading Symbol |
|---|---|---|
| Bennett Phillip R | | Refco Inc. [ RFX ] |

1. Name and Address of Reporting Person*

Bennett Phillip R

(Last)     (First)     (Middle)

C/O REFCO INC. ONE WORD FINANCIAL CTR

200 LIBERTY STREET, TOWER A

(Street)

NEW YORK     NY     10281

(City)     (State)     (Zip)

**4. Relationship of Reporting Person(s) to Issuer** (Check all applicable)

- X   Director
- X   10% Owner
- X   Officer (give title below)
-      Other (specify below)

Chief Executive Officer / Chairman, President

**5. If Amendment, Date of Original Filed (Month/Day/Year)**

**6. Individual or Joint/Group Filing (Check Applicable Line)**

-      Form filed by One Reporting Person
- X   Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Beneficially Owned

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| Common Stock, $0.001 par value | 808,363 | D | |
| Common Stock, $0.001 par value | 28,529,522 | I [1] | See note [1] |
| Common Stock, $0.001 par value | 19,089,272 | I [2] | See note [2] |

## Table II - Derivative Securities Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

1. Name and Address of Reporting Person*

Bennett Phillip R

(Last)     (First)     (Middle)

C/O REFCO INC. ONE WORD FINANACIAL CTR

200 LIBERTY STREET, TOWER A

SEC FORM 3

| | | |
|---|---|---|
| (Street) | | |
| NEW YORK | NY | 10281 |
| (City) | (State) | (Zip) |

1. Name and Address of Reporting Person*

Refco Group Holdings, Inc.

| (Last) | (First) | (Middle) |
|---|---|---|

C/O REFCO INC. ONE WORD
FINANACIAL CTR
200 LIBERTY STREET, TOWER A

| | | |
|---|---|---|
| (Street) | | |
| NEW YORK | NY | 10281 |
| (City) | (State) | (Zip) |

1. Name and Address of Reporting Person*

Phillip R. Bennett Three Year Annuity
Trust

| (Last) | (First) | (Middle) |
|---|---|---|

C/O REFCO INC. ONE WORD
FINANACIAL CTR
200 LIBERTY STREET, TOWER A

| | | |
|---|---|---|
| (Street) | | |
| NEW YORK | NY | 10281 |
| (City) | (State) | (Zip) |

**Explanation of Responses:**

1. By Refco Group Holdings, Inc.
2. By the Phillip R. Bennett Three Year Annuity Trust

| /s/ PHILLIP R. BENNETT | 08/11/2005 |
|---|---|
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 5 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| REFCO INC., *et al.*, | Case No. 05-60006 (RDD) |
| Debtors. | Jointly Administered |

# **Final Report of Examiner**

JOSHUA R. HOCHBERG (JRH 9440)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006-1108
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

*Court Appointed Examiner*

CHARLES E. CAMPBELL (CEC 6100)
ROBERT A. BARTLETT (RAB 0550)
MCKENNA LONG & ALDRIDGE LLP
Suite 5300, 303 Peachtree Street, NE
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

*Counsel to the Examiner*

Appendix D is a compilation of copies of certain of the documents referred to and relied on in the Report.

> **B.**  **SUMMARY OF THE MATTER UNDER INVESTIGATION**

Phillip R. Bennett ("Bennett"), Robert C. Trosten ("Trosten"), and Tone N. Grant ("Grant") are individuals under indictment for orchestrating and participating in a massive fraudulent scheme designed to manipulate the financial statements of various Refco companies that were publicly reported and supplied to lending institutions and to regulators.[1] These Refco companies' financial statements were prepared on a consolidated basis under Refco Group Ltd., LLC ("RGL"). The financial information of Refco Group Holdings, Inc. ("RGHI"), a holding company owned principally by Bennett, was not consolidated with Refco and was not public. In August 2005, Refco made an Initial Public Offering ("IPO") of its stock and was subsequently listed on the New York Stock Exchange. Shortly thereafter, in October 2005, revelations concerning the fraudulent manipulation of Refco's financial statements precipitated Refco's bankruptcy and losses of hundreds of millions of dollars by creditors and equity holders.

The roots of the scheme that was used to conceal losses and money owed to Refco by RGHI began at least in 1997 or 1998. At that time, Refco suffered millions of dollars in losses as certain of its customers could not make good on their own trading losses. There is evidence that Bennett and others caused these bad debts to be "sold" or transferred from Refco entities to the unconsolidated parent company, RGHI. As a result, the bad debts would not have to be recognized as losses on the books of a Refco company. The "sale" price of the bad debt transferred directly or indirectly to RGHI was treated as a receivable, due from RGHI, on the books of Refco (the "RGHI Receivable"). Over time, the amount of the RGHI Receivable

---

[1] *See* Indictment, *United States v. Bennett, et al.*, 05-CR-1192 (S.D.N.Y. Jan. 16, 2007) ("Superseding Indictment").

**D.**   **SUMMARY OF CONCLUSIONS**

This Report is the work product of the Examiner and his counsel.  The information and statements contained herein, representing the Examiner's conclusions and opinions, should not be taken as admissions or findings for or against any person or entity.[3]

The Examiner concludes that the Debtors' estates could state claims for relief, sufficient to withstand a motion to dismiss, against certain of Refco's prepetition professionals who contributed to, or failed to prevent, the harm suffered by Refco, including:

☐     Claims for professional negligence against GT, E&Y, and Mayer Brown.

☐     Claims for aiding and abetting fraud and breaches of fiduciary duty against Mayer Brown and, although it is a close question, E&Y.

☐     Claims for avoidance and recovery of preferential transfers against Refco's professionals who received payments on or within the 90-days prior to the Petition Date.

As to Weil, although it is a close question, the Examiner concludes that there are facts that could support an allegation that Weil failed to adhere to the standard of care applicable to its representation of Refco.

Additional claims might be asserted against certain of the directors responsible for the declaration of the $82.2 million dividend and those who received the dividend, including:

☐     Claims for breaches of fiduciary duties and violation of Delaware General Corporate Law against Bennett.

☐     Claims for avoidance and recovery of fraudulent conveyances and/or preferential transfers, and damages, against Bennett/RGHI and Thomas H. Lee entities as the recipients of the $82.2 million dividend.

---

[3] The Report includes discussions of facts that may be helpful to understanding the conclusions reached herein, but relate to non-professionals and topics that were not subjects of the Examination.  The Examiner does not reach any conclusions concerning persons or entities other than those specifically identified in the Report; and, nothing in the Report should be interpreted as meaning the Examiner reached any conclusions as to the liability of, among others, the Round Trip Loan Participants, Thomas H. Lee entities, and the underwriters, because these persons and entities were beyond the scope of the Examination.

RTLs was because they felt that the structure of the transaction effectively eliminated any risk that they would not be repaid the amounts they loaned to RGHI and therefore, the transaction was simply a "risk free" way to make a relatively small profit.

The RTL Participants said that they did not know who first designed the RTL transactions. As discussed in more detail below, some of the early RTL Participants did request the addition of certain provisions to the RTL documentation — provisions mainly designed to eliminate any risk that they would not be repaid on their loan to RGHI and therefore be left without the funds to repay their loan to RCM. In later years, however, there was little negotiation and few changes made to the standard RTL transaction documents. All of the Round Trip Loan Participants stated that they did not know whether there were other Round Trip Loan Participants or who they were.

Set forth below is a chart outlining each of the Refco RTL transactions from February 2000 to September 2005, the identity of the RTL Participant, and the dates and amount of the transaction. As the chart illustrates, in the early years, Refco engaged in RTLs with multiple parties for each year-end reporting period. Starting in 2003, however, Refco engaged in RTLs only with Liberty Corner Capital Strategies, and started doing the transactions multiple times per year.

## ROUND TRIP LOAN TRANSACTIONS

| Start Date | End Date | RTL Participant | Amount |
|---|---|---|---|
| 02/25/2000 | 03/09/2000 | CIM Ventures, Inc. | $150,000,000 |
| 02/25/2000 | 03/03/2000 | EMF Core Fund, Ltd. | $50,000,000 |
| 02/25/2000 | 03/03/2000 | CS Land Management, LLC | $110,000,000 |
| **TOTAL 2000** | | | **$310,000,000** |
| 02/23/2001 | 03/06/2001 | CIM Ventures, Inc. | $250,000,000 |
| 02/26/2001 | 03/02/2001 | Delta Flyer Fund, LLC | $200,000,000 |
| **TOTAL 2001** | | | **$450,000,000** |
| 02/25/2002 | 03/04/2002 | Liberty Corner Capital Strategies, LLC | $325,000,000 |
| 02/25/2002 | 03/04/2002 | Delta Flyer Fund, LLC | $175,000,000 |
| 02/25/2002 | 03/04/2002 | Beckenham Trading Company, Inc. | $125,000,000 |
| **TOTAL 2002** | | | **$625,000,000** |
| 02/21/2003 | 03/04/2003 | Liberty Corner Capital Strategies, LLC | $500,000,000 |

-32-

Corner a little over $1.1 million to engage in these transactions. The profit on the transactions went to Liberty Corner or to Pigott personally.

The Examiner's counsel conducted targeted searches of the approximately 1.6 million pages of documents Liberty Corner produced to governmental agencies and the Creditors Committee. The Examiner also found information relating to the Liberty Corner RTLs among documents produced by Mayer Brown and Refco.

The Examiner's counsel conducted voluntary interviews of Pigott, as well as two other Liberty Corner employees: a portfolio manager at Liberty Corner who received some e-mails regarding the transactions but stated she had limited involvement in the RTLs; and a back-office employee who signed requests received from Refco's auditor (GT) confirming Liberty Corner's account at RCM, where the RTLs took place.

Liberty Corner managed a number of hedge funds that primarily traded in government treasury bills. Refco served as Liberty Corner's prime broker. Liberty Corner's business relationship with Refco continued up to Refco's bankruptcy. The hedge funds that Liberty Corner managed were closed down in early 2006, and since that time Liberty Corner has been dormant.[95]

In February 2001, Refco explored doing a RTL with one of the hedge funds managed by Liberty Corner — Liberty Corner Patriot Master Fund, Ltd. ("LCPMF"). Work on this RTL appears to have begun on February 16, 2001, when Weaver faxed Pigott's contact information to Collins.[96] Handwritten notes on this fax identify the basic terms of the proposed transaction —

---

[95] Pigott indicated that he knew Flanagan and EMF Financial, but had no business dealings with them. Pigott also stated that Liberty Corner managed an account for Coast and that he worked with Petitt at Coast. Pigott stated that he had no knowledge that either EMF Financial/Delta Flyer or Coast/CS Land had been involved in RTLs with Refco.

[96] MB02035219.

namely, a $200,000,000 RTL with LCPMF from February 26, 2001, to March 2, 2001, with a 15

basis point profit to LCPMF. Mayer Brown's files contain unexecuted drafts of a 2001 RTL

transaction with LCPMF.[97]  On February 21, 2001, Collins sent drafts of the transaction

documents to Weaver and Mascio.[98]  Weaver then sent drafts of these documents to Liberty

Corner on February 22, 2001.[99]

The RTL with LCPMF did not occur.  No one at Liberty Corner recalled the proposed

2001 RTL, nor did they know why the transaction with LCPMF did not proceed.  Mayer

Brown's files contain copies of the 2001 LCPMF RTL documents with handwritten mark-ups by

Collins in which he changed all references from LCPMF to Delta Flyer.[100]  The amount and term

of the loan remained the same, and Refco ultimately went through with the transaction with

Delta Flyer in 2001.

Liberty Corner and Refco engaged in ten RTLs starting in February 2002.  The amounts

ranged from $325,000,000 to $720,000,000.  In 2002 and 2003, Liberty Corner did only one

RTL transaction in February-March of each year,[101] but starting in 2004, the frequency of the

RTLs increased, with RTLs occurring quarterly, up to September 6, 2005 — the end date for the

last Liberty Corner RTL.[102]  The net interest spread on each Liberty Corner RTL was 75 basis

points, except for 2002, when the interest spread was 100 basis points.

---

[97] MB 00476, MB00003905-36.

[98] MB00003937.

[99] LC-SEC-EM 001388360.

[100] MB02035673-706.

[101] 2002 RTL:  LC-USAO 000001-36.  2003 RTL:  LC-USAO 000037-72.

[102] February 2004 RTL:  LC-USAO 000073-105.  May 2004 RTL:  LC-USAO 000139-56, MB02293240-54 (Liberty Corner did not produce a copy of the RCM Loan agreement).  August 2004 RTL:  LC-USAO 000157-87. November 2004 RTL:  LC-USAO 000188-218.  December 2004 RTL:  LC-USAO 000221-51.  February 2005 RTL: LC-USAO 000272-309 (executed copies of the RCM Loan agreement or the RCM Note could not be located).  May 2005 RTL:  REFCO-0002-000147-49, REFCO-0002-000118-30, REFCO-0002-000132-44, REFCO-HC-0533922,

*(footnote continued on next page)*

Pigott recalled that sometime in early February 2002 he was approached by McCarthy and Maggio regarding the RTL. Maggio directed Pigott to contact Koury. Pigott recalled having a conference call with Koury during which he was provided additional information about the transaction.

Mayer Brown's earliest drafts of the 2002 RTL documents (created on February 12, 2002) had LCPMF, not Liberty Corner, as the counter-party.[103] At some point after February 12, 2002, Liberty Corner was substituted for LCPMF. Pigott stated that he requested the RTLs be done with Liberty Corner, a management company, as the counter-party, rather than one of the funds managed by Liberty Corner, because the RTL was not the type of transaction normally executed in the funds. Pigott stated that the funds primarily did treasury bill arbitrage transactions, and he did not believe the RTL would be consistent with the type of transaction that he marketed to investors that he would be doing in the Liberty Corner-managed funds. Furthermore, Pigott was concerned that if anything went wrong with the transaction (*i.e.*, RGHI did not repay its loan and the RGL guaranty was unenforceable), he did not want to place investor money located in one of the Liberty Corner-managed funds at risk.

Koury e-mailed copies of the proposed 2002 RTL transaction documents to Pigott on February 14, 2002.[104] Pigott then forwarded these documents to his counsel for review.[105] Pigott

---

(footnote continued from previous page)

REFCO-HC-0533908 (Liberty Corner did not produce copies of the May 2005 RTL transaction documents). August 2005 RTL: LC-USAO 000310-26, LC-USAO 000341-53, REFCO-0002-000098 (Liberty Corner did not produce a copy of the RGHI Note for this transaction). Although in some cases Liberty Corner did not produce executed copies of documents, the Examiner was able to obtain executed copies from Refco's and Mayer Brown's documents.

[103] MB02048044-87.

[104] LC-SEC-EM 001610388-89.

[105] *Id.*

stated that his only concern about any of the RTLs was whether he would be able to get his money back in case RGHI defaulted on its loan.

Pigott stated that he understood RGL to be the parent of RGHI, so he believed he was getting a guaranty from RGHI's parent. According to Pigott, the presence of the guaranty from RGL was the primary reason he engaged in the transaction because Pigott felt secure that, if RGHI defaulted on its obligation to Liberty Corner, he would still be able to collect from RGL, whom he viewed to be the Refco parent company with the financial capability of covering RGHI's loan obligation. Pigott indicated that his counsel had reviewed the documents and had advised him that he had sufficient protection in case of an RGHI default.

Pigott stated that other than the RTL transactions, Liberty Corner had never engaged in transactions involving amounts in the hundreds of millions of dollars, and that Liberty Corner only had a capitalization of a few hundred thousand dollars. Pigott also explained that, other than the RTLs, Liberty Corner only engaged in transactions involving the purchases of securities and that the RTLs were the only non-collateralized cash transactions that Liberty Corner did. Pigott stated that at no time prior to the Refco bankruptcy did he have any knowledge or understanding that Refco was using the RTLs for anything other than a legitimate business purpose.

Pigott stated that the RTL transactions were run through Liberty Corner's account at RCM, which Pigott indicated he used on occasion to make trades on his own behalf. Pigott stated that the profit on each of the Liberty Corner RTLs was wired from the Liberty Corner RCM account to either a Liberty Corner bank account or Pigott's own personal bank account.[106]

---

[106] 2002 RTL: LC-USAO 000357, REFCO-0009-025570-71. 2003 RTL: REFCO-0009-025587-90. February 2004 RTL: REFCO-E-001599522-23, REFCO-0009-025593-94. May 2004 RTL: REFCO-0009-028804-05, REFCO-E-001052706. August 2004 RTL: REFCO-0009-28800-01, REFCO-0009-028797-98. November 2004

*(footnote continued on next page)*

nevertheless controls and dominates the corporation to the exclusion of the other managers'
ability to exercise power.

The Examiner concludes that there is sufficient evidence to allege that from the time of
the LBO in August 2004, at the latest, the THL Directors were decision makers with the ability
to exercise real power sufficient to defeat the application of the sole actor rule. The Examiner
concludes that for the time period prior to the LBO, a question of fact exists as to whether the
sole actor rule could be applied based on an argument that Bennett, and the other insiders
complicit in the fraud, exercised control over Refco.

July 11, 2007

Respectfully submitted,

*/s/ Charles E. Campbell*
Charles E. Campbell (CEC 6100)
Robert A. Bartlett (RAB 0550)
MCKENNA LONG & ALDRIDGE LLP
Suite 5300, 303 Peachtree Street, NE
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
*Counsel to the Examiner*

*/s/ Joshua R. Hochberg*
Joshua R. Hochberg (JRH 9440)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500
*Court Appointed Examiner*

**EXHIBIT 3**

**WITNESSES INTERVIEWED
BY THE EXAMINER AND HIS COUNSEL**

| **COMPANY** | **WITNESS** |
|---|---|
| AA | Jason Blumkin |
| | William Denehey |
| | Brian Falahee |
| | Melissa Kesh |
| | Dara Moore |
| | Amy Lynn Murphy |
| Beckham Trading Company | Andrew Kreiger |
| E&Y | Steven Cappel |
| | Michael Meisler |
| | Kurt Neidhardt |
| EMF Financial Products, LLC | H. Whitney Tindale |
| Ingram Micro | Thomas Madden |
| | James Ricketts |
| KMPG | John Berndsen |
| Levine Jacobs | Robert Blackwell |
| | Richard Hoffman |
| | Timothy Shore |
| Liberty Corner | Mike Lisi |
| | William T. Pigott |
| | Miriam Yoshida |
| Mayer Brown | Joseph Collins |
| | Andrea Henneman |
| | Paul Koury |
| | Robert Monk |
| | Ross Pazzol |
| | Peter G. Schultz |
| Murray Devine | Ralph Colucci |
| | Daniel DiDomenico |
| THL | Scott Schoen (by proffer) |

| **COMPANY** | **WITNESS** |
|---|---|
| Weil | Barbra Broudy |
| | Alex Lynch |
| | Jay Tabor |
| | James Westra |

# EXHIBIT 5

Scott A. Edelman
Kylie Davidson
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
*Counsel for Plaintiff Marc S. Kirschner,*
*as Trustee for the Refco Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>REFCO INC., et al.,<br><br>           Debtors. | Chapter 11<br><br>Case No. 05-60006 (RDD)<br>(Jointly Administered) |
| MARC S. KIRSCHNER,<br>as Trustee of the Refco Litigation Trust,<br><br>           Plaintiff,<br><br>      - against -<br><br>JOHN D. AGOGLIA, PHILLIP R. BENNETT, THE TRUSTEES(S) OF THE PHILLIP R. BENNETT THREE YEAR ANNUITY TRUST, EDWIN L. COX, SUKHMEET "MICKY" DHILLON, THE TRUSTEE(S) OF THE JASDEEP DHILLON TRUSTEE MSD FAMILY TRUST, THOMAS H. DITTMER, THE TRUSTEE(S) OF THE DITTMER TRUST, STEPHEN GRADY, TONE N. GRANT, ERIC LIPOFF, SANTO MAGGIO, PETER McCARTHY, JOSEPH MURPHY, FRANK MUTTERER, WILLIAM SEXTON, WILLARD SPARKS, ROBERT TROSTEN, MEMPHIS HOLDINGS LLC, MLC FIRST CAYMAN LTD., REFCO GROUP HOLDINGS INC., and JOHN DOES 1 THROUGH 10.<br><br>           Defendants. | Adv. Pro. No. 07-_____ (RDD)<br><br><br>**COMPLAINT** |

business at One World Financial Center, 200 Liberty Street, Tower A, New York, New York,

10281. RCM filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on

October 17, 2005.

     21.    New Refco Group Ltd., LLC. New Refco Group Ltd., LLC ("New

Refco") was organized under the laws of Delaware, with its principal place of business at One

World Financial Center, 200 Liberty Street, Tower A, New York, New York, 10281. New Refco

was formed in connection with the LBO in August 2004. New Refco filed for bankruptcy

protection under chapter 11 of the Bankruptcy Code on October 17, 2005.

     22.    Refco Securities, LLC. Refco Securities, LLC ("RSL"), a wholly owned

subsidiary of RGL, was a Delaware limited liability company and registered broker-dealer with

its principal place of business at One World Financial Center, 200 Liberty Street, 23rd Floor,

New York, NY 10281.

     23.    To the extent that any Challenged Transfer was made by or involving a

Debtor not specifically mentioned herein, the Complaint is asserted on behalf of such Debtor.

    C.    **Defendants**

     24.    Defendant John D. Agoglia. Agoglia was a senior vice president at RSL

at least as of 2003, responsible for overseeing the daily activity of all the various trading areas

within the prime brokerage business. Working directly under Defendant Peter McCarthy,

Agoglia received so-called profit participation payments based on Refco's fraudulent financial

statements.

     25.    Defendant Phillip R. Bennett. At all relevant times, Bennett was an

officer and director of a number of Refco entities. Bennett joined RGL in 1981, charged with the

responsibility for establishing the business of RCC, Refco's finance and treasury subsidiary.

From 1983 until 1998, Bennett was RGL's CFO. From September 1998 until October 2005,

37.    Defendant Tone N. Grant. Grant joined RGL in 1981. From 1997 through 1998, Grant was President and CEO of RGL. Prior to August 2004, through his ownership interest in RGHI, Grant also held a significant ownership stake in RGL. From 1999 through August 2004, Bennett and Grant each held a 50% interest in RGHI. In turn, RGHI ostensibly owned 90% of RGL. In or around August 2004, concurrently with the LBO, Grant sold his interest in RGHI to Bennett, leaving Bennett the sole owner of RGHI. Grant is currently under indictment, together with Bennett and Trosten, and faces criminal charges for securities fraud, bank fraud and money laundering.

38.    Defendant Eric Lipoff. Lipoff was an attorney at Main Street Trading Co., a California-based retail futures broker, when the entity was acquired by Refco in November 2000. In January 2001, Lipoff became Executive Vice President of Lind-Waldock & Company (also known as Refco Private Client Group). Lipoff reported to Dhillon.

39.    Defendant Santo C. Maggio. Maggio joined Refco in 1985, and served as Executive Vice President of RGL and President and CEO of RSL from 1991. From 2001, Maggio was also President of RCM and a member of its Board of Directors. Maggio managed the brokerage operations of RSL and RCM. On October 10, 2005, at the request of Refco's Board of Directors, Maggio took a leave of absence. Shortly thereafter, Maggio resigned. According to press reports, Maggio is cooperating with the U.S. Justice Department and the Securities and Exchange Commission ("SEC") in connection with their investigation of the fraud perpetuated at Refco.

40.    Defendant Peter McCarthy. McCarthy served as Executive Vice President of RSL since at least 1998 and was involved in the loan scheme as described below. McCarthy headed RSL's New York office, which was responsible for providing fixed income and prime

13

brokerage products and services to banks and financial institutions (including products such as US Treasuries, agencies, and European government bonds). Following Maggio's departure in October 2005, McCarthy took over Maggio's position, serving as President of RSL.

41.   Defendant Joseph J. Murphy. Murphy joined Refco in 1999 as Executive Vice President of RGL and was responsible for global marketing. Murphy was also President of a number of Refco subsidiaries during the same period, including Refco LLC and Refco Global Futures, LLC.

42.   Defendant Frank Mutterer. Mutterer joined Refco and was appointed First Vice President for Finance and Administration of RGL in September 1999 and acted as Controller of RGL from January 2004. In his role as Controller, Mutterer signed representation letters to RGL's auditors. He resigned from Refco in March 2005.

43.   Defendant William M. Sexton. Sexton joined Refco in April 1999 and served as Executive Vice President and COO of Refco LLC, an RGL subsidiary, from July 2001 until August 2004. From August 2004 through August 2005, Sexton served as Executive Vice President and COO of RGL and was responsible for operations, information technology, accounting and finance and risk control for Refco's futures businesses. On or around October 10, 2005, Sexton was asked to take Bennett's position as CEO of Refco, and Sexton remained in that position for approximately two to three months subsequent to the Petition Date.

44.   Defendant Willard Sparks. Prior to January 2001, Willard Sparks owned 15.3% of Refco, Inc. ("Old Refco Inc."), an indirect subsidiary of RGL and an entity distinct from Refco Inc. (which was not formed until 2005) through an entity called Memphis Holdings LLC. Pursuant to a 2001 sale of Memphis Holding's interest in Old Refco Inc. to RGL,

14

Dated:  October 15, 2007
        New York, NY

                              **MILBANK, TWEED, HADLEY & McCLOY LLP**


                              _____/s/_____

                              Scott A. Edelman
                              Kylie Davidson
                              1 Chase Manhattan Plaza
                              New York, NY 10005
                              (212) 530-5000

                              *Counsel for Plaintiff Marc S. Kirschner,*
                              *as Trustee for the Refco Litigation Trust*


Of Counsel:

William E. Wallace, III
**Milbank Tweed Hadley & McCloy**
1850 K Street, NW
Washington, DC 20006
(202) 835-7511

*Counsel for Plaintiff Marc S. Kirschner,*
*as Trustee for the Refco Litigation Trust*


DC1:#8140323

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

In re REFCO, INC. SECURITIES LITIGATION :    07 MDL No. 1902 (GEL)

                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

MARC S. KIRSCHNER,
as Trustee of the Refco Litigation Trust,    :    07 Civ. 11604 (GEL)

                                   :

                     Plaintiff,    :    **CERTIFICATION OF SERVICE**

          v.                        :

GRANT THORNTON LLP, et al.,    :

                    Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       I, John D. Tortorella, a member of Marino Tortorella PC, hereby certify that on May 21, 2008, I caused the following documents to be served electronically via the Electronic Case Filing ("ECF") system upon all counsel of record registered to receive such service, and by First Class Mail via the United States Postal Service, to counsel set forth in the attached Service List:

       (a)    Notice of Joint Motion of Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott to Dismiss the Complaint with Prejudice;

       (b)    Memorandum of Law of in Support of Joint Motion of Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott to Dismiss the Complaint with Prejudice;

       (c)    Declaration of Kevin H. Marino in Support of Joint Motion of Defendants Liberty Corner Capital Strategies, LLC and William T. Pigott to Dismiss the Complaint with Prejudice; and

(d)     Rule 7.1 Statement of Defendant Liberty Corner Capital Strategies, LLC;

(e)     Notice of Appearance of Kevin H. Marino;

(f)      Notice of Appearance of John D. Tortorella; and

(g)     Notice of Appearance of Roseann Bassler Dal Pra.

MARINO TORTORELLA PC

By:     /s/ John D. Tortorella
        John D. Tortorella (JT 3133)
        437 Southern Boulevard
        Chatham, New Jersey 07928-1488
        Tel.: (973) 824-9300
        Fax: (973) 824-8425
        E-mail: jtortorella@khmarino.com

        *Attorneys for Defendants*
        *William T. Pigott and*
        *Liberty Corner Capital Strategies, LLC*

Dated:  May 21, 2008

*Kirschner v. Grant Thornton LLP, et al. (N.D. Ill. No. 07-C-5306)*
*In re Refco Inc., Securities Litigation (J.P.M.D.L.) (MDL No. 1902)*

### SERVICE LIST

John R. McCambridge, Esq.
Todd C. Jacobs, Esq.
Gary M. Miller, Esq.
Matthew A. Bills, Esq.
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
312-704-7700
312-558-1195 (fax)

-and-

Sascha N. Rand, Esq.
QUINN EMANUEL URQUHART
    OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7000
212-849-7100 (fax)
***Counsel to Marc S. Kirschner, as Trustee of***
***the Refco Litigation Trust***

Bradley E. Lerman, Esq.
James David Reich, Jr., Esq.
Bruce Roger Braun, Esq.
Catherine W. Joyce, Esq.
Linda T. Coberly, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
312-558-5600
312-558-5700 (fax)

-and-

David E. Mollón, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
212-294-6700
212-294-4700 (fax)
***Counsel to Grant Thornton LLP***

Thomas G. Ward, Esq.
John K. Villa, Esq.
Michael S. Sundermeyer, Esq.
Craig D. Singer, Esq.
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
202-434-5000
202-434-5029 (fax)

-and-

Kevin M. Forde, Esq.
KEVIN M. FORDE, LTD.
111 West Washington Street
Suite 1100
Chicago, Illinois 60602
312-641-1441
312-641-1288 (fax)
***Counsel to Mayer Brown LLP***

Christopher R. Harris, Esq.
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
212-906-1200
212-751-4864 (fax)
***Counsel for Ernst & Young US LLP***

Scott E. Hershman, Esq.
Stephen R. Blacklocks, Esq.
Richard Soto, Esq.
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, NY 10166
212-309-1000
212-309-1100 (fax)
***Counsel for Santo C. Maggio***

James J. Capra, Jr., Esq.
James P. Cusick, Esq.
ORRICK HERRINGTON &
 SUTCLIFFE LLP
666 Fifth Avenue
New York, NY  10103
212-506-5000
212-506-5151 (fax)


 -and-


Emily Nicklin, Esq.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
312-861-2000
312-861-2200 (fax)
***Counsel for PricewaterhouseCoopers LLP***


Edward S. Weil, Esq.
SCHWARTZ COOPER CHARTERED
180 North LaSalle St., Suite 2700
Chicago, IL  60601
312-346-1300
312-782-8416 (fax)


 -and-


Jeffrey T. Golenbock, Esq.
Adam Craig Silverstein, Esq.
GOLENBOCK EISEMAN ASSOR
 BELL & PESKIE LLP
437 Madison Avenue
New York, NY  10022-7302
212-907-7300
212-754-0330 (fax)
***Counsel to Phillip R. Bennett and Refco***
 ***Group Holdings, Inc.***

Jeffrey T. Gilbert, Esq.
Pia N. Thompson, Esq.
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7507
312-207-1000
312-207-6400 (fax)


 -and-


Robert B. McCaw, Esq.
Lori A. Martin, Esq.
John V.H. Pierce, Esq.
Dawn M. Wilson, Esq.
Michael L. Feinberg, Esq.
Philip D. Anker, Esq.
Ross E. Firsenbaum, Esq.
WILMERHALE
399 Park Avenue
New York, NY  10022
212-230-8800
212-230-8888 (fax)
***Counsel to Credit Suisse Securities (USA) LLC***
 ***f/k/a Credit Suisse First Boston LLC;***
 ***Banc of America Securities LLC; and***
 ***Deutsche Bank Securities Inc.***


Stephen J. O'Neil, Esq.
Maura Forde O'Meara, Esq.
BELL BOYD & LLOYD
70 West Madison Street, Suite 3100
Chicago, IL  60602
312-372-1121
312-827-8000 (fax)


 -and-


Barbara Moses, Esq.
Rachel Korenblat, Esq.
Amy Tully, Esq.
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, NY  10017
212-856-9600
212-856-9494 (fax)
***Counsel for Robert C. Trosten***

Michael T. Hannafan, Esq.
Blake Tyler Hannafan, Esq.
HANNAFAN & HANNAFAN, LTD
One East Wacker Drive
Suite 2800
Chicago, IL  60601
312-527-0055
312-527-0220 (fax)


-and-

Norman L. Eisen, Esq.
Laura E. Neish, Esq.
ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY  10036-4039
212-704-9600
212-704-4256 (fax)
*Counsel to Tone Grant*

Arthur L. Porter, Jr., Esq.
FISCHER PORTER & THOMAS, P.C.
440 Sylvan Avenue, Suite 130
Englewood Cliffs, NJ  07632-2707
201-569-5959
201-871-4544 (fax)
*Counsel to Beckenham Trading Co. Inc.
    and Defendant Andrew Krieger*


Ronald M. Lepinskas, Esq.
P. Russell Perdew, Esq.
Thomas J. Cunningham, Esq.
Sally W. Mimms, Esq.
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL  60606
312-443-0700
312-443-0336 (fax)
*Counsel to Christopher Petit*

Peter C. John, Esq.
Eric R. Lifvendahl, Esq.
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, IL  60606
312-443-3200
312-630-8500 (fax)


-and-

Jonathan P. Hersey, Esq.
SHEPPARD, MULLIN, RICHTER &
    HAMILTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA  92626
714-513-5100
714-513-5130 (fax)
*Counsel for Ingram Micro Inc. and CIM
    Ventures, Inc.*

James C. Joslin, Esq.
Reed S. Oslan, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
312-861-2000
312-861-2200 (fax)
*Counsel to Coast Asset Management LLC and
    CS Land Management, LLC*

Veronica E. Rendon, Esq.
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
212-715-1165
212-715-1399 (fax)
*Counsel to Eric Flanagan, EMF Financial
    Products, LLC and Delta Flyer Fund,
    LLC*

Kevin M. Forde, Esq.
KEVIN M. FORDE, LTD.
111 West Washington Street, Suite 1100
Chicago, IL  60602
312-641-1441
312-641-1288 (fax)

       -and-

Joel M. Cohen, Esq.
Anthony M. Candido, Esq.
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY  10019
212-878-8000
212-878-8375 (fax)
***Counsel for the UK Limited Liability***
***     Partnership Mayer Brown***
***     International LLP***