UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :

In re REFCO, INC. SECURITIES LITIGATION :      07 MDL No. 1902 (GEL)
                                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :

MARC S. KIRSCHNER,               :
as Trustee of the Refco Litigation Trust,    :      07 Civ. 11604 (GEL)
                                                   :

                        Plaintiff,    :     **DECLARATION OF KEVIN H.**
                                     :     **MARINO IN SUPPORT OF THE**
                  v.                 :     **JOINT MOTION OF DEFENDANTS**
                                       :     **LIBERTY CORNER CAPITAL**
GRANT THORNTON LLP, et al.,         :     **STRATEGIES, LLC AND WILLIAM**
                                       :     **T. PIGOTT TO DISMISS THE**
                    Defendants.   :     **COMPLAINT WITH PREJUDICE**
                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      KEVIN H. MARINO, hereby declares, pursuant to 28 U.S.C. § 1746(2), as follows:

      1.     I am the principal of Marino Tortorella, PC, attorneys for defendants Liberty Corner Capital Strategies, LLC and William T. Pigott (collectively, the "Liberty Corner Defendants") in this matter. I respectfully submit this Declaration in support of the Liberty Corner Defendants' Joint Motion To Dismiss The Complaint With Prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b).

      2.     Annexed hereto as Exhibit 1 is a true and correct copy of a Voluntary Petition for Chapter 11 bankruptcy protection filed by Refco Group Ltd., LLC with the

United States Bankruptcy Court of the Southern District of New York on October 17, 2005.

3.    Annexed hereto as Exhibit 2 is a true and correct copy of the Form 8-K (excluding exhibits) filed with the Securities and Exchange Commission ("SEC") by Refco, Inc.; Refco Group Ltd., LLC; and Refco Finance, Inc. on December 20, 2006.

4.    Annexed hereto as Exhibit 3 is a true and correct copy of the SEC Form 3 filed by Refco Group Holdings, Inc.; Phillip R. Bennett; and Phillip R. Bennett Three Year Annuity Trust filed with the SEC on August 11, 2005.

5.    Annexed hereto as Exhibit 4 are true and correct copies of excerpts of the Final Report of Examiner dated July 11, 2007 and Exhibit 3 thereto (excluding the remaining exhibits) prepared by the court-appointed bankruptcy examiner and his counsel in the bankruptcy proceeding encaptioned *In re Refco Inc., et al.*, United States Bankruptcy Court, Southern District of New York, Case No. 05-60006 (RDD).

6.    Annexed hereto as Exhibit 5 are true and correct copies of excerpts of the Adversary Complaint encaptioned *Marc S. Kirschner v. John D. Agoglia, et al.*, Case No. 05-60006, Adv. Pro. No. 07-03060 (RDD), which was filed in the Bankruptcy Proceeding on or about October 15, 2007.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), that the foregoing is true and correct.

MARINO TORTORELLA PC

Dated: Chatham, New Jersey
      May 21, 2008

By: _____
Kevin H. Marino (KM 4941)
437 Southern Boulevard
Chatham, New Jersey  07928-1488
Tel.: (973) 824-9300
Fax: (973) 824-8425

*Attorneys for Defendants William T. Pigott and Liberty Corner Capital Strategies LLC*

# EXHIBIT 1

Doc. 105100

| United States Bankruptcy Court<br>Southern District of New York | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br><br>Refco Group Ltd., LLC | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br><br>52-2169014 | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>One World Financial Center<br>200 Liberty Street, Tower A<br>New York, New York 10281 | Street Address of Debtor (No. & Street, City, State & Zip Code):<br>05 — 6002 |
| County of Residence or of the<br>Principal Place of Business:<br><br>New York, New York | County of Residence or of the<br>Principal Place of Business:<br>BK JUDGE DRAIN |
| Mailing Address of Debtor<br>(if different from street address): | Mailing Address of Joint Debtor<br>(if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from addresses listed above) | |

## INFORMATION REGARDING DEBTOR (Check the Applicable Boxes)

Venue (Check any applicable box)
□ Debtor has been domiciled or has had a residence, principal place of business or principal assets in this District for 180 days immediately preceding the date of this
petition or for a longer part of such 180 days than in any other District.
☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which** |
|---|---|---|
| □ Individual | □ Railroad | **the Petition Is Filed** (Check one box) |
| □ Corporation | □ Stockbroker | □ Chapter 7    ☒ Chapter 11    □ Chapter 13 |
| □ Partnership | □ Commodity Broker | □ Chapter 9    □ Chapter 12 |
| ☒ Other  LLC | | □ Sec. 304-Case ancillary to foreign proceeding |

**Nature of Debts** (Check one box)
□ Consumer/Non-Business     ☒ Business

**Filing Fee** (Check one box)
☒ Full Filing Fee attached.
□ Filing Fee to be paid in installments  (Applicable to individuals only)

**Chapter 11 Small Business** (Check all boxes that apply)
□ Debtor is a small business as defined in 11 U.S.C. § 101.
□ Debtor is and elects to be considered a small business under
11 U.S.C. § 1121(e).  (optional)

Must attach signed application for the court's consideration certifying that the
debtor is unable to pay fee except in installments. Rule 1006(b). See Official
Form No. 3.

Statistical/Administrative Information (Estimates only)
☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
□ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will
be no funds available for distribution to unsecured creditors

THIS SPACE IS FOR COURT
USE ONLY

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1,000-over |
|---|---|---|---|---|---|---|
| (consolidated with affiliates) | □ | □ | □ | □ | □ | ☒ |

| Estimated Assets (consolidated with affiliates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
| □ | □ | □ | □ | □ | □ | □ | ☒ |

| Estimated Debts (consolidated with affiliates) | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
| □ | □ | □ | □ | □ | □ | □ | ☒ |

| Voluntary Petition *(This page must be completed and filed in every case)* | Name of Debtor(s): Refco Group Ltd., LLC | Form B1, Page 2 |
|---|---|---|

| Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet) | | |
|---|---|---|
| Location Where Filed:  None | Case Number: N/A | Date Filed: N/A |

| Pending Bankruptcy Case Filed by Any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: See Annex A | Case Number: As Assigned | Date Filed: Same |
| District: Southern District of New York | Relationship: Affiliate | Judge: As Assigned |

## SIGNATURES

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of Attorney**

X /s/ J. Gregory Milmoe
Signature of Attorney for Debtor(s)

J. Gregory Milmoe
Printed Name of Attorney for Debtor(s)

Skadden, Arps, Slate, Meagher & Flom LLP
Firm Name

Four Times Square
New York, New York 10036
Address

(212) 735-3000
Telephone Number

October 17, 2005
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

*Authorized Signatory*
Title of Authorized Individual

October 17, 2005
Date

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____
Signature of Attorney for Debtor(s)          Date

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.
☒ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C.§ 156.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - -x
                                    :
      In re                    :    Chapter 11
                                    :
Refco Inc, et al.,                  :    Case No. 05-
                                    :
              Debtors.    :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - -x

### CORPORATE OWNERSHIP STATEMENT

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure, the Debtors hereby states that the following corporations directly or indirectly own 10% or more of the equity interests of Refco Inc.:

- Refco Group Holdings, Inc.[1]
- Thomas H. Lee Equity Fund V, L.P.[2]
- Thomas H. Lee Parallel Fund V, L.P[3]

Refco Inc. owns all of the outstanding membership interests in New Refco Group Ltd., LLC.

New Refco Group, Ltd., LLC owns all of the outstanding membership interests in Refco Group Ltd., LLC.

---

[1]    Phillip Bennett directly and indirectly through each of Refco Group Holdings, Inc. and The Phillip R. Bennett Three Year Annuity Trust holds 43,052,000 shares (33.8%).

[2]    Thomas H. Lee is the Chairman and CEO of Thomas H. Lee Partners, L.P. David V. Harkins, Scott L. Jaeckel and Scott A. Schoen serve as Vice Chairman and Managing Director, Managing Director and Co-President, respectively, of Thomas H. Lee Partners, L.P. Each of Messrs. Lee, Harkins, Jaeckel and Schoen may be deemed to beneficially own the shares of common stock held of record by Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P.

[3]    Thomas H. Lee is the Chairman and CEO of Thomas H. Lee Partners, L.P. David V. Harkins, Scott L. Jaeckel and Scott A. Schoen serve as Vice Chairman and Managing Director, Managing Director and Co-President, respectively, of Thomas H. Lee Partners, L.P. Each of Messrs. Lee, Harkins, Jaeckel and Schoen may be deemed to beneficially own the shares of common stock held of record by Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P. and Thomas H. Lee Equity (Cayman) Fund V, L.P.

Refco Group Ltd., LLC owns all of the outstanding membership interests in Bersec International, LLC, Summit Management, LLC, Kroeck & Associates, LLC, Refco Global Capital Management, LLC, Marshall Metals, LLC, Refco Fixed Assets Management, LLC, Refco Mortgage Securities, LLC, Refco Regulated Companies, LLC, and Refco Capital Holdings LLC, and all of the outstanding capital stock of Refco Finance Inc.

Refco Regulated Companies, LLC owns all of the outstanding membership interests in Refco Global Futures, LLC.

Refco Global Futures, LLC owns all of the outstanding membership interests in Refco Global Holdings, LLC, and all of the capital stock in Refco Canada Finance Inc.

Refco Capital Holdings, LLC owns all of the outstanding membership interests in Refco Capital Management, LLC, Refco F/X Associates, LLC, Refco Administration, LLC, Refco Financial LLC, Refco Capital Trading, LLC and Refco Information Services, LLC and all of the outstanding shares in Refco Capital Markets, Ltd.

Refco Capital Management, LLC owns all of the outstanding membership interests in Refco Capital LLC and Refco Global Finance Ltd.

I, the undersigned officer of Refco Inc., one of the companies named as a debtor in the above-captioned cases, declare under penalty of perjury, that I have read the foregoing list and that it is true and correct as of the date referenced therein, to the best of my knowledge, information, and belief.

Dated: October 17, 2005

Signature: _____

Name:   Dennis Klejna

Title:   Authorized Signatory

## LIST OF AFFILIATES

On the date hereof, each of the affiliated entities listed below (including the debtor in this Chapter 11 case) filed in this Court a petition for relief under Chapter 11 of title 11 of the United States Code. Contemporaneously with the filing of these petitions, these entities filed a motion requesting that the Court administratively consolidate for procedural purposes only and jointly administer their Chapter 11 cases.

1.   Refco Inc.
2.   Bersec International LLC
3.   Kroeck & Associates, LLC
4.   Marshall Metals LLC
5.   New Refco Group Ltd., LLC
6.   Refco Administration LLC
7.   Refco Capital LLC
8    Refco Capital Holdings LLC
9.   Refco Capital Management LLC
10.  Refco Capital Markets, LTD
11.  Refco Capital Trading LLC
12.  Refco Finance Inc.
13.  Refco Financial LLC
14.  Refco Fixed Assets Management LLC
15.  Refco F/X Associates LLC
16.  Refco Global Capital Management LLC
17.  Refco Global Finance Ltd.
18.  Refco Global Futures LLC
19.  Refco Global Holdings LLC
20.  Refco Group Ltd., LLC
21.  Refco Information Services LLC
22.  Refco Mortgage Securities, LLC
23.  Refco Regulated Companies LLC
24.  Summit Management LLC

# EXHIBIT 2

```
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>refco8kdec18.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, DC 20549

------------------

FORM 8-K

CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of Earliest Event Reported):
December 20, 2006 (December 15, 2006)

REFCO INC.
REFCO GROUP LTD., LLC
REFCO FINANCE INC.
--------------------------------------------------------
(Exact Name of Registrant as Specified in Charter)

| | | |
|---|---|---|
| Delaware | 001-32604 | 20-2537426 |
| Delaware | 333-119701 | 52-2169014 |
| Delaware | 333-119701-23 | 20-1400416 |

| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

One World Financial Center
200 Liberty Street, Tower A
New York, New York                                          10281
--------------------------------------------------------
(Address of Principal Executive Offices) (Zip Code)

(Registrant's Telephone Number, Including Area Code) (212) 693-7000
                                                     ----------------

Not Applicable
--------------------------------------------------------
(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions:

[ ]  Written communications pursuant to Rule 425 under the Securities Act
     (17 CFR 230.425)

[ ]  Soliciting material pursuant to Rule 14a-12 under the Exchange Act
     (17 CFR 240.14a-12)

[ ]  Pre-commencement communications pursuant to Rule 14d-2(b) under the
     Exchange Act (17 CFR 240.14d-2(b))

[ ]  Pre-commencement communications pursuant to Rule 13e-4(c) under the
     Exchange Act (17 CFR 240.13e-4(c))


Item 1.03  Bankruptcy or Receivership
--------------------------------------

     On December 15, 2006, Refco Inc. (the "Company") issued a press release
announcing that the U.S. Bankruptcy Court for the Southern District of New York
(the "Bankruptcy Court") entered an order confirming the Modified Joint Chapter
11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the
"Modified Plan"). The press release is attached as Exhibit 99.1, the order
entered by the Bankruptcy Court, which confirms the Modified Plan, is attached
as Exhibit 99.2, and the Modified Plan is attached as Exhibit 99.3 and each is
incorporated by reference herein. Capitalized terms used but not otherwise
defined herein shall have the meanings given to such terms in the Modified Plan.

     The Modified Plan provides for the orderly wind-up of the Company's
businesses and is premised on a series of interdependent settlements and
compromises. Under the terms of the settlements which form the basis for the
Modified Plan, secured lenders who were owed $717.7 million were paid in full in
cash prior to confirmation of the Modified Plan; bondholders are expected to
receive 83.4 cents on the dollar for their claims; Refco Capital Markets, Ltd.'s
("RCM") securities customers are expected to receive approximately 85.6 cents on
the dollar for their claims, and general unsecured creditors are expected to
receive between 23 and 37.5 cents on the dollar for their claims. In addition,
as more fully described below, shareholders and creditors of the Company will
have the opportunity to participate in recoveries obtained by both the
Litigation Trust (as defined below) and Private Actions Trust (as defined below)
which will hold certain litigation claims.

     On the effective date of the Modified Plan, the currently outstanding
shares of the Company's common stock will be cancelled and the holders of common
stock of the Company outstanding immediately prior to the filing of the Chapter
11 Cases shall be given certain rights to participate in a trust established on
the effective date of the Modified Plan to hold certain litigation claims of the
Debtors and RCM (the "Litigation Trust") and a trust established on the
effective date of the Modified Plan to hold certain claims and causes of action
against third parties owned by holders of claims or interests against RCM or the
Debtors and which claims, even after contribution, are not assets of the estates
of the Debtors (the "Private Actions Trust"). Specifically, holders of common
stock of the Company that elect to assign and contribute their non-estate causes
of action to the Private Actions Trust will receive a percentage interest in the
recoveries obtained by both the Litigation Trust and the Private Action Trust
(the "Combined Recoveries") keyed to the net amount of such recoveries,
consisting of (i) 3% of the first $500 million of the Combined Recoveries; (ii)
7.5% of the Combined Recoveries greater than $500 million; and (iii) 15% of the
Combined Recoveries greater than $1 billion.

Item 9.01  Financial Statements and Exhibits.
--------------------------------------------------

        (c) Exhibit.

Exhibit
Number                    Description
-------                   -----------

Exhibit 99.1              Press Release, dated December 15, 2006

Exhibit 99.2              Order confirming the Modified Joint Chapter 11 Plan of
                          Refco Inc. and Certain of its Direct and Indirect
                          Subsidiaries, entered December 15, 2006

Exhibit 99.3              Modified Joint Chapter 11 Plan of Refco Inc. and Certain
                          of its Direct and Indirect Subsidiaries, dated December
                          14, 2006

<PAGE>

                              SIGNATURES
                              ----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO INC.

Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                            -----------------------
                                            Jerry Lombardo
                                            Chief Financial Officer

<PAGE>

                              SIGNATURES
                              ----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO GROUP LTD., LLC

Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                            -----------------------
                                            Jerry Lombardo
                                            Authorized Person

<PAGE>

SIGNATURES
----------

        Pursuant to the requirements of the Securities Exchange Act of 1934,
the Registrant has duly caused this report to be signed on its behalf by the
undersigned hereunto duly authorized.

                                        REFCO FINANCE INC.


Date:  December 20, 2006

                                        By: /s/ Jerry Lombardo
                                            ------------------------
                                            Jerry Lombardo
                                            Vice President


<PAGE>

EXHIBIT INDEX
-------------

Exhibit
Number                   Description
-------                  -----------

Exhibit 99.1             Press Release, dated December 15, 2006

Exhibit 99.2             Order confirming the Modified Joint Chapter 11 Plan of
                         Refco Inc. and Certain of its Direct and Indirect
                         Subsidiaries, entered December 15, 2006

Exhibit 99.3             Modified Joint Chapter 11 Plan of Refco Inc. and Certain
                         of its Direct and Indirect Subsidiaries, dated December
                         14, 2006

</TEXT>
</DOCUMENT>

# EXHIBIT 3

SEC Form 3

## FORM 3

### UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0104 |
| Expires: | February 28, 2011 |
| Estimated average burden hours per response | 0.5 |

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person*<br><br>Bennett Phillip R<br><br>(Last)    (First)    (Middle)<br>C/O REFCO INC. ONE WORD FINANCIAL CTR<br>200 LIBERTY STREET, TOWER A<br>(Street)<br>NEW YORK    NY    10281<br>(City)    (State)    (Zip) | 2. Date of Event Requiring Statement (Month/Day/Year)<br>08/11/2005 | 3. Issuer Name and Ticker or Trading Symbol<br>Refco Inc. [ RFX ]<br><br>4. Relationship of Reporting Person(s) to Issuer<br>(Check all applicable)<br>X  Director    X  10% Owner<br>X  Officer (give title below)    Other (specify below)<br>Chief Executive Officer / Chairman, President | 5. If Amendment, Date of Original Filed (Month/Day/Year)<br><br>6. Individual or Joint/Group Filing (Check Applicable Line)<br>Form filed by One Reporting Person<br>X  Form filed by More than One Reporting Person |
|---|---|---|---|

### Table I - Non-Derivative Securities Beneficially Owned

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| Common Stock, $0.001 par value | 808,363 | D | |
| Common Stock, $0.001 par value | 28,529,522 | I [1] | See note [1] |
| Common Stock, $0.001 par value | 19,089,272 | I [2] | See note [2] |

### Table II - Derivative Securities Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

| 1. Name and Address of Reporting Person* |
|---|
| Bennett Phillip R<br><br>(Last)    (First)    (Middle)<br>C/O REFCO INC. ONE WORD FINANACIAL CTR<br>200 LIBERTY STREET, TOWER A |

SEC FORM 3                                                                                      Page 2 of 2

(Street)

NEW YORK    NY          10281

(City)          (State)          (Zip)

1. Name and Address of Reporting Person*

Refco Group Holdings, Inc.

(Last)          (First)          (Middle)

C/O REFCO INC. ONE WORD
FINANACIAL CTR
200 LIBERTY STREET, TOWER A

(Street)

NEW YORK    NY          10281

(City)          (State)          (Zip)

1. Name and Address of Reporting Person*

Phillip R. Bennett Three Year Annuity
Trust

(Last)          (First)          (Middle)

C/O REFCO INC. ONE WORD
FINANACIAL CTR
200 LIBERTY STREET, TOWER A

(Street)

NEW YORK    NY          10281

(City)          (State)          (Zip)

**Explanation of Responses:**

1. By Refco Group Holdings, Inc.

2. By the Phillip R. Bennett Three Year Annuity Trust

/s/ PHILLIP R.                08/11/2005
BENNETT

** Signature of Reporting       Date
Person

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 5 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>REFCO INC., *et al.*,<br><br>Debtors. | § Chapter 11<br>§<br>§ Case No. 05-60006 (RDD)<br>§<br>§ Jointly Administered<br>§<br>§ |

## **Final Report of Examiner**

JOSHUA R. HOCHBERG (JRH 9440)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, DC 20006-1108
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

*Court Appointed Examiner*

CHARLES E. CAMPBELL (CEC 6100)
ROBERT A. BARTLETT (RAB 0550)
MCKENNA LONG & ALDRIDGE LLP
Suite 5300, 303 Peachtree Street, NE
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

*Counsel to the Examiner*

Appendix D is a compilation of copies of certain of the documents referred to and relied on in the Report.

**B.     SUMMARY OF THE MATTER UNDER INVESTIGATION**

Phillip R. Bennett ("Bennett"), Robert C. Trosten ("Trosten"), and Tone N. Grant ("Grant") are individuals under indictment for orchestrating and participating in a massive fraudulent scheme designed to manipulate the financial statements of various Refco companies that were publicly reported and supplied to lending institutions and to regulators.[1]   These Refco companies' financial statements were prepared on a consolidated basis under Refco Group Ltd., LLC ("RGL").   The financial information of Refco Group Holdings, Inc. ("RGHI"), a holding company owned principally by Bennett, was not consolidated with Refco and was not public.   In August 2005, Refco made an Initial Public Offering ("IPO") of its stock and was subsequently listed on the New York Stock Exchange.   Shortly thereafter, in October 2005, revelations concerning the fraudulent manipulation of Refco's financial statements precipitated Refco's bankruptcy and losses of hundreds of millions of dollars by creditors and equity holders.

The roots of the scheme that was used to conceal losses and money owed to Refco by RGHI began at least in 1997 or 1998. At that time, Refco suffered millions of dollars in losses as certain of its customers could not make good on their own trading losses. There is evidence that Bennett and others caused these bad debts to be "sold" or transferred from Refco entities to the unconsolidated parent company, RGHI.   As a result, the bad debts would not have to be recognized as losses on the books of a Refco company. The "sale" price of the bad debt transferred directly or indirectly to RGHI was treated as a receivable, due from RGHI, on the books of Refco (the "RGHI Receivable").   Over time, the amount of the RGHI Receivable

---

[1] *See* Indictment, *United States v. Bennett, et al.*, 05-CR-1192 (S.D.N.Y. Jan. 16, 2007) ("Superseding Indictment").

**D.**    **SUMMARY OF CONCLUSIONS**

This Report is the work product of the Examiner and his counsel.  The information and statements contained herein, representing the Examiner's conclusions and opinions, should not be taken as admissions or findings for or against any person or entity.[3]

The Examiner concludes that the Debtors' estates could state claims for relief, sufficient to withstand a motion to dismiss, against certain of Refco's prepetition professionals who contributed to, or failed to prevent, the harm suffered by Refco, including:

- ☐    Claims for professional negligence against GT, E&Y, and Mayer Brown.

- ☐    Claims for aiding and abetting fraud and breaches of fiduciary duty against Mayer Brown and, although it is a close question, E&Y.

- ☐    Claims for avoidance and recovery of preferential transfers against Refco's professionals who received payments on or within the 90-days prior to the Petition Date.

As to Weil, although it is a close question, the Examiner concludes that there are facts that could support an allegation that Weil failed to adhere to the standard of care applicable to its representation of Refco.

Additional claims might be asserted against certain of the directors responsible for the declaration of the $82.2 million dividend and those who received the dividend, including:

- ☐    Claims for breaches of fiduciary duties and violation of Delaware General Corporate Law against Bennett.

- ☐    Claims for avoidance and recovery of fraudulent conveyances and/or preferential transfers, and damages, against Bennett/RGHI and Thomas H. Lee entities as the recipients of the $82.2 million dividend.

---

[3] The Report includes discussions of facts that may be helpful to understanding the conclusions reached herein, but relate to non-professionals and topics that were not subjects of the Examination.  The Examiner does not reach any conclusions concerning persons or entities other than those specifically identified in the Report; and, nothing in the Report should be interpreted as meaning the Examiner reached any conclusions as to the liability of, among others, the Round Trip Loan Participants, Thomas H. Lee entities, and the underwriters, because these persons and entities were beyond the scope of the Examination.

RTLs was because they felt that the structure of the transaction effectively eliminated any risk that they would not be repaid the amounts they loaned to RGHI and therefore, the transaction was simply a "risk free" way to make a relatively small profit.

The RTL Participants said that they did not know who first designed the RTL transactions. As discussed in more detail below, some of the early RTL Participants did request the addition of certain provisions to the RTL documentation — provisions mainly designed to eliminate any risk that they would not be repaid on their loan to RGHI and therefore be left without the funds to repay their loan to RCM. In later years, however, there was little negotiation and few changes made to the standard RTL transaction documents. All of the Round Trip Loan Participants stated that they did not know whether there were other Round Trip Loan Participants or who they were.

Set forth below is a chart outlining each of the Refco RTL transactions from February 2000 to September 2005, the identity of the RTL Participant, and the dates and amount of the transaction. As the chart illustrates, in the early years, Refco engaged in RTLs with multiple parties for each year-end reporting period. Starting in 2003, however, Refco engaged in RTLs only with Liberty Corner Capital Strategies, and started doing the transactions multiple times per year.

## ROUND TRIP LOAN TRANSACTIONS

| Start Date | End Date | RTL Participant | Amount |
|---|---|---|---|
| 02/25/2000 | 03/09/2000 | CIM Ventures, Inc. | $150,000,000 |
| 02/25/2000 | 03/03/2000 | EMF Core Fund, Ltd. | $50,000,000 |
| 02/25/2000 | 03/03/2000 | CS Land Management, LLC | $110,000,000 |
| **TOTAL 2000** | | | **$310,000,000** |
| 02/23/2001 | 03/06/2001 | CIM Ventures, Inc. | $250,000,000 |
| 02/26/2001 | 03/02/2001 | Delta Flyer Fund, LLC | $200,000,000 |
| **TOTAL 2001** | | | **$450,000,000** |
| 02/25/2002 | 03/04/2002 | Liberty Corner Capital Strategies, LLC | $325,000,000 |
| 02/25/2002 | 03/04/2002 | Delta Flyer Fund, LLC | $175,000,000 |
| 02/25/2002 | 03/04/2002 | Beckenham Trading Company, Inc. | $125,000,000 |
| **TOTAL 2002** | | | **$625,000,000** |
| 02/21/2003 | 03/04/2003 | Liberty Corner Capital Strategies, LLC | $500,000,000 |

Corner a little over $1.1 million to engage in these transactions.  The profit on the transactions went to Liberty Corner or to Pigott personally.

The Examiner's counsel conducted targeted searches of the approximately 1.6 million pages of documents Liberty Corner produced to governmental agencies and the Creditors Committee.  The Examiner also found information relating to the Liberty Corner RTLs among documents produced by Mayer Brown and Refco.

The Examiner's counsel conducted voluntary interviews of Pigott, as well as two other Liberty Corner employees: a portfolio manager at Liberty Corner who received some e-mails regarding the transactions but stated she had limited involvement in the RTLs; and a back-office employee who signed requests received from Refco's auditor (GT) confirming Liberty Corner's account at RCM, where the RTLs took place.

Liberty Corner managed a number of hedge funds that primarily traded in government treasury bills.  Refco served as Liberty Corner's prime broker.  Liberty Corner's business relationship with Refco continued up to Refco's bankruptcy.  The hedge funds that Liberty Corner managed were closed down in early 2006, and since that time Liberty Corner has been dormant.[95]

In February 2001, Refco explored doing a RTL with one of the hedge funds managed by Liberty Corner — Liberty Corner Patriot Master Fund, Ltd. ("LCPMF").  Work on this RTL appears to have begun on February 16, 2001, when Weaver faxed Pigott's contact information to Collins.[96]  Handwritten notes on this fax identify the basic terms of the proposed transaction —

---

[95] Pigott indicated that he knew Flanagan and EMF Financial, but had no business dealings with them.  Pigott also stated that Liberty Corner managed an account for Coast and that he worked with Petitt at Coast.  Pigott stated that he had no knowledge that either EMF Financial/Delta Flyer or Coast/CS Land had been involved in RTLs with Refco.

[96] MB02035219.

namely, a $200,000,000 RTL with LCPMF from February 26, 2001, to March 2, 2001, with a 15

basis point profit to LCPMF. Mayer Brown's files contain unexecuted drafts of a 2001 RTL

transaction with LCPMF.[97]  On February 21, 2001, Collins sent drafts of the transaction

documents to Weaver and Mascio.[98]  Weaver then sent drafts of these documents to Liberty

Corner on February 22, 2001.[99]

> The RTL with LCPMF did not occur.  No one at Liberty Corner recalled the proposed

2001 RTL, nor did they know why the transaction with LCPMF did not proceed.  Mayer

Brown's files contain copies of the 2001 LCPMF RTL documents with handwritten mark-ups by

Collins in which he changed all references from LCPMF to Delta Flyer.[100]  The amount and term

of the loan remained the same, and Refco ultimately went through with the transaction with

Delta Flyer in 2001.

> Liberty Corner and Refco engaged in ten RTLs starting in February 2002.  The amounts

ranged from $325,000,000 to $720,000,000.  In 2002 and 2003, Liberty Corner did only one

RTL transaction in February-March of each year,[101] but starting in 2004, the frequency of the

RTLs increased, with RTLs occurring quarterly, up to September 6, 2005 — the end date for the

last Liberty Corner RTL.[102]  The net interest spread on each Liberty Corner RTL was 75 basis

points, except for 2002, when the interest spread was 100 basis points.

---

[97] MB 00476, MB00003905-36.

[98] MB00003937.

[99] LC-SEC-EM 001388360.

[100] MB02035673-706.

[101] 2002 RTL:  LC-USAO 000001-36.  2003 RTL:  LC-USAO 000037-72.

[102] February 2004 RTL:  LC-USAO 000073-105.  May 2004 RTL:  LC-USAO 000139-56, MB02293240-54
(Liberty Corner did not produce a copy of the RCM Loan agreement).  August 2004 RTL:  LC-USAO 000157-87.
November 2004 RTL:  LC-USAO 000188-218.  December 2004 RTL:  LC-USAO 000221-51.  February 2005 RTL:
LC-USAO 000272-309 (executed copies of the RCM Loan agreement or the RCM Note could not be located).  May
2005 RTL:  REFCO-0002-000147-49, REFCO-0002-000118-30, REFCO-0002-000132-44, REFCO-HC-0533922,

*(footnote continued on next page)*

Pigott recalled that sometime in early February 2002 he was approached by McCarthy and Maggio regarding the RTL. Maggio directed Pigott to contact Koury. Pigott recalled having a conference call with Koury during which he was provided additional information about the transaction.

Mayer Brown's earliest drafts of the 2002 RTL documents (created on February 12, 2002) had LCPMF, not Liberty Corner, as the counter-party.[103] At some point after February 12, 2002, Liberty Corner was substituted for LCPMF. Pigott stated that he requested the RTLs be done with Liberty Corner, a management company, as the counter-party, rather than one of the funds managed by Liberty Corner, because the RTL was not the type of transaction normally executed in the funds. Pigott stated that the funds primarily did treasury bill arbitrage transactions, and he did not believe the RTL would be consistent with the type of transaction that he marketed to investors that he would be doing in the Liberty Corner-managed funds. Furthermore, Pigott was concerned that if anything went wrong with the transaction (*i.e.*, RGHI did not repay its loan and the RGL guaranty was unenforceable), he did not want to place investor money located in one of the Liberty Corner-managed funds at risk.

Koury e-mailed copies of the proposed 2002 RTL transaction documents to Pigott on February 14, 2002.[104] Pigott then forwarded these documents to his counsel for review.[105] Pigott

---

(*footnote continued from previous page*)

REFCO-HC-0533908 (Liberty Corner did not produce copies of the May 2005 RTL transaction documents). August 2005 RTL: LC-USAO 000310-26, LC-USAO 000341-53, REFCO-0002-000098 (Liberty Corner did not produce a copy of the RGHI Note for this transaction). Although in some cases Liberty Corner did not produce executed copies of documents, the Examiner was able to obtain executed copies from Refco's and Mayer Brown's documents.

[103] MB02048044-87.

[104] LC-SEC-EM 001610388-89.

[105] *Id.*

stated that his only concern about any of the RTLs was whether he would be able to get his money back in case RGHI defaulted on its loan.

Pigott stated that he understood RGL to be the parent of RGHI, so he believed he was getting a guaranty from RGHI's parent. According to Pigott, the presence of the guaranty from RGL was the primary reason he engaged in the transaction because Pigott felt secure that, if RGHI defaulted on its obligation to Liberty Corner, he would still be able to collect from RGL, whom he viewed to be the Refco parent company with the financial capability of covering RGHI's loan obligation. Pigott indicated that his counsel had reviewed the documents and had advised him that he had sufficient protection in case of an RGHI default.

Pigott stated that other than the RTL transactions, Liberty Corner had never engaged in transactions involving amounts in the hundreds of millions of dollars, and that Liberty Corner only had a capitalization of a few hundred thousand dollars. Pigott also explained that, other than the RTLs, Liberty Corner only engaged in transactions involving the purchases of securities and that the RTLs were the only non-collateralized cash transactions that Liberty Corner did. Pigott stated that at no time prior to the Refco bankruptcy did he have any knowledge or understanding that Refco was using the RTLs for anything other than a legitimate business purpose.

Pigott stated that the RTL transactions were run through Liberty Corner's account at RCM, which Pigott indicated he used on occasion to make trades on his own behalf. Pigott stated that the profit on each of the Liberty Corner RTLs was wired from the Liberty Corner RCM account to either a Liberty Corner bank account or Pigott's own personal bank account.[106]

---

[106] 2002 RTL: LC-USAO 000357, REFCO-0009-025570-71. 2003 RTL: REFCO-0009-025587-90. February 2004 RTL: REFCO-E-001599522-23, REFCO-0009-025593-94. May 2004 RTL: REFCO-0009-028804-05, REFCO-E-001052706. August 2004 RTL: REFCO-0009-28800-01, REFCO-0009-028797-98. November 2004

*(footnote continued on next page)*

nevertheless controls and dominates the corporation to the exclusion of the other managers'
ability to exercise power.

The Examiner concludes that there is sufficient evidence to allege that from the time of
the LBO in August 2004, at the latest, the THL Directors were decision makers with the ability
to exercise real power sufficient to defeat the application of the sole actor rule. The Examiner
concludes that for the time period prior to the LBO, a question of fact exists as to whether the
sole actor rule could be applied based on an argument that Bennett, and the other insiders
complicit in the fraud, exercised control over Refco.

July 11, 2007

Respectfully submitted,

/s/ Charles E. Campbell
Charles E. Campbell (CEC 6100)
Robert A. Bartlett (RAB 0550)
MCKENNA LONG & ALDRIDGE LLP
Suite 5300, 303 Peachtree Street, NE
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
*Counsel to the Examiner*

/s/ Joshua R. Hochberg
Joshua R. Hochberg (JRH 9440)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500
*Court Appointed Examiner*

**EXHIBIT 3**

**WITNESSES INTERVIEWED
BY THE EXAMINER AND HIS COUNSEL**

| COMPANY | WITNESS |
|---|---|
| AA | Jason Blumkin |
| | William Denehey |
| | Brian Falahee |
| | Melissa Kesh |
| | Dara Moore |
| | Amy Lynn Murphy |
| Beckham Trading Company | Andrew Kreiger |
| E&Y | Steven Cappel |
| | Michael Meisler |
| | Kurt Neidhardt |
| EMF Financial Products, LLC | H. Whitney Tindale |
| Ingram Micro | Thomas Madden |
| | James Ricketts |
| KMPG | John Berndsen |
| Levine Jacobs | Robert Blackwell |
| | Richard Hoffman |
| | Timothy Shore |
| Liberty Corner | Mike Lisi |
| | William T. Pigott |
| | Miriam Yoshida |
| Mayer Brown | Joseph Collins |
| | Andrea Henneman |
| | Paul Koury |
| | Robert Monk |
| | Ross Pazzol |
| | Peter G. Schultz |
| Murray Devine | Ralph Colucci |
| | Daniel DiDomenico |
| THL | Scott Schoen (by proffer) |

| **COMPANY** | **WITNESS** |
|---|---|
| Weil | Barbra Broudy |
| | Alex Lynch |
| | Jay Tabor |
| | James Westra |

# EXHIBIT 5

Scott A. Edelman
Kylie Davidson
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
*Counsel for Plaintiff Marc S. Kirschner,*
*as Trustee for the Refco Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| REFCO INC., et al., | Case No. 05-60006 (RDD) (Jointly Administered) |
| Debtors. | |
| MARC S. KIRSCHNER, as Trustee of the Refco Litigation Trust, | Adv. Pro. No. 07-_____ (RDD) |
| Plaintiff, | |
| - against - | **COMPLAINT** |
| JOHN D. AGOGLIA, PHILLIP R. BENNETT, THE TRUSTEES(S) OF THE PHILLIP R. BENNETT THREE YEAR ANNUITY TRUST, EDWIN L. COX, SUKHMEET "MICKY" DHILLON, THE TRUSTEE(S) OF THE JASDEEP DHILLON TRUSTEE MSD FAMILY TRUST, THOMAS H. DITTMER, THE TRUSTEE(S) OF THE DITTMER TRUST, STEPHEN GRADY, TONE N. GRANT, ERIC LIPOFF, SANTO MAGGIO, PETER McCARTHY, JOSEPH MURPHY, FRANK MUTTERER, WILLIAM SEXTON, WILLARD SPARKS, ROBERT TROSTEN, MEMPHIS HOLDINGS LLC, MLC FIRST CAYMAN LTD., REFCO GROUP HOLDINGS INC., and JOHN DOES 1 THROUGH 10. | |
| Defendants. | |

business at One World Financial Center, 200 Liberty Street, Tower A, New York, New York,

10281. RCM filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on

October 17, 2005.

21.    New Refco Group Ltd., LLC. New Refco Group Ltd., LLC ("New

Refco") was organized under the laws of Delaware, with its principal place of business at One

World Financial Center, 200 Liberty Street, Tower A, New York, New York, 10281. New Refco

was formed in connection with the LBO in August 2004. New Refco filed for bankruptcy

protection under chapter 11 of the Bankruptcy Code on October 17, 2005.

22.    Refco Securities, LLC. Refco Securities, LLC ("RSL"), a wholly owned

subsidiary of RGL, was a Delaware limited liability company and registered broker-dealer with

its principal place of business at One World Financial Center, 200 Liberty Street, 23rd Floor,

New York, NY 10281.

23.    To the extent that any Challenged Transfer was made by or involving a

Debtor not specifically mentioned herein, the Complaint is asserted on behalf of such Debtor.

C.    **Defendants**

24.    Defendant John D. Agoglia. Agoglia was a senior vice president at RSL

at least as of 2003, responsible for overseeing the daily activity of all the various trading areas

within the prime brokerage business. Working directly under Defendant Peter McCarthy,

Agoglia received so-called profit participation payments based on Refco's fraudulent financial

statements.

25.    Defendant Phillip R. Bennett. At all relevant times, Bennett was an

officer and director of a number of Refco entities. Bennett joined RGL in 1981, charged with the

responsibility for establishing the business of RCC, Refco's finance and treasury subsidiary.

From 1983 until 1998, Bennett was RGL's CFO. From September 1998 until October 2005,

9

37.    Defendant Tone N. Grant. Grant joined RGL in 1981. From 1997 through 1998, Grant was President and CEO of RGL. Prior to August 2004, through his ownership interest in RGHI, Grant also held a significant ownership stake in RGL. From 1999 through August 2004, Bennett and Grant each held a 50% interest in RGHI. In turn, RGHI ostensibly owned 90% of RGL. In or around August 2004, concurrently with the LBO, Grant sold his interest in RGHI to Bennett, leaving Bennett the sole owner of RGHI. Grant is currently under indictment, together with Bennett and Trosten, and faces criminal charges for securities fraud, bank fraud and money laundering.

38.    Defendant Eric Lipoff. Lipoff was an attorney at Main Street Trading Co., a California-based retail futures broker, when the entity was acquired by Refco in November 2000. In January 2001, Lipoff became Executive Vice President of Lind-Waldock & Company (also known as Refco Private Client Group). Lipoff reported to Dhillon.

39.    Defendant Santo C. Maggio. Maggio joined Refco in 1985, and served as Executive Vice President of RGL and President and CEO of RSL from 1991. From 2001, Maggio was also President of RCM and a member of its Board of Directors. Maggio managed the brokerage operations of RSL and RCM. On October 10, 2005, at the request of Refco's Board of Directors, Maggio took a leave of absence. Shortly thereafter, Maggio resigned. According to press reports, Maggio is cooperating with the U.S. Justice Department and the Securities and Exchange Commission ("SEC") in connection with their investigation of the fraud perpetuated at Refco.

40.    Defendant Peter McCarthy. McCarthy served as Executive Vice President of RSL since at least 1998 and was involved in the loan scheme as described below. McCarthy headed RSL's New York office, which was responsible for providing fixed income and prime

13

brokerage products and services to banks and financial institutions (including products such as US Treasuries, agencies, and European government bonds). Following Maggio's departure in October 2005, McCarthy took over Maggio's position, serving as President of RSL.

41.    Defendant Joseph J. Murphy. Murphy joined Refco in 1999 as Executive Vice President of RGL and was responsible for global marketing. Murphy was also President of a number of Refco subsidiaries during the same period, including Refco LLC and Refco Global Futures, LLC.

42.    Defendant Frank Mutterer. Mutterer joined Refco and was appointed First Vice President for Finance and Administration of RGL in September 1999 and acted as Controller of RGL from January 2004. In his role as Controller, Mutterer signed representation letters to RGL's auditors. He resigned from Refco in March 2005.

43.    Defendant William M. Sexton. Sexton joined Refco in April 1999 and served as Executive Vice President and COO of Refco LLC, an RGL subsidiary, from July 2001 until August 2004. From August 2004 through August 2005, Sexton served as Executive Vice President and COO of RGL and was responsible for operations, information technology, accounting and finance and risk control for Refco's futures businesses. On or around October 10, 2005, Sexton was asked to take Bennett's position as CEO of Refco, and Sexton remained in that position for approximately two to three months subsequent to the Petition Date.

44.    Defendant Willard Sparks. Prior to January 2001, Willard Sparks owned 15.3% of Refco, Inc. ("Old Refco Inc."), an indirect subsidiary of RGL and an entity distinct from Refco Inc. (which was not formed until 2005) through an entity called Memphis Holdings LLC. Pursuant to a 2001 sale of Memphis Holding's interest in Old Refco Inc. to RGL,

14

Dated:  October 15, 2007
         New York, NY

                                    **MILBANK, TWEED, HADLEY & McCLOY LLP**


                                    _____/s/_____
                                    Scott A. Edelman
                                    Kylie Davidson
                                    1 Chase Manhattan Plaza
                                    New York, NY 10005
                                    (212) 530-5000

                                    *Counsel for Plaintiff Marc S. Kirschner,*
                                    *as Trustee for the Refco Litigation Trust*


Of Counsel:

William E. Wallace, III
**Milbank Tweed Hadley & McCloy**
1850 K Street, NW
Washington, DC 20006
(202) 835-7511

*Counsel for Plaintiff Marc S. Kirschner,*
*as Trustee for the Refco Litigation Trust*


DC1:#8140323