UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
In re REFCO, INC. SECURITIES LITIGATION :        07 MDL No. 1902 (GEL)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
MARC S. KIRSCHNER,                                        :
as Trustee of the Refco Litigation Trust,        :        07 Civ. 11604 (GEL)
                                                          :
                                        Plaintiff,        :
                                                          :
              v.                                          :
                                                          :
GRANT THORNTON LLP, et al.,                               :
                                                          :
                                      Defendants.         :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY DEFENDANTS LIBERTY
CORNER CAPITAL STRATEGIES, LLC AND WILLIAM T. PIGOTT TO DISMISS THE
COMPLAINT**

---

**MARINO TORTORELLA PC**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**(973) 824-9300**
**Attorneys for Defendants**
**Liberty Corner Capital Strategies, LLC and**
**William T. Pigott**

**On the Brief:**

    **Kevin H. Marino**
    **John D. Tortorella**
    **Roseann Bassler Dal Pra**

# TABLE OF AUTHORITIES

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY .......................................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 3

    A.   The Alleged Fraudulent Scheme Perpetrated By The Refco Insiders. ............................... 4

    B.   The Fraud Claim Against The Officer Defendants And The Aiding- And-
        Abetting-A-Fraud Claim Against The Liberty Corner Defendants. .................................. 6

    C.   The Bankruptcy Investigation And The Final Report of Examiner. ................................... 7

LEGAL ARGUMENT ................................................................................................................... 8

I.       PLEADING STANDARDS ................................................................................................. 8

    A.   To Survive A Rule 12(b)(6) Dismissal, Plaintiff's Complaint Must Provide
        Factual Allegations Sufficient To Raise A Right To Relief Beyond The
        Speculative Level And May Not Be Based On Bald Assertions Or Legal
        Conclusions. ....................................................................................................................... 8

    B.   The Plaintiff Must Meet The Heightened Pleading Requirements Of Rule 9(b) On
        His Claim For Aiding And Abetting A Fraud. .................................................................. 10

II.      NEW YORK SUBSTANTIVE LAW GOVERNS THE CLAIM FOR AIDING
        AND ABETTING A FRAUD UNDER CONFLICTS-OF-LAW PRINCIPLES. ............. 11

III.    THE CLAIM FOR AIDING AND ABETTING A FRAUD MUST BE
        DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED AND FAILS TO PLEAD FRAUD WITH
        PARTICULARITY. .......................................................................................................... 14

    A.   Plaintiffs Have Not Alleged That The Liberty Corner Defendants Had Actual
        Knowledge Of Any Misconduct In Connection With The Loan Transactions. ............... 14

    B.   The Liberty Corner Defendants Did Not Substantially Assist The Alleged Refco
        Fraud. ................................................................................................................................ 21

IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO
        THE LIBERTY CORNER DEFENDANTS BECAUSE REPLEADING WOULD
        BE FUTILE. ...................................................................................................................... 24

CONCLUSION ............................................................................................................................ 25

## TABLE OF AUTHORITIES

Page

### Cases

Atsi Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007)..............................................................................3, 9, 10

Barbara Sales, Inc. v. Intel Corp.,
  857 N.E.2d 717 (Ill. App. Ct. 2006) ...........................................................................12

Bell Atlantic Corp. v. Twombly,
  127 S. Ct. 1955 (2007)................................................................................................8, 9

Billard v. Rockwell Int'l Corp.,
  683 F.2d 51 (2d Cir. 1982).............................................................................................10

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
  369 F.3d 212 (2d Cir. 2004).............................................................................................4

Chi v. Age Group, Ltd.,
  No. 94 Civ. 5253, 1999 U.S. Dist. LEXIS 16075 (S.D.N.Y. Oct. 19, 1996)...........10

Conley v. Gibson,
  355 U.S. 41 (1957)...........................................................................................................8

Cromer Fin. Ltd. v. Berger,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001).....................................................12, 14, 21, 23

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
  375 F.3d 168 (2d Cir. 2004)...........................................................................................15

Filler v. Hanvit Bank,
  339 F. Supp. 2d 553 (S.D.N.Y. 2004)....................................................................14, 16

Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.,
  414 F.3d 325 (2d Cir. 2005)...........................................................................................11

Fraternity Fund, Ltd. v. Beacon Hill Asset Management, LLC,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007)..............................................15, 17, 19, 23

Greenberg v. Bear, Stearns & Co.,
  220 F.3d 22 (2d Cir. 2000).............................................................................................22

Hunt v. Enzo Biochem, Inc.,
  530 F. Supp. 2d 580 (S.D.N.Y. 2008)....................................................................10, 18

In re Flag Telecom Holdings, Ltd. Secs. Litig.,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004)...........................................................................17

In re NYSE Specialists Sec. Litig.,
  503 F.3d 89 (2d Cir. 2007)...............................................................................................9

In re Parmalat Sec. Litig.,
  479 F. Supp. 2d 332 (S.D.N.Y. 2007)...........................................................................11

In re Tower Auto Sec. Litigation,
  483 F. Supp.2d 327 (S.D.N.Y. 2007)..............................................................................4

In re WorldCom, Inc. Secs. Litig.,
  382 F. Supp.2d 549 (S.D.N.Y. 2005)...............................................................14, 16, 20

## TABLE OF AUTHORITIES

Page

Ingersoll v. Klein,
  262 N.E.2d 593 (Ill. 1970) ................................................................................................ 12

Iqbal v. Hasty,
  490 F.3d 143 (2d Cir. 2007) .............................................................................................. 9

Kolbeck v. LIT Am., Inc.,
  939 F. Supp. 240 (S.D.N.Y. 1996) .................................................................................. 14

Lerner v. Fleet Bank, N.A.,
  459 F.3d 273 (2d Cir. 2006) ........................................................................ 10, 14, 15, 20

Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Secs. Corp.,
  No. 99 Civ. 1944, 2000 U.S. Dist. LEXIS 7444 (S.D.N.Y. June 1, 2000) ...................... 25

Matusovsky v. Merrill Lynch,
  186 F. Supp.2d 397 (S.D.N.Y. 2002) ..................................................................... 3, 4, 20

Mazzaro v. Bank of Am. Corp.,
  525 F. Supp. 2d 381 (S.D.N.Y. 2007) ...................................................................... 17, 22

Morin v. Trupin,
  711 F. Supp. 97 (S.D.N.Y. 1989) .................................................................................... 10

Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Secs., LLC,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...................................................................... 15, 23

Rapoport v. Asia Elecs. Holding Co., Inc.,
  88 F. Supp.2d 179 (S.D.N.Y. 2000) .......................................................................... 4, 20

Reddington v. Staten Island Univ. Hosp.,
  511 F.3d 126 (2d Cir. 2007) .............................................................................................. 9

Rehl v. Romec,
  No. 05-3516, 2007 U.S. Dist. LEXIS 30879 (E.D.N.Y. Apr. 26, 2007) ......................... 12

Rosner v. Bank of China,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007) .................................................................... passim

Ruotolo v. City of N.Y.,
  514 F.3d 184 (2d Cir. 2008) .............................................................................................. 9

S.S. Silberblatt, Inc. v. East Harlem Pilot Block,
  608 F.2d 28 (2d Cir. 1979) .............................................................................................. 24

Shearson Lehman Hutton, Inc. v. Wagoner,
  944 F.2d 114 (2d Cir. 1991) .............................................................................................. 1

Shields v. CityTrust Bancorp, Inc.,
  25 F.3d 1124 (2d Cir. 1994) ............................................................................................ 10

Sierra Rutile Ltd. v. Katz,
  No. 90 Civ. 4913, 1996 U.S. Dist. LEXIS 14366 (S.D.N.Y. Sept. 30, 1996) ................. 25

Smith v. Local 819 I.B.T. Pension Plan,
  291 F.3d 236 (2d Cir. 2002) .............................................................................................. 9

Suzik v. Sea-Land Corp.,
  89 F.3d 345 (7th Cir. 1996) ............................................................................................ 12

### TABLE OF AUTHORITIES

Page

Terrydale Liquidating Trust v. Barness,
    611 F. Supp. 1006 (S.D.N.Y. 1984) ........................................................................ 15

Thornwood, Inc. v. Jenner & Block,
    799 N.E. 2d 756 (Ill. App. Ct. 2003), app. denied, 807 N.E.2d 982 (Ill. 2004) ...................... 11

United States v. Smith,
    No. 06 Civ. 4056, 2007 U.S. Dist. LEXIS 53826 (S.D.N.Y. July 24, 2007) ........................... 24

Van Dusen v. Barrack,
    376 U.S. 612, 638-39 (1964) ............................................................................... 11

Wight v. BankAmerica Corp.,
    219 F.3d 79 (2d Cir. 2000) .................................................................................. 15

Williams v. Bank Leumi Trust Co. of N.Y.,
    No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538 (S.D.N.Y. May 30, 1997) ........... 16, 17, 18, 21

**Statutes**

28 U.S.C. § 1452 ................................................................................................... 2

**Sentencing Guidelines**

Restatement (Second) of Conflict of Laws § 145 ....................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... passim

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 8

Fed. R. Civ. P. 9(b) ..................................................................................... passim

Defendants Liberty Corner Capital Strategies, LLC ("LCCS") and William T. Pigott ("Pigott") (collectively, the "Liberty Corner Defendants") respectfully submit this Memorandum of Law in support of their joint motion to dismiss with prejudice the Thirty-Seventh Claim for Relief pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

On this motion, the Liberty Corner Defendants seek dismissal with prejudice of the sole claim asserted against them in the Complaint — aiding and abetting a fraud. Despite having the benefit of more than 1.6 million pages of documents produced by the Liberty Corner Defendants in the Bankruptcy Proceedings as well as the Final Report of the Court-appointed Examiner, which discussed in great detail the Liberty Corner Defendants' involvement in the transactions in question, the Plaintiff was unable to properly plead a claim against the Liberty Corner Defendants that meets the plausibility standard of Rule 12(b)(6), let alone the particularity standard of Rule 9(b).

The 158-page Complaint details a three-part scheme at Refco by which certain insiders allegedly (i) created the illusion of solid financial health, (ii) maintained that illusion and then, (iii) cashed-out the interests of the insiders through a leveraged buyout transaction and subsequent initial public offering. But the Complaint is devoid of any allegation that states or gives rise to a strong inference that the Liberty Corner Defendants had actual knowledge of the fraudulent scheme or that they provided substantial assistance to the scheme. These deficiencies are incurable and fatal. As a matter of law, the Liberty Corner Defendants' participation in the

---

[1]     The Liberty Corner Defendants also join in, and incorporate by reference, the arguments of their co-defendants pursuant to the <u>Wagoner</u> rule that the Litigation Trustee lacks standing to make the allegations in the Complaint. <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118 (2d Cir. 1991) ("[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.")

transactions in question, without more, does not give rise to a strong inference either of actual knowledge or substantial assistance. Given that Plaintiff has already had access to the equivalent of full discovery from the Liberty Corner Defendants and was still unable to properly plead the elements of aiding and abetting a fraud, any amendment to the claim would be futile. Accordingly, the Liberty Corner Defendants respectfully submit that dismissal of the Thirty-Seventh Claim for Relief with prejudice is appropriate.

## **PROCEDURAL HISTORY**

On or about August 21, 2007, Plaintiff, as Trustee of the Refco Litigation Trust, appointed pursuant to the Chapter 11 bankruptcy plan for Refco, Inc. and its affiliates, filed a Complaint against the Liberty Corner Defendants, among numerous other individuals and entities, in the Circuit Court of Cook County, Illinois, County Department, Law Division ("Illinois State Court"). On or about September 19, 2007, certain defendants (the "Removing Defendants") removed the action to the United States District Court for the Northern District of Illinois ("Illinois Federal Court") pursuant to 28 U.S.C. § 1452. Plaintiff filed a motion to remand the action to Illinois State Court. The Removing Defendants opposed the remand motion and filed a motion with the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer the action to the United States District Court for the Southern District of New York. The Removing Defendants also filed with the Illinois Federal Court a motion to stay its consideration of the remand motion pending a determination by the MDL Panel on the transfer motion. By Order entered on November 16, 2007, the Illinois Federal Court granted the stay motion. The MDL Panel granted the transfer motion by Order entered on December 28, 2007. In an Opinion and Order dated April 21, 2008, this Court denied Plaintiff's motion to remand. This Motion to Dismiss follows.

2

## STATEMENT OF FACTS

LCCS is a company organized and existing under the laws of Delaware with its principal place of business in Summit, New Jersey, that previously provided advisory services to certain hedge funds. (Compl., ¶ 50.) Pigott is the principal and sole shareholder of LCCS. (Id.)

Plaintiff is the court-approved Trustee of the Refco Litigation Trust, which was established in connection with the Modified Joint Chapter 11 Plan of Refco, Inc. and Certain of its Direct and Indirect Subsidiaries confirmed on December 15, 2006 by the United States Bankruptcy Court for the Southern District of New York in the matter captioned In re Refco Inc., et al., Case No. 05-60006 (RDD) (the "Bankruptcy Proceedings"). (Compl., at 1, 2, ¶ a, and ¶ 31.)

Plaintiff asserts his aiding-and-abetting-a-fraud claim on behalf of Refco Group Ltd., LLC ("RGL"), (Compl., at 146, ¶¶ 585-89), a Delaware limited liability company (Compl., ¶ 32(a)), with its principal place of business and its executive offices at One World Financial Center, 200 Liberty Street, New York, New York. (Declaration of Kevin H. Marino ("Marino Decl."), Ex. 1, RGL's Voluntary Petition filed with the United States Bankruptcy Court of the Southern District of New York on October 17, 2005; Marino Decl., Ex. 2, Form 8-K filed with the Securities and Exchange Commission ("SEC") by RGL, Refco, Inc. and Refco Finance, Inc. on December 20, 2006.)[2] The financial statements of various Refco companies were prepared on a consolidated basis under RGL. (Marino Decl., Ex. 4 at 3.)

---

[2] On a Rule 12(b)(6) motion the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." Atsi Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In addition, the Court may consider "documents that are integral to, or explicitly referenced in, the pleading." Matusovsky v. Merrill Lynch, 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002). The court may also "look to public records, including complaints . . . in deciding a motion to

Refco Group Holdings, Inc. ("RGHI") is a Delaware subchapter S corporation with its principal place of business also located in New York, New York.  (Marino Decl., Ex. 3, SEC Form 3 dated August 11, 2005, at 2.)  Although RGHI's name suggests that it was a Refco affiliate, it was in fact owned by William R. Bennett ("Bennett"), the highest ranking corporate officer of various Refco entities.  (Compl. ¶ 36, Marino Decl., Ex. 4 at 3.)  RGHI's financial information was not public, nor was it reported on a consolidated basis with Refco's financial information.  (Marino Decl., Ex. 4 at 3.)

### A.    The Alleged Fraudulent Scheme Perpetrated By The Refco Insiders.

Plaintiff alleges that defendants Bennett, Santo C. Maggio, Robert C. Trosten and Tone N. Grant, all former high-ranking Refco officers who are defined collectively in the Complaint as the "Refco Insiders," engineered a complex three-part scheme for the purpose of cashing out their interests in the Refco entities at inflated values in connection with a leveraged buyout ("LBO") and initial public offering ("IPO") (Compl., ¶ 59).  In the first part of the scheme, which Plaintiff refers to as "Cleaning Up Refco's Financial Statements" (Compl., at 19), Plaintiff alleges that "[t]he Refco Insiders avoided writing off hundreds of millions of dollars in trading losses, misallocated operating expenses and inflated Refco's revenue with phantom interest income by booking these amounts as receivables owed by RGHI (a related-party company owned and controlled by Bennett and, prior to the LBO, by Bennett and Grant) resulting in a massive related-party receivable owed to various Refco entities." (Compl., ¶ 60.)  Plaintiff does

dismiss."   Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  Factual allegations contradicted by documents properly considered on a motion to dismiss need not be accepted, In re Tower Auto Sec. Litigation, 483 F. Supp.2d 327, 334 (S.D.N.Y. 2007), and "those allegations are insufficient to defeat a motion to dismiss." Matusovsky, 186 F. Supp. 2d at 400. Indeed, if the document contradicts the allegations in the complaint, the document controls. Rapoport v. Asia Elecs. Holding Co., Inc., 88 F. Supp.2d 179, 184 (S.D.N.Y. 2000)

not allege that the Liberty Corner Defendants had any involvement in, or actual knowledge of, the first part of the alleged scheme.

The second part of the alleged scheme, which Plaintiff refers to as "Keeping the Illusion Going Long Enough to Cash-Out," involved what Plaintiff refers to as "round trip loans" or RTLs (hereinafter the "Loan Transactions"). (Compl., at 23.) Plaintiff asserts that the purpose of the Loan Transactions was to conceal the related-party receivable owed to Refco by RGHI. (Compl., ¶¶ 75, 76.) According to Plaintiff, a Refco entity would extend a loan to a third party with no relation to Refco, Bennett or RGHI at the end of every relevant reporting and audit period and that third party would then loan the same amount to RGHI. RGHI would then use the loan from the third party, defined in the Complaint as a "Round Trip Loan Participant," to pay down the debt it owed to Refco. On Refco's financial statements, the RGHI receivable was transformed into a payable on a loan owed to Refco from an unrelated third-party. (Compl., ¶ 78.) Plaintiff does not and could not allege that the Liberty Corner Defendants knew that RGHI was not a Refco entity, that RGHI owed money to Refco, or that RGHI was using the loan from Liberty Corner and similarly situated parties to pay off that debt.

After the start of each new reporting or audit period, the loan was "unwound" by reversing the process. (Compl., ¶ 79.) In exchange for participating in the Loan Transactions, the Round Trip Loan Participants received payment of the "spread" between the interest rates of the two loans. (Compl., ¶ 80.) Many of the Loan Transactions, including those in which the Liberty Corner Defendants were involved, were guaranteed by RGL. (Compl., ¶¶ 80, 84.) Plaintiff does not allege that the Liberty Corner Defendants had actual knowledge of the Refco Insiders' reasons for wanting to engage in the Loan Transactions.

5

The third part of the alleged scheme, which Plaintiff calls the "Cash-Out," allowed the Refco Insiders to sell their interests in Refco at fraudulently inflated values. This was the alleged purpose of the entire scheme. (Compl., ¶ 106.) Plaintiff claims that RGL was induced to enter into the LBO based on an inaccurate understanding of its financial condition, causing it to incur $1.4 billion of bank and bond debt to fund the LBO that enriched the Refco Insiders at the expense of Refco and its creditors. (Compl., ¶ 9.) A year later, the LBO was followed up with an initial public offering ("IPO") that allegedly further impaired Refco's assets, but benefitted the Refco Insiders. (Compl., ¶ 10.) Ultimately, RGL filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on October 17, 2005. (Compl., ¶ 32(a).) Plaintiff does not allege facts showing that the Liberty Corner Defendants were involved in, or had any actual knowledge of, the third part of the alleged scheme or that they were aware of, let alone benefited from, the LBO or IPO.

**B.    The Fraud Claim Against The Officer Defendants And The Aiding-And-Abetting-A-Fraud Claim Against The Liberty Corner Defendants.**

In the Eighteenth Claim for Relief, Plaintiff asserts a fraud claim on behalf of RGL against the Officer Defendants (defendant Phillip R. Bennett ("Bennett"), Santo C. Maggio ("Maggio"), and Robert C. Trosten ("Trosten")). Plaintiff alleges that the Officer Defendants made affirmative misrepresentations and omissions concerning Refco's financial condition to RGL directors, officers and agents. (Compl., ¶¶ 464-465.) Plaintiff further alleges that the Officer Defendants made these misrepresentations and omissions with "the intent to deceive RGL, the innocent RGL directors, officers and agents, including inside counsel and others, so as to induce RGL to enter into an imprudent LBO which would solely benefit the Refco Insiders at RGL's expense." (Compl., ¶ 467.)

The Thirty-Seventh Claim for Relief asserts a claim for aiding and abetting a fraud against the Liberty Corner Defendants and certain co-defendants who participated in similar Loan Transactions. Plaintiff appears to rely on the fraud claim against the Officer Defendants in the Eighteenth Claim for Relief as the primary fraud. Specifically, Plaintiff alleges as follows:

> 586. Each of the RTL Defendants knew and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things, the RGLs were concealing a related-party receivable at the end of each relevant reporting and audit period.
>
> 587. The RTL Defendants were aware of their own roles in Bennett, Maggio, and Trosten's scheme to conceal the RGHI Receivable.
>
> 588. Notwithstanding this knowledge, the RTL Defendants knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things, knowingly entering into and facilitating the fraudulent RGL transactions, without which Bennett, Maggio, and Trosten could not have fraudulently concealed Refco's true financial conditions.
>
> 589. As a proximate result of the RTL Defendants' knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

(Compl., ¶¶ 586-589.)

### C.     The Bankruptcy Investigation And The Final Report of Examiner.

Prior to the filing of the Complaint, as part of the Bankruptcy Proceedings, the Bankruptcy Court appointed an examiner (the "Examiner") to investigate the circumstances surrounding Refco's demise. (Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007.) In the course of his investigation, the Examiner "conducted targeted searches of the approximately 1.6 million pages of documents LCCS produced to governmental agencies and the Creditors Committee." (*Id.*, Ex. 4 at 52.) The documents produced by LCCS to the Creditors

Committee were also reviewed by Plaintiff prior to filing the Complaint. (Compl. at 2(b).) The Examiner also interviewed Pigott and two other LCCS employees. (Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007, at 52 and Ex. 3.)

Although the Examiner did not purport to reach any conclusions with respect to the liability of the Round Trip Loan Participants, including the Liberty Corner Defendants (Marino Decl., Ex. 4 at 7 n.3), the Examiner made certain findings as to the Liberty Corner Defendants. Plaintiff relied on the Final Report of Examiner in preparing the Complaint. (Compl., at 2, ¶ c; Marino Decl., Ex. 4, excerpts of Final Report of Examiner dated July 11, 2007.)

As explained below, the conclusory allegations in the Complaint are wholly inadequate to support a claim for aiding and abetting a fraud.

## LEGAL ARGUMENT

### I.    PLEADING STANDARDS

**A.    To Survive A Rule 12(b)(6) Dismissal, Plaintiff's Complaint Must Provide Factual Allegations Sufficient To Raise A Right To Relief Beyond The Speculative Level And May Not Be Based On Bald Assertions Or Legal Conclusions.**

In a recent decision, Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the United States Supreme Court announced a new "plausibility" standard for Rule 12(b)(6) dismissal. The Supreme Court recognized that although Rule 8(a)(2) obliges a plaintiff to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," this obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65. The Court "explicitly disavowed the oft-quoted statement in Conley [v. Gibson, 355 U.S. 41, 45-46 (1957)] of 'the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007).

For a plaintiff to survive a Rule 12(b)(6) motion, the Supreme Court stated: "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 127 S. Ct. at 1965; see also Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008); Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 132 (2d Cir. 2007); Atsi Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In other words, a plaintiff must "amplify a claim with some factual allegations . . . to render the claim plausible." Iqbal, 490 F.3d at 157-58. As discussed below, Plaintiff's allegations against the Liberty Corner Defendants do not pass Twombly's plausibility test.

Moreover, although the Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences therefrom in plaintiff's favor, the Court "need not accord legal conclusions, deductions or opinions couched as factual allegations a presumption of truthfulness." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks, brackets, and ellipsis omitted). To defeat a motion to dismiss, "bald assertions and conclusions of law will not suffice." Reddington, 511 F.3d at 132 (quotation marks omitted); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (quotation marks omitted omitted).

**B.    The Plaintiff Must Meet The Heightened Pleading Requirements Of Rule 9(b) On His Claim For Aiding And Abetting A Fraud.**

Rule 9(b) requires that in alleging fraud, a party must state with particularity the circumstances constituting the fraud.    Fed. R. Civ. P. 9(b);[3] Atsi, 493 F.3d at 99.    "Thus, conclusory allegations of fraud may be dismissed under Rule 9(b)."    Rosner v. Bank of China, 528 F. Supp. 2d 419, 425 (S.D.N.Y. 2007).    The heightened pleading requirements of Rule 9(b) apply to claims of aiding and abetting a fraud.    Id. at 425; Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006); Morin v. Trupin, 711 F. Supp. 97, 112 (S.D.N.Y. 1989).

Although Rule 9(b) permits knowledge to be "averred generally," this relaxation of the specificity requirement for knowledge "'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'"    See Rosner, 528 F. Supp.2d at 425 (quoting Shields v. CityTrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).    The Second Circuit construes Rule 9(b) "'strictly'" so as "'to minimize strike suits, to protect defendants . . . from harm to their reputation from ungrounded actions, and to give defendants notice of the precise conduct in issue.'"    Id. (quoting Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982)).    This requirement takes on particular importance in multiple-defendant cases, where plaintiffs may be inclined to paint defendants broadly with the same brush.    Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 601 (S.D.N.Y. 2008) ("Where multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each of them.").    When there has been full discovery, the policies underlying Rule 9(b) require even "greater precision."    Billard, 683 F.2d at 57.

---

[3]    Rule 9(b) applies to complaints removed from state court.    Chi v. Age Group, Ltd., No. 94 Civ. 5253, 1999 U.S. Dist. LEXIS 16075, at *25 & n.3 (S.D.N.Y. Oct. 19, 1996).

Plaintiff's aiding-and-abetting-a-fraud claim against the Liberty Corner Defendants, as explained below, fails to satisfy the heightened pleading requirements of Rule 9(b).

## II.    NEW YORK SUBSTANTIVE LAW GOVERNS THE CLAIM FOR AIDING AND ABETTING A FRAUD UNDER CONFLICTS-OF-LAW PRINCIPLES.

Defendants respectfully submit that a choice-of-law analysis is necessary with respect to the aiding-and-abetting-a-fraud claim because there is a conflict between the laws of Illinois and New York. A court must perform such an analysis where there is an "actual conflict" between the law of two jurisdictions. Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 331 (2d Cir. 2005). Such an actual conflict need not be outcome determinative. Id. at 331. Instead, an actual conflict exists where "the applicable law from each jurisdiction provides different substantive rules," the differences are "'relevant' to the issue at hand," and the differences "have a 'significant possible effect on the outcome of the trial.'" Id. at 331.

In this case, the knowledge element of an aiding-and-abetting-a-fraud claim is different under New York and Illinois law. Whereas actual knowledge is a requisite element of aiding and abetting a fraud under New York law, see Rosner, 528 F. Supp. 2d at 426, Illinois law requires that an aider and abetter be "regularly aware of his role as part of the overall or tortious activity." Thornwood, Inc. v. Jenner & Block, 799 N.E. 2d 756, 767 (Ill. App. Ct. 2003) (listing elements of aiding and abetting under Illinois law and not listing actual knowledge of the tortious activity as one of the requisite elements), app. denied, 807 N.E.2d 982 (Ill. 2004).

To the extent that an action involving issues of state law has been transferred to this Court by the Judicial Panel on Multidistrict Litigation, the Court applies the choice of law rules that would govern in the transferor forum. In re Parmalat Sec. Litig., 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (citing Van Dusen v. Barrack, 376 U.S. 612 (1964)). Because the initial forum

11

state in this case was Illinois, the Court should apply Illinois choice-of-law rules. Id.; see also Rehl v. Romec, No. 05-3516, 2007 U.S. Dist. LEXIS 30879, at *10 (E.D.N.Y. Apr. 26, 2007) (recognizing that "in a case which has been transferred by the MDL Panel from one federal court to another, the transferee court must apply the choice-of-law rule that would apply in the transferor court.").

Federal courts in Illinois sitting in diversity apply the choice of law rules set forth in the Restatement (Second) of Conflicts of Law, which Illinois has adopted. Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir. 1996); Ingersoll v. Klein, 262 N.E.2d 593, 595 (Ill. 1970). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the tort at issue. (Second) of Conflict of Laws § 145 (1).[4] In applying this test, Illinois courts consider the following factors: (1) the place where the injury occurred; (2) the place where the conduct occurred; (3) the parties' domiciles, nationality, place of incorporation and place of business; and (4) the place where the parties' relationship is centered. Barbara Sales, Inc. v. Intel Corp., 857 N.E.2d 717, 722 (Ill. App. Ct. 2006); Rest. (Second) of Conflict of Laws § 145(2). Consideration of these factors demonstrates that New York has the most significant relationship to the aiding-and-abetting-a-fraud claim.

First, the place of injury, perhaps the most important factor, is New York — RGL's principal place of business. (Marino Decl., Ex. 1, RGL's Voluntary Petition.) Thus, this factor weighs heavily in favor of applying New York law. Second, the place where the conduct occurred is also New York. The alleged misrepresentations and omissions were made to RGL's

---

[4]    New York law would govern even if the Court were to apply New York conflicts-of-law rules for tort claims. In New York, as in Illinois, courts apply the law of the jurisdiction with "the greatest interest in the litigation." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001). For the reasons discussed above, New York has the greatest interest with respect to the aiding-and-aiding-a-fraud claim.

directors, officers and agents, (Compl., ¶ 464), who would have been at RGL's executive offices in New York. (Marino Decl., Ex. 2, Form 8-K filed with SEC by RGL, Refco, Inc. and Refco Finance, Inc. on December 20, 2006.)   In addition, the Loan Transactions were initiated by Maggio and McCarthy, both officers of RSL, which had its principal place of business in New York. (Compl., ¶ 37; Marino Decl., Ex. 6, Agoglia Complaint, ¶¶ 22, 40; Marino Decl., Ex. 4, Final Report of Examiner dated July 20, 2007 at 54.)   Further, RGHI's principal place of business was also located in New York. (Marino Decl., Ex. 3, RGHI's SEC Form 3 dated August 11, 2005.) This factor therefore weighs in favor of applying New York law.   Third, RGL's principal place of business is in New York (Marino Decl., Ex. 1, RGL's Voluntary Petition) and, it's bankruptcy estate is being administered in the Bankruptcy Proceedings pending in New York. (Compl., ¶¶ 31, 32(a).) LCCS, a Delaware limited liability company, had its principal place of business in Summit, New Jersey. (Compl., ¶ 50.) On balance, this factor tips in favor of New York law.   Fourth, the Liberty Corner Defendants' relationship with Refco is centered in New York, where RGL, RGHI and RSL all have their principal places of business. (Marino Decl., Ex. 1, RGL's Voluntary Petition; Marino Decl., Ex. 3, RGHI's SEC Form 3 dated August 11, 2005; Marino Decl., Ex. 6, Agoglia Complaint, ¶ 22.) This factor also favors New York law.

As each of the relevant factors weighs in favor of determining that New York has the most significant relationship to the aiding-and-abetting-a-fraud claim, New York law should govern the Court's analysis.[5]

---

[5]    Even if Illinois law was applied, Plaintiff's claims would not state a claim because there is no showing that the Liberty Corner Defendants were aware of their role as part of a larger scheme or tortious activity.

III.  **THE CLAIM FOR AIDING AND ABETTING A FRAUD MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FAILS TO PLEAD FRAUD WITH PARTICULARITY.**

To establish liability for aiding and abetting a fraud under New York law, the plaintiff must plead and prove (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) defendant's substantial assistance to advance the fraud's commission. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006); Rosner, 528 F. Supp. 2d at 425. Actual, not constructive knowledge, is required to impose liability for aiding and abetting a fraud. See, e.g., Rosner, 528 F. Supp. 2d at 426; Lerner, 459 F.3d at 292; see also Cromer, 137 F. Supp. 2d at 494 ("To satisfy the knowledge requirement of [claims of aiding and abetting a fraud and breach of fiduciary duty], New York law requires that a defendant have 'actual knowledge' of the underlying fraud."); Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York courts and federal courts in this district have required actual knowledge for imposing aiding and abetting liability.").

As discussed below, Plaintiff fails to adequately plead actual knowledge and substantial assistance on the part of the Liberty Corner Defendants and therefore his aiding and abetting a fraud claim must be dismissed.

A.  **Plaintiffs Have Not Alleged That The Liberty Corner Defendants Had Actual Knowledge Of Any Misconduct In Connection With The Loan Transactions.**

To satisfy the knowledge requirement of an aiding-and-abetting-a-fraud claim, "the complaint must allege facts which show that the defendant had actual knowledge of the underlying fraud." Filler v. Hanvit Bank, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004). Although a defendant's actual knowledge of the fraud may be averred generally, In re WorldCom, Inc. Secs. Litig., 382 F. Supp.2d 549, 560 (S.D.N.Y. 2005) (citing Wight v. BankAmerica Corp., 219

14

F.3d 79, 91 (2d Cir. 2000) and Rule 9(b)), "this leeway is not a license to base claims of fraud on speculation and conclusory allegations." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (quotation marks omitted). The plaintiff is still required to provide a factual basis for an allegation that a defendant had actual knowledge of the fraud. See Rosner, 528 F. Supp. 2d at 426 (dismissing aiding-and-abetting-a-fraud claim pursuant to Rule 9(b) where plaintiff provided "no factual basis for the assertion that [Defendant] had actual knowledge of the fraud"); Lerner, 459 F.3d at 292-93 (affirming dismissal of aiding-and-abetting-fraud claim, finding that plaintiffs "failed to allege actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).") To state a claim for aiding and abetting under New York law, "the overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as recklessness or willful blindness." Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Secs., LLC, 446 F. Supp. 2d 163, 202, n.279 (S.D.N.Y. 2006).

Although not insurmountable, the burden of demonstrating actual knowledge is a heavy one. Fraternity Fund, Ltd. v. Beacon Hill Asset Management, LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (quoting Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006, 1027 (S.D.N.Y. 1984)). And where, as here, the alleged aider and abettor owes no fiduciary duty to the allegedly injured party, the burden of demonstrating actual knowledge is "especially" high. Terrydale, 611 F. Supp. at 1027.

The Complaint utterly fails to carry the burden to plead facts strongly supporting an inference of knowledge on the part of the Liberty Corner Defendants. There are no express allegations anywhere in Plaintiff's Complaint that the Liberty Corner Defendants had actual knowledge of the three-part fraud in which other defendants were alleged to have engaged. Nor

15

are any facts pleaded to support the allegation that the Liberty Corner Defendants consciously avoided knowledge of the fraud — i.e., that they knew that the transactions between LCCS and Refco had a fraudulent purpose. Furthermore, there are no factual allegations evidencing that the Liberty Corner Defendants were actually aware of any specific representations or omissions concerning Refco's financial condition made by the Officer Defendants to RGL directors, officers and agents. Absent such allegations, Plaintiff's claim must fail. See Fraternity Fund, 479 F. Supp. 2d at 369 (dismissing aiding and abetting claims against Prudential Securities because Plaintiff failed to allege facts strongly supporting an inference of knowledge); Filler, 339 F. Supp. 2d at 560 (recognizing, in dismissing an aiding-and-abetting-a-fraud claim, that plaintiffs did not allege that defendants were actually aware of the representations made to plaintiff).

In ¶ 347(a) and ¶ 586 of the Complaint, Plaintiff alleges that "the RTL Defendants *knew and/or consciously avoided knowing*" that the Refco Insiders concealed from RGL's directors, officers and agents that the Loan Transactions were concealing a related-party receivable at the end of each relevant reporting and audit period. (Compl., ¶ 586.) (emphasis supplied). Pleading actual knowledge in the alternative with constructive knowledge, however, is insufficient to meet the actual knowledge standard. See WorldCom, 382 F. Supp.2d at 560 ("Pleading knowledge in the alternative with an allegation of reckless disregard is insufficient to allege a claim"); Williams v. Bank Leumi Trust Co. of N.Y., No. 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538, at **13-14 (S.D.N.Y. May 30, 1997) (stating that disjunctive phrases such as "knew, or recklessly disregarded," or "knew or should have known" are insufficient under the actual knowledge standard).

Even if the Complaint is read to plead conscious avoidance alone, which one court has read to satisfy the actual knowledge requirement, <u>Fraternity Fund</u>, 479 F. Supp. 2d at 368 (distinguishing between conscious avoidance and constructive knowledge and describing conscious avoidance as a type of actual knowledge), Plaintiff's allegations are far too conclusory to establish conscious avoidance on the part of the Liberty Corner Defendants.   There are no facts demonstrating that the Liberty Corner Defendants were aware of an RGHI receivable or that the Refco Insiders wanted to conceal that receivable.   The mere fact that the Loan Transactions occurred at the end of a reporting and audit period ((Compl., ¶ 347(a) and (b)) or were of a significant size (Compl. ¶ 347(c)) is insufficient to show culpable knowledge.   <u>In re Flag Telecom Holdings, Ltd. Secs. Litig.</u>, 308 F. Supp. 2d 249, 261 (S.D.N.Y. 2004) (statements by director that swap transactions were "end-of-the quarter transactions" and occurred at a time when the company was struggling to meet earnings projections were "simply too vague" to establish that defendant knew that the swap transactions were sham transactions designed to artificially inflate revenues).   Moreover, even if such allegations sufficed to plead constructive knowledge, which they do not, constructive knowledge cannot support an aiding and abetting claim.   <u>See</u> <u>Mazzaro v. Bank of Am. Corp.</u>, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (finding that plaintiffs' allegations that the nature of the transfers out of account, which occurred within three days of receipt of funds by defendants, and the general amount of funds within the account, indicated at most constructive knowledge of a fraudulent scheme and were insufficient to support an allegation of actual knowledge); <u>Williams</u>, 1997 U.S. Dist. LEXIS 7538, at *14 (finding that sequence of account transfers and contention that defendant was informed that purpose of check was to purchase stock raised the issue of constructive knowledge of check-kiting scheme, which was insufficient to state a claim for aiding and abetting).

In similar conclusory fashion, Plaintiff alleges that "[t]he RTL Defendants were aware of their own roles" in the alleged fraudulent scheme. (Compl., ¶ 348, ¶ 587.) These "conclusory allegations that [Defendants] w[ere] aware of the scheme . . . also fail to satisfy plaintiff's burden to plead actual knowledge." <u>Williams</u>, 1997 U.S. Dist. LEXIS 7538, at *14.   The Litigation Trustee does not allege any communication by which Pigott, or anyone else at LCCS, learned that Refco was attempting to hide a receivable.  Nor does the Complaint allege that any grounds to believe that Pigott knew RGHI was not a Refco entity or that the loan transactions were guaranteed by the corporate subsidiary of an insolvent parent.

Because there are multiple RTL Defendants, it is especially important for Plaintiff to particularize the facts demonstrating actual knowledge on the part of Defendants. <u>See</u> <u>Hunt</u>, 530 F. Supp. 2d 580 (S.D.N.Y. 2008).   The only allegations specific to the Liberty Corner Defendants are found in ¶¶ 85,  86 and 347 of the Complaint.  In ¶ 85, Plaintiff alleges:

> Demonstrating Pigott's awareness that the RTLs were improper, Pigott rejected using an active fund he managed that was engaged in treasury bill arbitrage as the RTL conduit, and instead substituted Liberty Corner because Liberty Corner was a personal management company that could be made to take any and all actions directed by Pigott.

(Compl., ¶ 85.)

In ¶ 86 of the Complaint, Plaintiff asserts: "Underscoring that Pigott understood that the sole purpose of the RTLs was to fraudulently 'dress up' Refco's financial statements, Pigott had RGL guarantee each of the Liberty Corner RTL Loans." (Compl., ¶ 86.)  In paragraph 347, of the Complaint, Plaintiff asserts that Liberty Corner was aware that the Loan Transactions were occurring with more frequency as Refco's LBO and IPO approached, that the amount of the transactions was increasing, and that Liberty Corner received lucrative interest payments.

In Fraternity Fund, Judge Kaplan dismissed aiding-and-abetting claims against Prudential Securities for failure to allege facts supporting an inference of knowledge under similar circumstances. In that case, the plaintiff alleged that Prudential aided and abetted a valuation fraud allegedly perpetrated by a hedge fund manager by corroborating securities values provided by the manager without conducting a proper investigation. Fraternity Fund, 479 F. Supp. 2d at 368-69. The complaint alleged conclusorily that Prudential knew that the manager was going to send those corroborated securities values to its auditors to support a year-end audit. Id. at 368. Judge Kaplan rejected the notion that the complaint adequately pleaded actual knowledge or conscious avoidance on the part of Prudential. He reasoned that while rubber-stamping securities values was consistent with collusion with the hedge fund manager, it was equally consistent with laziness. Critically, he noted that "even if one assumed that it reflected dishonesty, [the Complaint] would not sufficiently allege facts from which [the broker] could be said to have known or consciously disregarded [the hedge fund manager's] fraud, at least in the absence of allegations that Prudential . . . had any motive to assist." Id. at 369.

As in Fraternity Fund, the allegations in the Complaint do not strongly support an inference of knowledge or conscious avoidance on the part of the Liberty Corner Defendants. That Pigott did not conduct the Loan Transactions through a fund managed by LCCS is not fraudulent on its face and is far more consistent with the explanation reported by the Examiner, viz. — that (a) the Loan Transactions did not fit within the investment strategy of that particular fund; and (b) Pigott was concerned about putting the investors' funds at risk. (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007, at 54.) In either event, even accepting the Plaintiff's premise, the Complaint does not lead to the conclusion that the Liberty Corner Defendants could be said to have known or consciously disregarded that Refco was going to use

the transactions to falsify its accounting documents.  No facts pleaded by Plaintiff support that claim.  Likewise, the allegation that Pigott's insistence on a parent guaranty fairly gives rise to a strong inference of knowledge should be rejected out of hand.  This assertion is not only mere conjecture, but also is directly contradicted by the explanation contained in the Final Report of Examiner.  As the Final Examiner's Report stated:

> Most of the RTL Participants indicated that the main reason they agreed to participate in the RTLs was because they felt that the structure of the transaction effectively eliminated any risk that they would not be repaid the amounts they loaned to RGHI and therefore the transaction was simply a "risk free" way to make a relatively small profit.

(Id. at 31-32.)  There are no facts to suggest that Pigott was aware of Refco's LBO or IPO.

Accordingly, because Plaintiff provides only conclusory and speculative allegations and fails to expressly allege actual knowledge or provide any factual basis demonstrating actual knowledge of the underlying fraud on the part of the Liberty Corner Defendants as required by Rule 12(b)(6) and Rule 9(b), Plaintiff's aiding-and-abetting-a-fraud claim against the Liberty Corner Defendants must be dismissed.[6]  See Rosner, 528 F. Supp. 2d at 426 (dismissing aiding and abetting a fraud claim pursuant to Rule 9(b) where plaintiff provided "no factual basis for the assertion that [defendant] had actual knowledge of the fraud"); Lerner, 459 F.3d at 292-93 (affirming district court's dismissal of aiding-and-abetting-a-fraud claim pursuant to Rule 9(b) where plaintiffs conclusorily alleged actual knowledge but failed to plead facts with the requisite particularity); WorldCom, 382 F. Supp.2d at 560-61 (agreeing with defendants that plaintiff failed to plead actual knowledge, an essential element of the fraud, where plaintiff alleged that

---

[6]    In addition, because Plaintiff's allegations directly contradict the facts set forth in the Examiner's report, a document on which the Complaint was based, the report controls and Plaintiff's allegations cannot defeat this Motion. See In re Aegon, 2004 U.S. Dist. LEXIS 11446, at *14; Matusovsky, 186 F. Supp. 2d at 400; Rapoport, 88 F. Supp. 2d at 184.

defendants "knew or recklessly disregarded" the fraud); Williams, 1997 U.S. Dist. LEXIS 7538 at *14 (finding plaintiff failed to satisfy her pleading burden to establish aiding and abetting liability under Rule 12(b)(6) where, among other things, she alleged facts giving rise, at most, to a finding of constructive knowledge, which is insufficient).

### B.    The Liberty Corner Defendants Did Not Substantially Assist The Alleged Refco Fraud.

In addition to actual knowledge, Plaintiff must show that the Defendants' acts substantially assisted the alleged fraud. The allegations in the Complaint fail to support this proposition. This Court has previously defined "substantial assistance" under New York law as follows:

> Generally, "substantial assistance" exists where (1) a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and (2) "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."

Rosner, 528 F. Supp. 2d at 426 (quoting Cromer, 137 F. Supp.2d at 470). "But-for" causation does not suffice to impose liability upon an alleged aider and abettor; rather, liability attaches only where the injury is "a direct or reasonably foreseeable result of the conduct." Cromer, 137 F. Supp. 2d at 470. "Financial transactions that are not considered 'atypical' or 'non-routine' do not constitute substantial assistance." Rosner, 528 F. Supp.2d at 427. Here, Plaintiff alleges, at most, that the Refco Insiders could not have perpetrated their alleged fraud without the Loan Transactions. This "but for" rationale does not satisfy the requirements for substantial assistance.

First, Plaintiff does not allege facts showing that the Loan Transactions themselves were "atypical" or "non-routine." Indeed, the Loan Transactions were memorialized in loan documents prepared by Refco's outside counsel, Mayer Brown, one of the nation's largest law

firms, and reviewed by LCCS's outside counsel. (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007, at 54.)

Second, Plaintiffs plead no facts that would support an inference that the Liberty Corner Defendants had reason to believe that Refco wanted to engage in the transactions for anything other than legitimate business reasons. (Marino Decl., Ex. 4, Final Report of Examiner dated July 11, 2007 at 55.) Aiding and abetting liability cannot be imposed upon the Liberty Corner Defendants merely because, by engaging in legitimate transactions, they unknowingly participated in a fraudulent scheme. Stated otherwise, Defendant's mere participation in the Loan Transactions, without more, does not amount to "substantial assistance" for pleading purposes. Cf. Rosner, 528 F.Supp. 2d at 427 (finding that defendant's provision of usual banking services to a customer did not rise to the level of substantial assistance); Mazzaro, 525 F. Supp. 2d at 390 ("mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance") (quotation marks omitted); Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 29 (2d Cir. 2000) ("The simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker.") (quotation marks omitted). Plaintiff's characterization of the Loan Transactions as "fraudulent" (Compl., ¶ 588) is conclusory and does not somehow transform them into transactions constituting substantial assistance. See Mazzaro, 525 F. Supp.2d at 390 ("Plaintiffs' characterization of the transfers as 'improper' is conclusory.")

Moreover, the Loan Transactions in which the Liberty Corner Defendants participated were not the proximate cause of the harm allegedly sustained by RGL. Plaintiff does not allege that RGL was somehow harmed by the Loan Transactions themselves. Rather, Plaintiff alleges

that RGL was harmed by the alleged misrepresentations and omissions made by the Officer Defendants to RGL's directors, officers and agents concerning the company's financial condition.  (Compl., Eighteenth Claim for Relief (Fraud Claim by RGL Against Bennett, Maggio, and Trosten.)  Plaintiff essentially alleges that but for the Loan Transactions, "Bennett, Maggio, and Trosten could not have fraudulently concealed Refco's true financial condition." (Compl., ¶ 588.)  As stated above, however, "but-for" causation is insufficient.  Fraternity Fund, 479 F. Supp. 2d at 371 ("Plaintiffs must allege more than but-for causation.  They must allege that their injury was 'a direct or reasonably foreseeable result of the conduct.'") (quoting Pension Comm., 446 F. Supp. 2d at 202); Cromer, 137 F. Supp. 2d at 470.

Beyond failing to allege that the Loan Transactions directly injured RGL, Plaintiff does not assert any facts demonstrating that the Refco Insiders' improper use of the Loan Transactions was a reasonably foreseeable result of the Liberty Corner Defendants participation in those transactions.  Stated simply, the Liberty Corner Defendants could not have reasonably foreseen that the Refco Insiders would use the Loan Transactions (i) to affirmatively misrepresent and conceal the RGHI receivable at the end of each relevant reporting and audit period, (ii) for the purpose of inducing RGL to enter into an imprudent LBO whereby, (iii) RGL would incur $1.4 billion in new LBO debt, and (iv) distribute its assets to Refco insiders and other RGL equity holders.  (Compl., Eighteenth Claim for Relief (Fraud Claim by RGL Against Bennett, Maggio, and Trosten.)  See id.

In sum, although the Officer Defendants' alleged fraudulent scheme may have been made possible by the Loan Transactions, those transactions were not a proximate cause of the fraudulent scheme.  The claim for aiding and abetting a fraud, therefore, must be dismissed.  See Cromer, 137 F. Supp.2d at 472 ("While the Ponzi scheme may only have been possible because

of Bear Stearns' actions, or inaction, Bear Stearns' conduct was not a proximate cause of the Ponzi scheme.").

### IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO THE LIBERTY CORNER DEFENDANTS BECAUSE REPLEADING WOULD BE FUTILE.

The Liberty Corner Defendants respectfully submit that dismissal of the aiding and abetting a fraud claim as to them should be with prejudice.  A dismissal with prejudice is appropriate where granting leave to replead would be futile.  See S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42-43 (2d Cir. 1979); United States v. Smith, No. 06 Civ. 4056, 2007 U.S. Dist. LEXIS 53826 (S.D.N.Y. July 24, 2007) ("A with-prejudice dismissal is appropriate under Rule 9(b) where there is a 'good reason' to deny the plaintiff leave to amend, including where it appears that any amendment would be futile.").

Here, in preparing the Complaint, Plaintiff had the benefit of essentially full discovery from the Liberty Corner Defendants.  As explicitly stated in the Complaint, Plaintiff based his allegations on his and his counsel's investigation and review of, among other things, the filings, documents, and testimony produced in the Bankruptcy Proceedings, which necessarily include the interviews of Pigott and two LCCS employees as well as the 1.6 million pages of documents produced by LCCS (Marino Decl., Ex. 4 at 52 and Ex. 3 thereto; Compl., at 2(a).)  Plaintiff also relied on the Final Report of Examiner, (Compl., at 2(c)), wherein the Bankruptcy Examiner discusses in great detail the Liberty Corner Defendants' involvement in the Loan Transactions. Despite all this evidentiary material, Plaintiff was unable to plead the basic elements of an aiding-and-abetting-a-fraud claim as required by Rule 8(a)(2) or to plead them with the level of precision required by Rule 9(b).  See Billard, 683 F.2d at 57.

Under such circumstances, dismissal with prejudice is warranted on the grounds of futility.  See Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913, 1996 U.S. Dist. LEXIS 14366, at *18 (S.D.N.Y. Sept. 30, 1996); Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Secs. Corp., No. 99 Civ. 1944, 2000 U.S. Dist. LEXIS 7444, at *19 (S.D.N.Y. June 1, 2000).

## **CONCLUSION**

For the reasons set forth above, defendants Liberty Corner Capital Strategies, LLC and William T. Pigott respectfully request that the Court dismiss the Thirty-Seventh Claim for Relief as to them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead fraud with the requisite particularity pursuant to Federal Rule of Civil Procedure 9(b).

Respectfully submitted,

MARINO TORTORELLA PC

Dated: Chatham, New Jersey      BY:    _____
      May 21, 2008

Kevin H. Marino
John D. Tortorella
Roseann Bassler Dal Pra
437 Southern Boulevard
Chatham, New Jersey  07928-1488
(973) 824-9300

*Attorneys for Defendants Liberty
Corner Capital Strategies, LLC and
William T. Pigott*